UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | |
| | § | Chapter 11 |
| ULTRA PETROLEUM CORP., et al., | § § | Case No.: 16-32202 |
| Debtors. | § § | (Jointly Administered) |
| | § | |

| | | |
|---|---|---|
| GASCONADE OIL CO. | § | |
| RIGGS OIL & GAS CORPORATION | § | |
| THE ROY H. DUBITZKY TRUST DATED | § | |
|   JUNE 28, 1996, ROY H. DUBITZKY | § | |
|     TRUSTEE | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 17-3019 |
| | § | |
| ULTRA PETROLEUM CORP. | § | |
| KEYSTONE GAS GATHERING, LLC | § | |
| ULTRA RESOURCES, INC. | § | |
| ULTRA WYOMING LGS, LLC | § | |
| UP ENERGY CORPORATION | § | |
| ULTRA WYOMING, INC. | § | |
| UPL PINEDALE, LLC | § | |
| UPL THREE RIVERS HOLDINGS, LLC | § | |
| | § | |
| Defendants | § | |

**PLAINTIFFS' MOTION TO STRIKE
DORSEY T. ROACH AS EXPERT WITNESS**

Pursuant to Local Rule 9013:

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU**

**MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT HEARING.**

**I.   RELIEF REQUESTED**

Plaintiffs respectfully request the court to strike Dorsey T. Roach as an expert witness because:  1) His testimony is nothing more than his interpretation of unambiguous contracts utilizing no unique industry trade, custom or usage terms; 2) he has no expertise on business entity formation, or how entities are used for legitimate or illegitimate purposes, and he expressly disavowed any such opinions in his deposition; and 3) he has no expertise or understanding of the rule against perpetuities, which is a legal issue he is precluded from testifying about.

**II.   GENERAL BACKGROUND**

This action involves a dispute concerning a consulting agreement which grants to Plaintiffs overriding royalty interests on oil and gas leases owned by the Defendants and on oil and gas leases subsequently obtained by Defendants in a defined geographic Area of Mutual Interest ("AMI").  More specifically, Plaintiffs contend that Ultra Resources, Inc. (a party to the consulting agreement) and UPL Pinedale, LLC (an alter ego or agent) executed a purchase and sale agreement with SWEPI LP to obtain oil and gas leasehold interests in the AMI, which were entirely paid for by Ultra Resources, Inc., but resulted in assignments of the oil and gas leases to UPL Pinedale, LLC.  Defendants assert the AMI does not apply because record title to the SWEPI LP oil and gas leases is held by the newly minted UPL Pinedale, LLC.  Plaintiffs assert that transaction was a sham designed to circumvent Ultra Resources, Inc.'s obligations to assign

Plaintiffs' overriding royalty interests in the AMI. Plaintiffs seek a declaratory judgment that Plaintiffs' are entitled to overriding royalty interests burdening the SWEPI LP AMI leaseholds, and damages for breach of contract, conspiracy and fraud, conversion, various forms of equitable relief, and damages pursuant to Wyoming's Royalty Payment Act.

Defendants expressly acknowledged and honored their obligations to Plaintiffs by delivering 20 assignments of overriding royalty interest ("ORRI") over 14 years, and by paying on those ORRIs for 21 years. Defendants now belatedly claim that its contract is void under the rule against perpetuities. Defendants' rule against perpetuities claim is purely academic at this point because Ultra has rejected the contract as executory under 11 U.S.C. § 365, and it will not continue at all, let alone for more than 21 years beyond a current life in being.

### III. STANDARD OF REVIEW

The burden is on the party offering the expert testimony to establish by a preponderance of the evidence that it is admissible. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). Fed. R. Evid. 702 requires that an expert's opinion must assist the trier of fact to understand the evidence or to determine a fact in issue. Generally, expert testimony offering a legal opinion is inadmissible because it will not assist the trier of fact in understanding the evidence or determining a fact in issue. *Estate of Sowell v. United States of America*, 198 F.3d 169, 171-72 (5th Cir. 1999). Additionally, expert testimony offering nothing but the expert's appreciation of the facts is likewise inadmissible because "the [fact finder] could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990).

Experts have been permitted to testify about the proper interpretation of contract terms, an issue of law, when the meaning depends on trade practice. *See*, *e.g.*, *Kona Tech. Corp. v. S.*

*Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (expert testimony properly admitted to interpret contract provisions having a specialized meaning in the railroad industry). Such expert testimony is inadmissible, however, unless the contract language is ambiguous and involves a specialized term of art, science or trade. *See Sheet Metal Workers, Int'l Assn, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 424 n. 4 (6th Cir. 2001) ("[T]he construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or expert witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible"). The Fifth Circuit holds an expert may not testify on contractual interpretation or offer any legal conclusions in general. *Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*, No. 12-102, 2014 U.S. Dist. LEXIS 160925, at *27 (E.D. La. Nov. 7, 2014).

## IV.  MOTION TO STRIKE EXPERT TESTIMONY OF DORSEY T. ROACH

Plaintiffs deposed Mr. Roach on December 21, 2017 regarding his opinions provided in his rebuttal expert report dated September 26, 2017.[1]  Defendants seek to introduce testimony from Mr. Roach instructing the Court how to interpret unambiguous contract terms with no unique industry trade, custom or usage meaning.  His expert report addresses the following categories, (see (Ex. "A-1", Roach Report, at ¶¶ 10(a) – (g), 12)):

1. Interpretation of that November 1, 1983, Consulting Agreement ("1983 Consulting Agreement") by and between Fossil Associates ("Fossil"), and Consolidated Natural Gas Company, ("CNG"). (Ex. "A-5" 1983 Consulting Agreement);

---

[1] The party with the burden of proof on an issue was required to serve expert reports no later than August 30, 2017. (Comprehensive Scheduling, Pre-Trial and Trial Order, Doc. 26). Defendants did not serve an expert report on August 30, 2017. Defendants therefore have not proffered an expert witness on any issues upon which it bears the burden of proof identified in their counterclaims or affirmative defenses.

4

2.      Interpretation of that March 15, 1994, "Southwestern Wyoming Revised CNG/Fossil Agreement," (the "1994 Revised CNG/Fossil Agreement"), by and between Fossil and CNG.  (Ex. "A-3", 1994 Revised CNG/Fossil Agreement);

3.      Interpretation of that Purchase and Sale Agreement dated July 19, 1996 (the "1996 CNG/Ultra Agreement"), wherein CNG sold some of its oil and gas leases, leasehold estates, contractual rights, and other interests, including oil and gas leases within the AMI identified in the 1994 Revised CNG/Fossil Agreement, to Ultra Petroleum (USA) Inc. (later merged into Ultra Resources, Inc.).  (Ex. "A-2", Purchase and Sale Agreement, July 19, 1996).

4.      Application of the rule against perpetuities to the AMI.

5.      Whether Ultra Resources, Inc.'s formation of UPL Pinedale, LLC, concurrently with Ultra Resources, Inc.'s acquisition of oil and gas leases from SWEPI within the AMI, which provided for transfer of title in the oil and gas leases from SWEPI directly to UPL Pinedale, LLC, but was completely paid for by Ultra Resources, Inc. directly to SWEPI, was an illegitimate transaction to avoid Ultra Resources, Inc.'s AMI obligations.

Mr. Roach's deposition testimony demonstrates that he should not be permitted to provide any of the proffered rebuttal expert testimony.  The following testimony is generally relevant to evaluating whether any of Mr. Roach's opinions are admissible:

1.      Mr. Roach has never spoken to anybody about the facts or issues in this case except for Defendants' counsel.  (Ex. "A", Roach Depo., at 33:14-18, 34:12-21)

2.      Mr. Roach has never spoken to anyone who negotiated, executed, or performed under any of the agreements at issue in this case.  (Ex. "A", Roach Depo., at 36:20-24).

5

3. Mr. Roach acknowledged he also has no direct, or indirect, knowledge of the agreement, terms, intent, or any other relevant information regarding CNG and Fossil when the Letter Agreements were negotiated and finalized. (Ex. "A", Roach Depo. at 98:12–16).

A. The 1983 Consulting Agreement, and
the 1994 Revised CNG/Fossil Agreement

Mr. Roach's interpretations and opinions about these agreements are based on nothing more than his reading of those agreements. (Ex. "A-1", Roach Report, at ¶¶ 5–8). He has no information about what any of the parties intended, or their course of performance, because he never spoke to anybody who negotiated or performed under any of the contracts. (Ex. "A", Roach Depo., at 36:20–24). His opinions on certain provisions of the agreements instead amount to nothing more than bald statements ostensibly rooted in industry trade, custom and usage, which contradict the express terms of the agreements and are therefore inadmissible.

"A term is ambiguous if, considered in light of the plain language of the entire contract, it is susceptible to more than one reasonable meaning." *Whitney Holding Corp. v. Terry*, 270 P.3d 662, 666 (Wyo. 2012). Express contract terms control over any industry usage. *Smithco Eng'g v. Int'l Fabricators*, 775 P.2d 1011, 1016 (Wyo. 1989).

For example, Mr. Roach has opined the 1983 Consulting Agreement, and the 1994 Revised CNG/Fossil Agreement, only apply to "undeveloped leases" and not to producing properties of the type acquired by Defendants and at issue in this case. (Ex. "A-1", Roach Report, at ¶ 10, pp. 11-12). His opinion is premised upon his reading of paragraph 4 of the 1994 Revised CNG/Fossil Agreement. (Ex. "A", Roach Depo., at 106:2-4). Paragraph 4 of the 1994 Revised CNG/Fossil Agreement states:

> (4) Areas of Mutual Interest (AMI or AMI's) are hereby established covering all acreage within the Jonah Gulch Prospect and, except as set out in Paragraph (5) below, all sections contiguous to sections containing existing leases as set out on

6

> Exhibit "B" (including diagonal Offsets) for <u>leases</u> outside of the Jonah Gulch Prospect and within the Contract Area. The Jonah Gulch AMI shall remain in effect so long as any of the <u>leases</u> located therein remain in effect. The AMI surrounding each individual <u>lease</u> lying outside of Jonah Gulch shall remain in effect so long as each individual lease Listed on Exhibit "B", or acquired pursuant to the terms of this paragraph within the AMI's, remains in effect and shall expire on an AMI by AMI basis as the last <u>lease</u> in each AMI expires. In the event CNG acquires a <u>leasehold</u> interest within any such AMI, Fossil shall be assigned an ORR on the same basis as set out in Paragraph (3) above. Except as set out below, if Fossil acquires an interest within any AMI, such interest shall be offered to CNG at cost, but subject to the ORR set out in Paragraph (3) above which ORR shall be in addition to any third party ORR's previously reserved: CNG shall have 15 days in which to accept assignment.

(Ex. "A-3", 1994 Revised CNG/Fossil Agreement, at ¶ 4 (emphasis added)). Mr. Roach nonetheless admitted the ordinary use of the term "lease" includes undeveloped <u>and</u> developed leases. (Ex. "A", Roach Depo., at 106:24 – 107:2; 107:23 – 108:5). He also admitted he was reading the phrase "undeveloped" into paragraph 4. (*Id.* at 108:14-20). He further admitted the term "lease" as used in the agreement was unambiguous. (*See id.* at 110:14 – 111:5). As stated by the Supreme Court of Kansas, in a case with nearly identical facts as the instant case, the argument the term "lease" in an AMI is limited to undeveloped leases "lacks merit."

> The agreement is clear and unambiguous and makes no limitation that undeveloped acreage is all that is covered in the area of mutual interest agreement. To the contrary the agreement provides: "If you [Read] acquire any leases on any of such lands you shall assign to me [Woolsey] an undivided one-fourth interest in such leases . . . ." The Nielsen leases were within the area of mutual interest and, as the agreement had not been terminated, were included within its provisions regardless of the state of development at the time defendants obtained an interest in the leases.

*First Nat. Bank and Trust Co. of Okl. City v. Sidwell Corp.*, 678 P.2d 118, 125 (Kan. 1984). Mr. Roach's testimony is contradictory to an unambiguous term and is therefore inadmissible.

Mr. Roach also offers an opinion about the term of the 1994 Revised CNG/Fossil Agreement. (Ex. "A-1", Roach Report, at ¶ 12). The entirety of his written opinion on this issue is a subsumed in just one sentence in his report: "Lastly, I am also of the opinion that an open-

7

ended term to an AMI provision is a violation of the Rule Against Perpetuities." (*Id.*) His written opinion is devoid of analysis. (*See id.*). His written opinion does not even identify the relevant syntax upon which he concludes the AMI is "open-ended." (*See id.*).

Mr. Roach's deposition provided virtually no meaningful elucidation of his opinion. At first, he would only say that paragraph 4 does not address when the AMI will terminate. (Ex. "A", Roach Depo., at 120:13-16). Actually, paragraph 4 expressly states in pertinent part:

> The AMI surrounding each individual lease lying outside of Jonah Gulch shall remain in effect so long as each individual lease Listed on Exhibit "B", or acquired pursuant to the terms of this paragraph within the AMI's, remains in effect and shall expire on an AMI by AMI basis as the last lease in each AMI expires.

(Ex. "A-3", 1994 Revised CNG/Fossil Agreement, ¶ 4). Faced with that language, he finally admitted the AMI was comprised of blocks of leases, which will terminate "[w]hen the last lease expires in that block." (Ex. "A", Roach Depo., at 121:4–8, 125:20–23). He next reluctantly agreed that Paragraph 16 of the 1994 Revised CNG/Fossil Agreement states the agreement will terminate when the last AMI terminates. (Ex. "A", Roach Depo., at 120:17–22).

When pressed on these points, he provided yet a new rationale never articulated in his expert report, like all his rationales on this issue. He hypothesized that Plaintiffs or Defendants could continue to buy leases and offsets in a way that the AMI would be a "living, roaming target" resulting in an AMI of uncertain length and size. (*Id.* at 121:9-22). Regardless, he could not identify any specific language in paragraph 4 of the 1994 Revised CNG/Fossil Agreement which supported his interpretation. (*Id.* at 123:7-20).

The above testimony demonstrated there is no ambiguity, or industry trade, custom or usage term being defined by Mr. Roach, in any of the agreements. His testimony is inadmissible.

B.   The 1996 CNG/Ultra
     Purchase and Sale Agreement

Mr. Roach opined that Ultra Resources, Inc. did not assume the rights and obligations in the 1983 Consulting Agreement or the 1994 Revised CNG/Fossil Agreement, based upon his interpretation of the 1996 CNG/Ultra Purchase and Sale Agreement. (Ex. "A-1", Roach Report, at ¶ 8). First, his opinion is premised upon the phrase "insofar as it affects the Interests," (*Id.* at ¶ 10(e)., p. 9). But that phrase does not occur in the 1996 CNG/Ultra Purchase and Sale Agreement. (Ex. "A", Roach Depo., at 90:5 – 91:5). More specifically, his opinion turns on a labored interpretation of the word "affects" and the use of that word in the 1996 CNG/Ultra Purchase and Sale Agreement. (*Id.* at 38:2–11). Regardless, Mr. Roach testified that "affects" has no unique trade, custom or usage meaning in the oil and gas industry. (*Id.* at 39:12 – 40:4). Mr. Roach's testimony is therefore inadmissible.

C.   Use of UPL Pinedale, LLC,
     to Avoid AMI Obligations

Mr. Roach's rebuttal expert report discusses his layman's understanding of the general proposition that "[c]ompanies use, or create, related entities for a variety of reasons . . . ." (Ex. "A-1", Roach Expert Report, at 10). He nonetheless testified that formation of business entities was not his "area of expertise." (Ex. "A", Roach Depo., at 22:19 – 23:1). He ultimately rejected any interpretation of his report that could be interpreted as expert opinion on whether UPL Pinedale, LLC was created to avoid Ultra Resources, Inc.'s AMI obligations to Plaintiffs. (*Id.* at 30:14 – 31:6). Mr. Roach's testimony is inadmissible.

D.   The rule against perpetuities

To the extent Mr. Roach purported to provide an opinion on whether the AMI is subject to the rule against perpetuities, Mr. Roach first testified he is not a lawyer. (Ex. "A", Roach

9

Depo., at 42:15–25).  Mr. Roach then could not even state the rule against perpetuities.  (*Id.* at 45:4-12).  He did not know if a future interest can be vested.  (*Id.* at 46:19-23).  He also could not distinguish between a reversionary interest and a remainder interest.  (*Id*. at 46:24 – 47:21).  In the final analysis, Mr. Roach's entire opinion about whether or not the subject AMI violates the rule against perpetuities was based on his erroneous belief that there is no term limit on the AMI.  (*Id.* at 49:19 – 50:2).  His reliance on that sole fact demonstrates he has no understanding at all about the rule against perpetuities.  He also later admitted that despite "occasionally" coming across open-ended AMI provisions, that he has never seen one adjudicated as invalid under the rule against perpetuities.  (*Id*. at 50:24 – 51:8).  Mr. Roach lacks the requisite expertise to testify about the rule against perpetuities in any context.  Regardless, he is not permitted to testify about pure legal issues.  Mr. Roach's testimony is inadmissible.

Finally, an expert's report must be "detailed and complete" in order to "avoid the disclosure of sketchy and vague expert information."  *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 571 (5th Cir. 1996).  And while F.R.C.P. 26(a)(2)(B) contemplates an expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report, that testimony must elaborate upon an expert opinion actually contained in the report, not a wholly new, previously unexpressed opinion.  *Frazin v. Haynes & Boone, LLP (In re Frazin)*, 2008 Bankr. LEXIS 2373, *102, 2008 WL 5214036.  Mr. Roach's expert report contains no opinions about whether, when, or how oil and gas operators "term limit" an AMI.  Any testimony by him on that issue is therefore inadmissible.

## V.   CONCLUSION

Plaintiffs respectfully request the court to strike Dorsey T. Roach as an expert witness because:  1) His testimony offers nothing more than his interpretation of unambiguous contracts utilizing no unique industry trade, custom or usage terms; 2) he has no expertise on the formation

of business entities, how those entities are used for legitimate or illegitimate purposes, and he expressly disavowed any such opinions in his deposition; 3) he has no expertise or understanding of the rule against perpetuities, which is a legal issue he is precluded from testifying upon in any event; and 4) his expert report offers no opinions regarding "typical" AMI term limits.

DATED this 2nd day of March, 2018.

NATHAN SOMMERS JACOBS, P.C.

By: */s/ Jarrod B. Martin*
Texas Bar No. 24070221
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056
jmartin@nathansommers.com
Telephone: (713) 960-0303
Facsimile: (713) 892-4800

POULSON, ODELL & PETERSON, LLC

By: */s/ Scott M. Campbell*
Pro Hac Vice
1775 Sherman Street, Suite 1400
Denver, CO  80203
Telephone: (303) 861-4400
Facsimile: (303) 861-1225
SCampbell@popllc.com

Attorneys for the Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on March 2, 2018, I caused a copy of the foregoing document to be served by e-mail to:

| | |
|---|---|
| T Brooke Farnsworth | Bennett S. Bartlett |
| Brooke@fvllp.com | Bennett@fvllp.com |
| | |
| Anthony Shaheen | Jessica M. Schmidt |
| AJShaheen@hollandhart.com | JMSchmidt@hollandhart.com |

By: */s/ Scott M. Campbell*

11