**EXHIBIT A**

Page 1

1                  UNITED STATES BANKRUPTCY COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
2                       HOUSTON DIVISION

3

4    In re:                    )
                               )
5    ULTRA PETROLEUM CORP.,    )   Case No. 16-32202
     et al., Debtors.          )
6

7

8    GASCONADE OIL CO.         )
     RIGGS OIL & GAS           )
9    CORPORATION THE ROY H.    )
     DUBITZKY TRUST DATED      )
10   JUNE 28, 1996, ROY H.     )
     DUBITZKY TRUSTEE          )
11                             )
        Plaintiffs             )
12                             )
     VS.                       )   Adversary No. 17-3019
13                             )
     ULTRA RESOURCES, INC.     )
14   UPL PINEDALE, LLC         )
                               )
15      Defendants             )

16

17   ********************************************************

18                  ORAL DEPOSITION OF

19                  DORSEY T. ROACH

20                  DECEMBER 21, 2017

21   ********************************************************

22

23

24

25

Dorsey T. Roach
December 21, 2017                                          2 to 5

Page 2

 1        ORAL DEPOSITION of DORSEY T. ROACH, produced as a
 2   witness at the instance of the Plaintiffs, and duly
 3   sworn, was taken in the above-styled and numbered
 4   cause on December 21, 2017, from 9:59 a.m. to
 5   2:05 p.m., before Denyce M. Sanders, RDR, CRR, TCRR,
 6   CCR (LA), in and for the State of Texas, recorded by
 7   machine shorthand, at the offices of FARNSWORTH &
 8   vonBerg, 333 North Sam Houston Parkway, Suite 300,
 9   Houston, Texas, pursuant to the Federal Rules of Civil
10   Procedure and the provisions stated on the record or
11   attached hereto; signature having been waived.
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

 1                        INDEX
 2                 ORAL DEPOSITION OF
 3          DORSEY T. ROACH, DECEMBER 21, 2017
 4                                              Page
 5   APPEARANCES............................    3
 6   BY MR. CAMPBELL........................    6
 7
 8
 9
10
11   REPORTER CERTIFICATION ................   134
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

 1               A P P E A R A N C E S
 2
     FOR THE PLAINTIFFS:
 3
         POULSON, ODELL & PETERSON, LLC
 4       1775 Sherman Street, Suite 1400
         Denver, Colorado  80203
 5       Mr. Scott M. Campbell
         303.861.4400
 6       scampbell@popllc.com
 7
     FOR THE DEFENDANTS:
 8
         FARNSWORTH & vonBerg
 9       333 North Sam Houston Parkway, Suite 300
         Houston, Texas  77069
10       Mr. Bennett S. Bartlett
         281.931.8902
11       bennett@fvllp.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 5

 1                    EXHIBIT INDEX
 2                 ORAL DEPOSITION OF
 3          DORSEY T. ROACH, DECEMBER 21, 2017
 4                Description                   Page
 5
     Exhibit 1      Expert Report of Dorsey T. ...  8
 6                  Roach
 7   Exhibit 2      Purchase and Sale Agreement...  56
 8   Exhibit 3      3-15-94 letter from CNG to ...  102
                    Fossil Associates
 9
10
                          ._____.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Dorsey T. Roach
December 21, 2017                                    22 to 25

Page 22

1     A.   It can be to contracts, amendments to leases,
2  amendments to, you know, just any kind of an
3  instrument that -- that wants to be amended, the
4  parties want to amend.
5     Q.   But all these related to land contracts?
6     A.   Yeah, these would all be related to land
7  contracts.
8     Q.   In looking through your relevant experience,
9  can you tell me where you've had experience with
10  business entity formation?
11     A.   My involvement with business entity formation
12  is limited to working for companies that have created
13  separate entities while I've worked for them and
14  usually involving properties that I'm involved with in
15  probably most of these cases.  So I've witnessed
16  myself almost from some of the very first companies I
17  went to work for and have continued to experience this
18  through recent times.
19     Q.   I understand you -- you've worked with
20  business entities, but that's not my question.
21          My question is:  What is your experience with
22  actually forming business entities, creating them,
23  registering them?
24     A.   Oh, I don't have any -- that's not my area of
25  expertise.  That's not my -- my job.  It's never been

Page 23

1  part of my job to do that.
2     Q.   Okay.  And it's never been part of your job
3  to advise clients on why entities should be set up a
4  particular way relative to other entities?
5     A.   No, that has not been part of my job.
6     Q.   Or how those other entities should be
7  involved in the operations of other business entities?
8     A.   I've had experience with that, but it's not
9  my -- hasn't been my job to -- to make decisions on
10  that, or to make new recommendations.
11     Q.   So you -- when you say you've had experience
12  on that, what are you referring to?
13     A.   I think the -- in this day and time, there
14  are situations where companies are creating -- who
15  operate, they are creating separate operating
16  entities.  And this has become very, very common in
17  the oil and gas industry.  There -- but it's not
18  without issues.  And so from that standpoint of --
19  of -- when dealing with an entity, a company that owns
20  working interests but they want to have a wholly owned
21  subsidiary or an affiliate company actually be the
22  operator, serve as the operator.
23          This -- this has developed into various
24  issues, which, with the latest revision of the AAPL
25  Model Form JOA, we've addressed that for the first

Page 24

1  time in the model form.
2     Q.   So when you say these relationships are not
3  without issues, what do you mean by that?
4     A.   Some companies will say that a drilling
5  affiliate owns no interest and that the JOA requires
6  that all parties own an interest.  And so therefore,
7  some people who want to be the operator who are being
8  left out will claim that an affiliate of the party
9  that's designated as operator cannot serve as
10  operator.  So they try to prevent an affiliate from
11  serving as an operator.
12          So those are the issues -- primary issues
13  involving these affiliates.
14     Q.   Well, isn't it true that there are also
15  issues that arise from an operator using affiliates
16  for JOA operations?
17     A.   There's no issues that I'm aware of, because
18  the JOA addresses that and allows that.
19     Q.   And it addresses that and allows that
20  because, without that language, it would have been a
21  problem; right?  It was a problem within the industry?
22     A.   I don't know that it was a problem in the
23  industry.
24     Q.   So, in your experience, there were never any
25  circumstances where an operator was overcharging the

Page 25

1  nonops based on work done by the operator's
2  affiliates?
3     A.   Well, I mean, there's always questions about
4  cost, but --
5     Q.   Well, but I'm -- was the answer to my
6  question yes or no?
7     A.   Could you repeat the question, please?
8          MR. CAMPBELL:  Would you read the
9  question back, please.
10          THE REPORTER:  "So, in your experience,
11  there were never any circumstances where an operator
12  was overcharging the nonops based on work done by the
13  operator's affiliates?"
14     A.   I have been involved with a couple of issues
15  involving affiliates and allegations of overcharges.
16     Q.   (BY MR. CAMPBELL)  And it's in those
17  circumstances, in your experience, the affiliated
18  parties, the operator and its affiliated entity, they
19  usually claim that because the entities are distinct
20  entities, these are arms-length transactions; right?
21  And, therefore, a justified cost?
22     A.   Yes.  Well, the operator is --
23     Q.   The answer was yes?
24     A.   Please repeat the question.
25          MR. CAMPBELL:  Would you repeat the

Dorsey T. Roach
December 21, 2017                                      30 to 33

Page 30

1    A.   Yeah, I don't know -- I understand that that
2  might be part of the allegation.
3    Q.   So, did you render an opinion in here on
4  whether or not -- well, strike that.
5         So, let's kind of set the stage.  I know
6  you've reviewed a number of agreements in this case,
7  and they're listed in your expert report; correct?
8    A.   Yes.
9    Q.   And you recall that -- at least today that we
10 have an issue about the relationship between Ultra
11 Resources, Inc., and UPL Pinedale, LLC?
12   A.   Well, I understand that Fossil has an issue
13 with it.
14   Q.   Okay.  Fair enough.
15        So, have you rendered any opinions on whether
16 or not UPL Pinedale, LLC, was being used to avoid its
17 obligations under the AMI to my client?
18   A.   I have not rendered any opinions.
19   Q.   Okay.  So, if there's something in here that
20 potentially reads otherwise, that would -- that would
21 be incorrect?
22   A.   Yes.
23   Q.   Okay.  And I want to make sure my question's
24 clear.
25        If your written opinion could be read that

Page 31

1  you are providing an opinion on whether or not UPL
2  Pinedale, LLC, was validly formed or otherwise
3  intended to avoid application of the AMI, you're
4  saying today, anyway, you have not provided an opinion
5  on that issue?
6    A.   That's correct.
7    Q.   Going back to our deposition rules, I
8  neglected to mention, if you ever need to take a
9  break, let me know.  I will accommodate.  My only
10 request is that if I have a pending question, you
11 answer the question first.  Is that acceptable?
12   A.   Yes.
13   Q.   So I think we're okay.  It's only been about
14 35 minutes or so, but are you good?
15   A.   I'm good.
16   Q.   In preparing your expert report, have you had
17 any conversations with anybody at Ultra Resources,
18 Inc.?
19   A.   No, I have not.
20   Q.   What about UPL Pinedale, LLC?
21   A.   No, I have not.
22   Q.   Have you had -- strike that.
23        Has anybody provided you with any -- strike
24 that.
25        For purposes of preparing your report, were

Page 32

1  there any assumptions that you were asked to make?
2    A.   Not that I'm aware of.
3    Q.   Okay.
4    A.   No.
5    Q.   Now, I'm going to give you a heads up.  I
6  don't want to get into privileged communications with
7  counsel, I just want to get into whatever -- whatever
8  facts or data were provided to you.
9         So, for purposes of preparing your expert
10 report, you've listed various materials that you've
11 reviewed; correct?
12   A.   Yes.
13   Q.   Who provided you with those materials?
14   A.   Brooke Farnsworth, or his -- his assistant.
15   Q.   Would you take a look at page 3 of your
16 expert report, please.
17        So, paragraph 3, you state:  "In preparing
18 this Declaration, I have reviewed the following
19 documents:"
20        Can you take a quick review of those to
21 refresh your memory?
22   A.   Yes.
23   Q.   Were there any other documents that you
24 reviewed that are not included in this list, to the
25 best of your recollection?

Page 33

1    A.   I double-checked and triple-checked.  This is
2  it.
3    Q.   And you didn't have any conversations with
4  anybody at Ultra about any of the items listed in
5  paragraph 3?
6    A.   No.
7    Q.   Maybe state it -- let me ask the question a
8  different way.
9         Have your conversations regarding this case
10 been limited to counsel for the defendants?
11        MR. BARTLETT:  Objection.  Vague.
12        You can answer if you understand.
13        MR. CAMPBELL:  I'll ask it again.
14   Q.   (BY MR. CAMPBELL)  To the extent you've had
15 conversations about this case, have all of those
16 conversations been with the Farnsworth & vonBerg law
17 firm?
18   A.   Yes.
19   Q.   Let's take a look at your Item 3i.
20        Do you see that?
21   A.   Yes.
22   Q.   The 1996 PSA -- that's Purchase and Sale
23 Agreement; correct?
24   A.   Yes.
25   Q.   -- between CNG and Ultra Petroleum (USA).

Dorsey T. Roach
December 21, 2017                                    34 to 37

Page 34

1        You recall that Ultra Petroleum (USA) was a
2   predecessor to Ultra Resources, Inc.?
3        A.   Yes.
4        Q.   Did you have any conversations with anybody,
5   to your knowledge -- well, strike that.
6        So, you've never had any conversations with
7   anybody who negotiated that Purchase and Sale
8   Agreement; right?
9        A.   Well, I've had conversations with Ultra about
10  15 to 17 years ago, but I don't know if any of those
11  parties had anything to do with this or not.
12       Q.   So let me just be clear.
13       You had conversations with Ultra about 15 or
14  17 years ago related to matters relevant to this case?
15       A.   No.  Unrelated to this case.
16       Q.   Okay.  So, limited to -- to this particular
17  Purchase and Sale Agreement -- maybe my question was a
18  poor one -- you haven't had any conversations with
19  anybody who negotiated this particular Purchase and
20  Sale Agreement about the Purchase and Sale Agreement?
21       A.   No, I have not.
22       Q.   So you have no understanding, sitting here
23  today, of what either of those parties actually
24  intended?
25       A.   Well, I can read the agreements and -- and

Page 35

1   based upon, you know, industry customs and practices
2   with these agreements and the provisions therein, I
3   think I have a pretty clear picture of what they were
4   doing.
5        Q.   Well, but you understand that sometimes
6   agreements don't capture the parties' actual intent,
7   don't you?
8        A.   That can happen.
9        Q.   Yes.
10       So, to the extent that any of them might have
11  been thinking consistently with what you're reading or
12  inconsistently with what you're reading in that PSA,
13  you have no actual knowledge, sitting here today,
14  about what their intent was prior to signing the
15  agreement?
16       A.   Well, I think I do.
17       Q.   You have -- strike that.
18       It's my understanding you have knowledge
19  based on reading the words of the agreement?
20       A.   Yes.
21       Q.   You don't know for a fact whether or not
22  anybody who negotiated that agreement agrees with your
23  interpretation of the agreement?
24       A.   I don't know.
25       Q.   Let's look at 3g on page 3 of Deposition

Page 36

1   Exhibit 1, the 1994 Fossil Agreement.
2        Q.   Do you recall what that was?
3        A.   Yes.
4        Q.   Actually, my mistake.  Let's look at 3c.
5        So I referred you to the amendment.  I'd like
6   to talk about the 1994 unamended agreement.
7        A.   Yes.
8        Q.   Okay.  Now, once again, you haven't spoken
9   with anybody who negotiated that agreement about that
10  agreement?
11       A.   Not about that agreement.
12       Q.   Okay.  You haven't spoken with anybody who
13  executed that agreement about that agreement?
14       A.   No, I have not.
15       Q.   As I understand it -- you tell me if I'm
16  mischaracterizing again -- strike that.
17       As I understand it, based on your testimony,
18  the only conversations you've had regarding this case
19  have been with the Farnsworth & vonBerg firm.
20       Is it fair to say you haven't had any
21  discussions with anybody who negotiated any of the
22  documents listed in paragraph 3?
23       A.   I've had no discussions with any of the
24  parties regarding the documents.
25       Q.   Okay.  And again, when you -- why are you

Page 37

1   qualifying your answer?
2        A.   Well, because I have dealt with parties with
3   the Fossil group, I have dealt with parties with Ultra
4   Petroleum in the past, but nothing to do with these
5   matters.
6        Q.   As to those other matters where you've dealt
7   with Fossil and Ultra in the past, did any of those
8   involve AMIs?
9        A.   We did one large deal with Fossil, Pinedale
10  Anticline.  And this was about 17 years ago, and I
11  can't recall the details of that agreement, what we
12  entered into.
13       Q.   When you say "what we entered into," do you
14  recall who the "we" is?
15       A.   Oh, yes.  I was director of land with
16  Williams Companies in Tulsa, and we were active in the
17  Pinedale Anticline area, and so we met up with Fossil,
18  who had a deal, and we met with them and we bought the
19  deal.  But I can't remember any of the details.  There
20  was a landman who worked for me who actually did a lot
21  of that.
22       Q.   Do you remember who the landman was?
23       A.   Yes.  Chuck Barlow.
24       Q.   Is Chuck still around?
25       A.   He is in Tulsa, last I heard, and was looking

Dorsey T. Roach
December 21, 2017                                    38 to 41

Page 38

1  for work.
2      Q.   So, you've rendered some opinions in here
3  regarding the CNG Purchase and Sale Agreement with
4  Ultra.
5           Do you recall that?
6      A.   Yes.
7      Q.   And those opinions turn, as I understand it,
8  in part upon the understanding of the word "affect,"
9  A-F-F-E-C-T; correct?
10     A.   That, I think, is a key word.  One of
11  several, but that is a key word.
12     Q.   Fair enough.
13          So define for me your understanding of what
14  "affect" means.
15     A.   Pertaining to, something that's tied to, that
16  involves that particular item or property.  It's part
17  of that property.  It goes with the property.
18     Q.   That's your general understanding of the
19  definition of "affects"?
20     A.   In this case, yes.
21     Q.   So what do you mean by "in this case"?
22     A.   Well, "affects" could have different meanings
23  with, you know, different applications.
24     Q.   What do you mean by "with different
25  applications"?

Page 39

1      A.   Well, like, affects -- you know, there
2  are -- it's used in a variety of ways, the term
3  "affects," and, you know -- like, there could be sound
4  effects or visual effects, you know, things like that,
5  but there's --
6      Q.   Affects or effects?  I want to make sure
7  we're talking about the same thing.
8      A.   Affects.  Okay.  Let me back up.
9           It affects -- I'm trying to think of a way to
10  couch this.  It involves.  It's tied to.  It's part
11  of, and it's relative to something.  So...
12     Q.   Okay.  So, focusing on the word "affect,"
13  A-F-F-E-C-T, does that have a unique industry meaning,
14  oil and gas industry meaning?
15     A.   I think it's -- can be used, again, in --
16  depending upon the situation, in different ways.
17     Q.   So, would it be fair to say, when you say
18  "depending on the situation, in different ways," it
19  depends on the contract that's written, the language
20  of the contract that's written?
21     A.   I think that that's -- that's the -- what you
22  have to look at to determine what it means when it
23  says "affects."  You have to look at the contract.
24     Q.   So, there's no unique use of the word
25  "affect" in a trade, custom and usage context within

Page 40

1  the oil and gas industry?
2      A.   Right.  I think that it can have several
3  different meanings, depending upon how and where it's
4  used.
5      Q.   So, when you provide an opinion on what
6  "affect" means in the CNG-Ultra Purchase and Sale
7  Agreement, that's based entirely on your reading of
8  that Purchase and Sale Agreement?
9      A.   I'm providing my opinion as to how -- what
10  the meaning is and how it affects the Purchase and
11  Sale Agreement.
12     Q.   But you already testified, right, that
13  "affect" does not have a unique industry trade, custom
14  and usage definition?
15          MR. BARTLETT:  Objection.  I don't think
16  that's what his testimony was.
17          MR. CAMPBELL:  Well, let me state on the
18  record, your objection should be limited to the form
19  of the question.  I think that's a speaking objection.
20     Q.   (BY MR. CAMPBELL)  But if I've misstated it,
21  I'm giving you an opportunity to clarify it.
22     A.   As I mentioned before, I think that "affects"
23  can have different meanings and different provisions
24  in a single contract.  It can be -- I think that it's
25  not always applied in the same way, it can be applied

Page 41

1  in several different ways.
2      Q.   So, Mr. Roach, if you would please turn to
3  page 5 of your expert report.  And near the top,
4  parenthetically, you define an AMI.
5           Do you see that?
6      A.   Yes.
7      Q.   And you define it as "...an acquisition tool
8  or provision..." et cetera?
9      A.   Yes.
10     Q.   I want to focus on your numbered clause (2)
11  within that parenthetical, where it says:  "requires
12  an acquiring party of the specified types of oil and
13  gas interests to offer to the nonacquiring party a
14  percentage of the acquired interest)."
15          Do you see that?
16     A.   Yes.
17     Q.   So, given that that's your definition of an
18  AMI -- correct, at least in part?
19     A.   In part.
20     Q.   -- can you explain to me why AMIs typically
21  require an acquiring party of the specified types of
22  oil and gas interests to offer to the nonacquiring
23  party a percentage of the acquired interests?
24     A.   Because an area of mutual interest is between
25  two parties who each have the right to share in

Dorsey T. Roach
December 21, 2017                                    42 to 45

Page 42

1  acquisitions within a defined AMI area.  And so if any
2  party should acquire a leasehold or whatever type of
3  interest is specified in the AMI provision, they must
4  offer it to the other parties who have the right to
5  share proportionately in the acquisition by paying
6  their share of the costs.
7      Q.  I understand that's what it does, but why do
8  parties structure the transaction that way?  What's
9  motivating them to enter into that agreement?
10     A.  Because they don't want the competition for
11 new leases after wells have been drilled.  They want
12 to make sure that any wells that are drilled that
13 perhaps prove up acreage, that everyone gets to share
14 in the proved-up acreage.
15     Q.  Let's turn next to -- I'm sorry, page 14,
16 paragraph 12.  You note there:  "Lastly, I am also of
17 the opinion that an open-ended term to an AMI
18 provision is a violation of the Rule Against
19 Perpetuities."
20         Do you see that?
21     A.  Yes.
22     Q.  So, I want to focus first on the Rule Against
23 Perpetuities.
24         It's my understanding you're not an attorney?
25     A.  No, I'm not.

Page 43

1      Q.  You've never gone to law school?
2      A.  Yes, I have.
3      Q.  Oh, you did.
4          Where did you go?
5      A.  Twice.
6      Q.  Twice?
7      A.  Twice.
8      Q.  Where did you go and when?
9      A.  First, I was with Exxon in Los Angeles, and I
10 attended West Los Angeles College of Law.  I was in my
11 second semester when I was notified I was being
12 transferred to Houston.  And West Los Angeles College
13 of Law is an accredited law school, and it's -- now
14 the name has changed.  I don't know what the new name
15 is.
16         But I transferred to Houston with Exxon.
17 Upon arrival, I applied and was accepted to South
18 Texas College of Law.  And towards the end of my first
19 semester, I was notified I was being transferred to
20 Midland, Texas.  So I gave up my pursuit of a law
21 degree at that point.
22     Q.  The fates were against you?
23     A.  Yeah.
24     Q.  So, did you have a -- did you take a real-
25 property law class at either of those two

Page 44

1  institutions?
2      A.  Not those two.  I did in -- when I was --
3  went through the PLM program at OU, I had to take five
4  or six law classes taught by the law professors.  In
5  fact, they're taught in the law school.  The students
6  just go to the law school and take the same classes
7  with the law students.  So I took real-property law at
8  that time.
9      Q.  And just for the record, PLM?
10     A.  Petroleum land management.
11     Q.  So, the classes you took, were any of those
12 real-property classes?
13     A.  Yes.
14     Q.  Were any of those future-interest classes?
15 Do you understand my use of that phrase?
16     A.  Not that I recall.  I mean, we had a class in
17 negotiable instruments, but I don't know if it would
18 have been included in that or not.
19     Q.  So, define for me what the Rule Against
20 Perpetuities is.
21     A.  The Rule Against Perpetuities is a provision
22 that places an obligation on someone that could go on
23 forever and ever.  There's no end to it.  And in my
24 opinion, it's in situations where there needs to be an
25 end and should be an end.  And with AMI provisions,

Page 45

1  it's common to have a termination date for a
2  provision.  But absent a date, this -- these
3  provisions could go on forever and ever and ever.
4      Q.  I understand that's your opinion, but my
5  question was:  Tell me what the Rule Against
6  Perpetuities is.  Can you state the Rule Against
7  Perpetuities, sitting here today?
8      A.  I just know that it's a -- it's a legal --
9  I'm searching for the term here.  I know it's legal
10 subject matter evolving -- involving provisions that
11 would seem to go on without ever terminating or
12 expiring or within a reasonable period of time.
13     Q.  So that describes your full understanding of
14 the Rule Against Perpetuities, sitting here today?
15     A.  I've read a lot about Rule Against
16 Perpetuities, but that would be my layman's
17 definition.
18     Q.  So, you understand that the -- strike that.
19         Can you define for me what a present
20 real-property interest is?
21     A.  I've heard the terms, but I don't want to
22 provide any kind of definition.  I don't have a legal
23 definition for that.
24     Q.  What's your layman's definition?
25     A.  A present legal -- what was the term, again?

Dorsey T. Roach
December 21, 2017                          46 to 49

**Page 46**

1    Q.   What is a present interest in real property?
2    A.   Well, a present interest would be one where
3  you're vested with some form of ownership or other
4  rights in real property.
5    Q.   So what is the difference between vested and
6  nonvested?
7    A.   Vested would mean that you own it.
8    Q.   And nonvested, therefore, means?
9    A.   That you don't own it or that you haven't
10  earned it.
11    Q.   So, what role -- strike that.
12         Can you tell me what a future interest in
13  real property is?
14    A.   A future interest is where, down the road,
15  you can see that you will come into ownership of an
16  interest.  You may not have it now, but you might in
17  the future.  An example would be a reversionary
18  interest, a back end after payout.
19    Q.   So, we'll come back to that.
20         Do you know if future interests can be
21  vested?
22    A.   I don't know the -- from a legal perspective
23  about that.
24    Q.   Can you define what a reversionary interest
25  is?

**Page 47**

1    A.   I think so.
2    Q.   Go ahead.
3    A.   Just my layman's.
4    Q.   Fair enough.
5    A.   Reversionary interest is where an interest
6  that a party has in real property reverts and changes
7  to something else.  Typically, in the oil and gas
8  industry, a party might own an override where, at some
9  points, such as payout of a well, the override
10  converts to a working interest, to a specified working
11  interest.  And this is referred to as a reversionary
12  interest.
13    Q.   What's a remainder interest?
14    A.   A remainder interest would be --
15         MR. BARTLETT:  Can I just have an
16  objection on the record that he's -- said he's not
17  legally trained -- other than his training, he's not a
18  lawyer, so these are not legal definitions that we're
19  putting on the record; correct?
20         MR. CAMPBELL:  I understand that's what
21  the record reflects.
22    Q.   (BY MR. CAMPBELL)  But your opinion states
23  that the AMI provision is a violation of the Rule
24  Against Perpetuities; right?
25    A.   Yes.

**Page 48**

1    Q.   Well, then, do you understand how the Rule
2  Against Perpetuities works, or not?
3    A.   I understand from a layman's perspective that
4  a provision that has no end in sight ever is -- could
5  possibly violate the Rule Against Perpetuities,
6  being --
7    Q.   Could possibly violate the Rule Against
8  Perpetuities; right?  Those were your own words?
9    A.   Yes.
10    Q.   So you don't know, sitting here today,
11  whether or not every interest that goes on forever
12  violates the Rule Against Perpetuities?
13    A.   If it goes on forever, I would say everything
14  would violate.  There has to be an end, but there are
15  some provisions that -- I think, for example, an
16  Operating Agreement will terminate when production
17  ceases.  We don't know when that will be.  It will be
18  in the future.
19         But usually, there are other provisions, such
20  as AMI provisions, that it's industry custom and
21  practice to put a fixed termination date not to let it
22  go on for unlimited time, unknown amount of time.  And
23  those types of provisions, such as AMI provisions,
24  many believe, as I do, and it's my opinion, that those
25  types of provisions that are open-ended like that

**Page 49**

1  violate what's my understanding of the Rule Against
2  Perpetuities.
3    Q.   And that is why I'm asking you about your
4  understanding of the Rule Against Perpetuities.  Fair
5  enough?
6    A.   Yes.
7    Q.   So, let's revisit my question.
8         Can you tell me what a remainder interest is?
9         MR. BARTLETT:  Same objection.  Calls
10  for a legal conclusion.
11         MR. CAMPBELL:  That's not a form
12  objection.
13    Q.   (BY MR. CAMPBELL)  So you're required to
14  answer my question regardless.
15         MR. BARTLETT:  Wait.  Can we go off the
16  record?
17         MR. CAMPBELL:  Sure.
18         (Discussion off the record.)
19    Q.   (BY MR. CAMPBELL)  So, I'm going to ask
20  another question based on our off-the-record
21  conversation, without suggesting that there was any
22  agreement on how you would answer.
23         Is it fair to say that your entire opinion
24  about whether or not the subject AMI violates the Rule
25  Against Perpetuities is based on your belief that

Dorsey T. Roach
December 21, 2017                          50 to 53

Page 50

1  there's no term limit on the AMI?
2       A.   Yes.
3            MR. CAMPBELL:  Want to take a break,
4  Bennett?
5            MR. BARTLETT:  I'm fine.  But --
6            THE WITNESS:  I'm fine.
7            MR. CAMPBELL:  You're good?
8            MR. BARTLETT:  I appreciate being asked.
9       Q.   (BY MR. CAMPBELL)  Let's stick with paragraph
10  12, Mr. Roach.
11      A.   Okay.
12      Q.   Your last sentence there, and it says:
13  "Although open-ended AMI terms are occasionally seen
14  in contracts and agreements, the industry custom and
15  practice is to oppose and avoid such terms due to the
16  problems and confusion they often create between the
17  parties, or their successors or assigns"; correct?
18      A.   Yes.
19      Q.   Now, you qualified your statement there.  You
20  said:  "Although open-ended AMI terms are occasionally
21  seen in contracts and agreements..."
22           You see that?
23      A.   Yes.
24      Q.   So, in your experience, you've seen open-
25  ended AMI terms?

Page 51

1       A.   Several times, yes.
2       Q.   Okay.  And are you aware of whether or not,
3  on any of those occasions, those AMIs were adjudicated
4  to be unenforceable under the Rule Against
5  Perpetuities?
6       A.   I've never seen any of them adjudicated.
7       Q.   So the answer is no?
8       A.   Right.
9       Q.   So, do you have -- in those circumstances
10  that you just identified, were you involved in
11  negotiating those contracts and agreements?
12      A.   I had -- yes.  But we never left the open-
13  ended terms.  There's never been once I've ever been
14  involved with signing or having signed an agreement
15  with an AMI provision with an open-ended term ever.
16      Q.   All right.  So maybe I misunderstood earlier,
17  so let me make sure we're clear.
18           I thought you had said that you've seen
19  open-ended AMI terms in contracts and agreements
20  before.
21      A.   Yes.
22      Q.   Okay.  So I'm going to ask the question
23  again.
24           As to those instances, those specific
25  agreements and contracts where there was an open-ended

Page 52

1  AMI, were you involved in negotiating any of those
2  agreements?
3       A.   No.
4       Q.   Do you have an understanding -- strike that.
5           In those circumstances where you've seen
6  open-ended AMIs and contracts and agreements, how did
7  you come by your knowledge of those agreements?
8       A.   The first time I ever was involved with an
9  AMI provision was 1981, '82.  And we -- I was with
10  Exxon.  We had an attorney at Oklahoma City named Gary
11  Baker, one of the smartest oil and gas attorneys I've
12  ever known, and we had a contract that we asked him to
13  take a look at.  And the first thing he comes
14  back -- or, one of his comments was about the AMI
15  provision being open-ended, and it could possibly
16  violate Rule Against Perpetuities.
17           And Exxon is a company that's old school,
18  that -- extremely conservative.  And that's when I
19  learned and then adopted my position that open-ended
20  AMIs could possibly and perhaps do violate Rule
21  Against Perpetuities.  And I've always stayed with
22  that.  I've never changed my opinion on that.
23      Q.   Is that the only instance where you became
24  aware of a contract -- well, strike that.
25           Limited to the circumstances that you've

Page 53

1  identified where you've said, "I've occasionally seen
2  contracts where they're open-ended AMIs," I asked you,
3  "How did you come by that information?"  You
4  identified that particular situation when you were at
5  Exxon.
6           Do you recall how you came to learn about the
7  other contracts and agreements with open-ended AMIs?
8       A.   It's just where, after the contracts have
9  been negotiated, maybe sometimes a year or several
10  years later, I wind up being involved in looking at
11  the contracts and I see the AMI provision that it's --
12  that it's open-ended.  I've seen these before.  It's
13  not that common, and it's certainly something that the
14  oil and gas industry -- it's not a -- reflective of
15  the oil and gas industry, what they normally do.
16  It's -- it's more uncommon to see open-ended AMIs.
17      Q.   So, in the circumstances where parties in the
18  industry enter into open-ended AMIs, do you have an
19  understanding as to why they would do that?
20      A.   Yes.
21      Q.   And what is it?
22      A.   Ignorance.
23      Q.   How many of those circumstances, to your
24  knowledge, involved agreements that were negotiated
25  and approved by attorneys?

Dorsey T. Roach
December 21, 2017                                    90 to 93

Page 90

1  lease?
2       A.   Absent anything else, I would agree that
3  the -- that's not a reason for the lessor to ignore
4  the lease.
5       Q.   Thank you.
6            So let's go back to page 9 of your expert
7  report, please.  Subparagraph e, near the bottom, you
8  see that bolded quote?
9       A.   Yes.
10      Q.   I cannot find that quote anywhere in the
11  CNG-Ultra PSA.  I know it uses the words "insofar," it
12  uses the words "affects," but that combination of
13  words I cannot find anywhere in the agreement.
14      A.   Yeah, I know that it has "insofar" as far as
15  the leases.  I wrote down the interests.
16      Q.   I don't even know that I could even find
17  "insofar as it affects."
18           MR. BARTLETT:  Why don't you give him a
19  minute to look for it.
20           MR. CAMPBELL:  That's fine.  And I don't
21  mind you helping him if you think you know where it
22  is.
23           MR. BARTLETT:  No.
24           MR. CAMPBELL:  I can't find it.
25           MR. BARTLETT:  Which paragraph of his

Page 91

1  report are you looking at?
2            MR. CAMPBELL:  Page 9e.
3            MR. BARTLETT:  All right.
4       A.   I don't see those exact words, but I'm seeing
5  some stuff that's almost...
6       Q.   (BY MR. CAMPBELL)  Well, I'd like to move on,
7  then.  I think we've given --
8       A.   Yeah.
9       Q.   You feel like you've had adequate time to
10  look for those combination words?
11      A.   I can't find it right off here, but...
12      Q.   So let's turn to page 9 of Deposition Exhibit
13  2, the Purchase and Sale Agreement.
14           At the bottom, you see that highlighted
15  language?
16      A.   Yes.
17      Q.   This is the closest I've been able to find
18  that says "Insofar as the Fossil Agreement pertains to
19  the Interests, Buyer agrees to comply with the terms
20  and conditions of said agreement from and after the
21  Effective Time."
22           Do you see that?
23      A.   Yes.
24      Q.   And you agree with me that "pertains" is a
25  broader word than "affects"; right?  "Affect" means to

Page 92

1  have a consequence; right?
2       A.   "Pertains" means apply.
3       Q.   Or relevant, you would agree with me?
4  "Relevant" would be a synonym for "pertains"?
5       A.   Yeah.  Or, like, I said "apply" insofar as
6  Fossil Agreements apply to the interest.
7            MR. CAMPBELL:  It's 12 -- let's go off
8  the record.
9            (Discussion off the record.)
10           (Break.)
11      Q.   (BY MR. CAMPBELL)  Mr. Roach, before we took a
12  break, you made a distinction between an AMI and --
13  I'm going to get this wrong -- an overriding
14  royalty -- what did you call it?
15      A.   Reservation of overriding royalty.
16      Q.   What is the relevance of that distinction in
17  your mind in this case?
18      A.   Well, it's just that the provision's being
19  referred to as an area-of-mutual-interest provision,
20  and it's not an area-of-mutual-interest provision.
21  It's just a reservation of overriding royalty, is all.
22  The only point I'm making, that if it was an AMI
23  provision, then it would have -- there would be a lot
24  more to it.
25      Q.   So, in your view, it's just a

Page 93

1  mischaracterization that has no substantive impact on
2  your opinions?
3       A.   Yeah.  An AMI is -- in the oil and gas
4  industry is a well-known, pretty well-defined term,
5  and it's used every day, and AMIs are created every
6  day.  And I think the industry as a whole has a good
7  understanding of what an AMI is.
8            So when you see the term "AMI," you're
9  expecting to see one thing.  But when you read this
10  agreement, it reads something different.
11      Q.   But it doesn't -- the distinction doesn't
12  change your opinions that we've discussed here today?
13      A.   Just that -- I don't see this as an AMI.  But
14  other than that, it's -- that's probably about the
15  extent of it.  I just see it as a reservation of
16  override.
17      Q.   So, Mr. Roach, let's go back to your expert
18  report, Deposition Exhibit 1.
19           So, as I understand it, starting with
20  paragraph 6 on page 5 --
21      A.   Yes.
22      Q.   -- pages 5 and 6 describe your interpretation
23  of the 1983 Consulting Agreement as amended by the --
24  as then amended by the 1994 CNG-Fossil Agreement.
25      A.   Yes.  Well, '83 Consulting Agreement replaced

Dorsey T. Roach
December 21, 2017                                98 to 101

Page 98

1    Q.   So, with that understanding, based on your
2  experience in the industry, would CNG be allowed to
3  say, "I don't have to comply with the -- assigning you
4  any of these overrides just because you haven't
5  provided me any services on a going-forward basis"?
6    A.   I think that the override on these so-called
7  AMI lands is -- it was also part of the exchange, that
8  that was -- that they were going to receive an
9  override on some of the offsetting lands, that that
10 was -- for the services they provided, that was part
11 of the deal they made with CNG.
12   Q.   So, regardless of whether or not CNG made a
13 good deal, regardless of whether or not CNG's deal
14 would be enforceable, CNG thought it was making a good
15 deal; right?
16   A.   I can't tell you what CNG was thinking.
17   Q.   Not on any issues; right?
18   A.   Not on any issues that come to mind right at
19 the moment.
20   Q.   So why -- why is it you can tell me what
21 Ultra was thinking and that it's relevant to Ultra
22 that it never received any services?  What is it you
23 know about Ultra that you don't know about CNG that
24 allows you to give an opinion about Ultra?
25   A.   Well, I guess my experience in the oil and

Page 99

1  gas industry, which is 40 years now -- and I've bought
2  many, many, many packages of properties -- producing
3  properties over the years, sold many packages of
4  producing properties, in the billions of dollars, and
5  so I'm familiar with the types of contracts and
6  agreements the parties enter into.  And in this
7  particular case, I think that -- that CNG had an
8  obligation to pay Fossil an override on these AMI
9  lands.  But that was an obligation, and I don't think
10 that that obligation was passed on to Ultra.  I think
11 that the only thing passed on to Ultra was just the
12 leases and the lands under the leases and the wells
13 and the equipment, production, et cetera.  And that's
14 fairly common.
15       When you have -- you're only carving out a
16 small part of an area that was a much larger area
17 between Ultra -- I mean, between CNG and Fossil.  And
18 now, all of a sudden, CNG is saying, "Well, I think
19 I'm going to sell these leases and these wells."
20       And typically, if buyers were going to have
21 to be subject to AMIs, a lot of these deals would
22 never sell.  Ever.  And people -- buyers don't want to
23 be bound by other AMIs unless there was some benefit
24 to them from it or -- unless services were being
25 provided.

Page 100

1    Here, Fossil provided no services to CNG --
2  to Ultra, that -- the way that I see the Purchase and
3  Sale Agreement is that the obligations for this
4  reservation of override on offsetting lands was not an
5  obligation passed on.  I don't see anything in here
6  where it was passed on.
7    Q.   I guess what I'm trying to do is, it seems to
8  me that you're conflating your rationales for why it
9  is Ultra didn't have that obligation.  Because on the
10 one hand, I think you're saying Ultra didn't assume
11 that obligation; and then, in the same breath, you're
12 talking about the fact that Fossil didn't provide
13 services to Ultra.
14       I think you told me that, had this just been
15 CNG, Ultra never entered the picture, CNG would have
16 been obligated to make the assignments.  And the real
17 problem here is that Ultra never assumed the
18 obligation under the CNG-Ultra Purchase and Sale
19 Agreement.  Or are they all -- help me understand --
20       MR. BARTLETT:  Is that a question?
21       MR. CAMPBELL:  Well, maybe not.  Fair
22 enough.
23   Q.   (BY MR. CAMPBELL)  Is there a distinction in
24 your mind between Ultra assuming the obligation --
25 strike that.  I'm going to ask the question a

Page 101

1  different way.
2    Assume with me Ultra had specifically assumed
3  the obligation.  Would there be an argument that
4  because the services weren't provided to Ultra, Ultra
5  doesn't have to comply with the AMI on that narrow
6  issue?  I know you believe Rule Against Perpetuities
7  applies, et cetera.  Just on that narrow issue.
8    A.   See if I understand it.
9    If CNG, what, reserved the AMI?  I'm not
10 sure --
11   Q.   Well, maybe the simplest thing, again, is to
12 just look at it as between Fossil and CNG.
13       So, under the revised '94 agreement, let's
14 assume CNG acquired a new lease in the AMI.
15       Are you with me?
16   A.   Uh-huh.
17   Q.   At least according to the terms of the
18 agreement, CNG would be obligated to assign an
19 override to Fossil?
20   A.   Yes.
21   Q.   Okay.  Would CNG have a defense, under the
22 terms of this agreement, that Fossil did not provide
23 it with any services associated with CNG's acquisition
24 of a brand-new lease from the BLM?
25   A.   I don't see anything in here that CNG could

Page 106

1  interest, picking up new leases.
2      Q.  So your opinion comes from paragraph --
3  reading of paragraph 4 of the revised agreement --
4      A.  Yes.
5      Q.  -- Exhibit 3?
6      A.  I haven't had a chance to go back through and
7  read all the other provisions, but that, I think,
8  expresses my opinions on that, so...
9      Q.  So, paragraph 4 doesn't have the word
10 "producing" anywhere in there; right?
11     A.  No.
12     Q.  Or "nonproducing"; right?
13     A.  No.
14     Q.  Doesn't have the word "developed" in there;
15 right?
16     A.  No.
17     Q.  Or "undeveloped"; right?
18     A.  No.  I think that most of the time, AMIs are
19 anticipating that you're talking about undeveloped
20 leasehold.  That's usually what AMIs pick up.  But
21 AMIs can also be written to acquire other interests as
22 well.  But this one is not written to acquire other
23 interests.
24     Q.  It isn't?  What's a lease?  Is there -- if a
25 lease has been developed, is it no longer a lease?

Page 107

1      A.  No, but it -- it falls into a category of --
2  of developed.  It's been developed.  And --
3      Q.  But this says the AMI surrounding each
4  individual lease shall remain in effect, so long as
5  each individual lease listed on Exhibit B or acquired
6  within the AMIs remains in effect.  It's talking about
7  leases; right?  It doesn't say undeveloped leases;
8  right?
9      A.  Yeah, it says as long as any leases are in
10 effect.  So, again, the way AMI provisions work,
11 industry custom and practice is that it usually
12 applies to undeveloped leases, and when the leases
13 expire, they're no longer covered; but anyone acquires
14 any new leases, it's usually referring to undeveloped
15 leases.  Otherwise, you're talking about buying
16 producing properties, and producing properties have
17 leases in them, but they're already developed.  And
18 that -- under the -- what was I going to say?  They're
19 fully developed, but the AMI provision doesn't say
20 that it covers and applies to purchasing wells and,
21 you know, other -- you know, other property like that.
22 It's just talking about buying just the leases.
23     Q.  So, well, help me understand that.
24         Why would it need to make a distinction?
25         A producing lease is an oil and gas lease;

Page 108

1  right?
2      A.  Yes.
3      Q.  A nonproducing lease, in its primary term, is
4  an oil and gas lease; right?
5      A.  Yes.
6      Q.  So, when this provision says it applies to
7  leases and it makes no distinction as between
8  developed or undeveloped, doesn't it need to
9  contemplate both?
10     A.  I don't think so.  I think, again, industry
11 custom and practice, the way AMI provisions are
12 applied every day in the industry is towards
13 undeveloped leasehold.
14     Q.  So you're reading that phrase "undeveloped"
15 into paragraph 4; right?
16     A.  Yeah.  I mean, that's -- that's how I see
17 this.  And I think most other people would see it the
18 same way, that when you have an AMI provision, it's
19 talking about acquiring leases.  You're talking about
20 acquiring undeveloped leaseholds.
21     Q.  Then you would agree me, then -- because
22 you're reading that into this provision; right?  We're
23 clear on that?  It doesn't say it, explicitly?
24     A.  Based upon my experience and industry custom
25 and practice.

Page 109

1      Q.  Okay.  So you would agree with me, then, that
2  if the parties who negotiated this agreement intended
3  otherwise, that would trump your reading into this
4  agreement; right?
5      A.  Well, but it doesn't say otherwise.
6      Q.  That's not my question.
7         I want you to assume with me that the parties
8  who negotiated this agreement intended for it to
9  apply -- for it to apply to developed and undeveloped
10 leases.
11         Wouldn't that trump, in your experience, your
12 industry custom and usage?
13     A.  I'd just have to see the language.
14     Q.  Well, just, with all due respect, you're an
15 expert witness; right?
16     A.  Yes.
17     Q.  I'm allowed to ask you hypothetical
18 questions.  I've asked you to assume two very simple
19 facts; right?  That, one, CNG intended for it to apply
20 to developed and undeveloped leases; and, two, that
21 Fossil intended for it to apply to developed and
22 undeveloped leases; right?
23     A.  I understand that Fossil has intended for
24 that, but I haven't seen anything where CNG intended.
25     Q.  That wasn't my assumption.  I'm asking you to

Page 110

1   assume that that's what they intended.
2       So, for assumption, we're assuming for
3   argument that that's a true statement.  Isn't it true
4   that that would govern what the parties intended?
5       A.   You know, there --
6           MR. BARTLETT:  I'm going to object to
7   the form of the question to the extent it calls for a
8   legal answer.
9       You may answer --
10      Q.   (BY MR. CAMPBELL)  Well --
11          MR. BARTLETT:  Or legal conclusion.
12      A.   And there's not really a yes-or-no answer to
13  this.
14      Q.   (BY MR. CAMPBELL)  Well, that's my point;
15  right?  Industry custom and usage, you know, is only
16  going to be relevant if the phrase is ambiguous;
17  right?
18      A.   Well, and I think that --
19      Q.   Well, I'm sorry, yes or no, and then I'll let
20  you explain.
21          Right?  Industry custom and usage -- you've
22  been around the block -- is relevant if the phrase is
23  ambiguous?
24          MR. BARTLETT:  I repeat the same
25  objections to the form.

Page 111

1       A.   I don't think it necessarily has to be
2   ambiguous, it's just sometimes agreements just are
3   silent.  They don't address something, and so you rely
4   on industry custom and practice.  Not that they're
5   ambiguous, they're just -- well, they're silent.
6       Q.   (BY MR. CAMPBELL)  Do we always rely just on
7   industry usage, custom and practice, or do we also
8   rely on what the parties intended and how they
9   performed?
10      A.   Well, I think it, again, depends.  If there's
11  nothing in writing, and if you have a third party come
12  in and buying the properties, how are they going to
13  know?
14      Q.   I'm not asking about third parties; right?
15  We're asking about what the parties who signed this
16  agreement and negotiated the agreement intended;
17  right?  That's what I'm asking you about.  And
18  you -- again, you tell me if I'm wrong.
19          It doesn't say "developed" or "undeveloped"
20  anywhere in paragraph 4; right?
21      A.   No, it does not.
22      Q.   And you are reading into this agreement that
23  distinction based on your perceptions of how industry
24  would ordinarily want to do this; right?
25      A.   Yes.

Page 112

1       Q.   That doesn't mean that that's necessarily
2   what the parties themselves wanted to do; right?
3       A.   It may not be.
4       Q.   That's right.
5           And you don't know what they intended,
6   because we established earlier in the deposition that
7   you've only ever talked to Farnsworth & vonBerg law
8   firm; right?
9       A.   Yes.
10      Q.   If you would, Mr. Roach, turn to page 12, the
11  top of page 12.
12      A.   Of?
13      Q.   Your expert report, Exhibit 1.  I'm sorry.
14      A.   Okay.
15      Q.   Near the top, you note that "Another reason
16  Ultra Resources did not recognize Fossil as being
17  entitled to an overriding royalty on any of the SWEPI
18  or WPX properties is while Ultra Resources may have
19  viewed itself as being subject to the AMI provision in
20  the Letter Agreement, UPL Pinedale does not."
21          Do you see that?
22      A.   Yes.
23      Q.   So, I mean, given that you haven't talked to
24  anybody except Farnsworth & vonBerg, how do you come
25  by that conclusion?  How do you know that's what Ultra

Page 113

1   Resources intended or didn't intend?
2       A.   Well, I think the reason why there's
3   litigation right now is because UPL Pinedale did not
4   feel that they were subject to that AMI provision, so
5   they didn't recognize that when they made the
6   acquisitions, and that, to me, is their statement that
7   they don't feel like they're subject to it.
8       Q.   That's not your whole statement.  You also
9   state that "...while Ultra Resources may have viewed
10  itself as being subject to the AMI..."
11          Where did you come by that knowledge that
12  Ultra viewed itself as being subject to the AMI
13  provision of the Letter Agreement?
14      A.   I really can't recall.
15      Q.   Is your report incorrect?
16          MR. BARTLETT:  Object to the form of the
17  question.  Misstates the language in it.
18      A.   No.  No.
19          MR. CAMPBELL:  That is another speaking
20  objection.  I haven't misstated anything.
21      Q.   (BY MR. CAMPBELL)  Are those the words that
22  appear in your report, yes or no?
23      A.   Yes.
24      Q.   So, what do they mean?  You wrote this.
25          Strike that.

Dorsey T. Roach
December 21, 2017                    118 to 121

Page 118

1     A.   I think --
2     Q.   Well --
3     A.   I've read that.  I don't agree that that was
4  the reason why UPL Pinedale was formed, though.
5     Q.   I understand that you agree that's not the
6  reason for it.
7     A.   There's no evidence to that.
8     Q.   You don't have any evidence either way, do
9  you?
10    A.   No, I don't.  Do not.
11    Q.   Thank you.
12         So, Mr. Roach, if you would go back to
13  Deposition Exhibit 3, the 1994 consulting agreement.
14  Let's turn to page 4.
15    Paragraph 15 states:  "Any transferee of an
16  interest hereunder shall agree in writing to be bound
17  by the provisions of this agreement."
18         Do you see that?
19    A.   Yes.
20    Q.   And what is your understanding of what that
21  paragraph 15 is intended to do?
22    A.   I think that if it -- CNG were to sell or
23  transfer its interest to a third party, that the third
24  party -- that the transfers be placed in writing that
25  it's subject to this agreement, and I believe that

Page 119

1  there are provisions in this agreement that do apply
2  to such an acquisition.
3     Q.   So, does this provision give CNG the
4  discretion to divide up the obligations that are
5  provided for in the 1994 agreement?
6     A.   I don't see anything that would prohibit
7  them.  But again, this is one of those things
8  that's -- it doesn't address that question or that
9  issue one way or the other.
10    Q.   So, either way, in your view, it doesn't say
11  whether or not CNG could structure the CNG-Ultra PSA
12  the way it did so that some of the properties went and
13  some of the AMIs stayed, et cetera?
14    A.   I think they had the right to do that.
15    Q.   But you don't know either way what the
16  parties intended.  That's what you just testified.
17  The provision's ambiguous.
18    A.   I think that the provisions, the agreements,
19  do not address certain things happening.
20    Q.   And by "certain things," that includes
21  whether or not CNG can assign some obligations under
22  this agreement and not others to a purchaser?
23    A.   Yeah, I think that it's -- I don't see
24  anything that would prohibit them from doing that.
25    Q.   You don't -- but you also said you don't see

Page 120

1  anything that allows them to do that; right?
2     A.   It's silent.
3     Q.   It's silent on the question.  Okay.
4         So let's go back to paragraph 4 of Deposition
5  Exhibit 3, the 1994 PSA.
6         Explain to me why -- strike that.
7         Is the AMI term-limited in paragraph 4, based
8  on your reading of it?
9     A.   No, it's not term-limited.
10    Q.   And by "term-limited," we mean what?
11    A.   There's a fixed termination date when this
12  provision will terminate or expire.
13    Q.   Does it provide, in paragraph 4, for when the
14  AMI will terminate?
15    A.   No, there's nothing that addresses when the
16  AMI is going to terminate.
17    Q.   What does paragraph 16 of Exhibit 3 say?
18    A.   The agreement will terminate when the last
19  AMI terminates.
20    Q.   Okay.  So it at least contemplates that when
21  the AMIs terminate, the agreement terminates; right?
22    A.   Yes.
23    Q.   And then you would agree with me that it says
24  that -- strike that.
25         You understand that paragraph 4, as to the

Page 121

1  AMIs that are at issue in this case, it creates blocks
2  of AMIs?
3     A.   Yes.
4     Q.   And the provisions to paragraph 4 say that
5  each block of those AMIs will expire when the leases
6  within the AMI all expire?
7     A.   Yes.  When the last lease expires in that
8  block.
9     Q.   Okay.  So why is it that you believe this AMI
10  can continue forever?
11    A.   Because as long as there is -- a lease is
12  alive, if you continue to buy leases and offsets and
13  then drill wells, then this is going to extend the
14  life of that block of acreage, and I believe that it
15  will also continue -- the AMI itself continues, I
16  believe, to change as additional leases are acquired.
17  And this AMI just could -- it's a living, roaming
18  target as to what it might cover on any given day and
19  what leases are covered and when it might expire, and
20  an AMI like this could go on for tens and dozens of
21  years.  There's no telling how long.  And how large
22  the AMI can grow to.
23    Q.   Well, that's -- let's address that point.  I
24  mean, look at paragraph 4.  It says the AMI is
25  comprised of all sections -- strike that -- "...all

Dorsey T. Roach
December 21, 2017                                    122 to 125

Page 122

1  sections contiguous to sections containing existing
2  leases as set out on Exhibit 'B'..."
3        Do you see that?
4     A.  Yes.
5     Q.  So that's the scope of the AMI; right?
6     A.  It says, going on, that "The AMI surrounding
7  each individual lease lying outside of the Jonah Gulch
8  shall remain in effect so long as each individual
9  lease listed on Exhibit 'B,' or acquired pursuant to
10 the terms of this paragraph within the AMI's[sic],
11 remains in effect and shall expire on an AMI by AMI
12 basis..."  [As read]
13    Q.  So where in this paragraph does it say that
14 you have a step-out AMI that continues to expand?  It
15 doesn't say that, does it?
16    A.  It just says that "In the event that CNG
17 acquires a leasehold interest with any AMI, Fossil
18 shall be assigned an override on the same basis..."
19 [As read]  But it doesn't say that it's limited to the
20 block of acreage.
21    Q.  Where is that in your expert report?
22    A.  Where is it?
23    Q.  Where is that opinion in your expert report?
24    A.  Did I not address that?
25    Q.  You tell me.

Page 123

1     A.  I know I was certainly thinking about it.  I
2  may not have put that in -- you know, I know where I
3  was beginning to touch on it, and I may have just
4  accidently left that out.  But from what I can tell
5  from this, as additional leases are acquired, that it
6  expands each of the AMI blocks.  I would think --
7     Q.  So tell me again how you get there based on
8  the language of paragraph 4.  Walk me through the
9  words that lead you to that conclusion.
10    A.  Well, I can't -- there isn't a provision that
11 expressly says that.
12    Q.  Do you know if Ultra has ever interpreted it
13 that way?
14    A.  I have no idea.
15    Q.  Do you know if Fossil has ever interpreted it
16 that way?
17    A.  I don't know.
18    Q.  Do you know if CNG has ever interpreted it
19 that way?
20    A.  I don't know.
21    Q.  Do you know if Ultra's even made that claim
22 in this case?
23    A.  I don't even know.  I don't recall their
24 making that -- that claim.
25    Q.  So, is there an extensions and renewals

Page 124

1  clause in paragraph 4?
2     A.  No.
3     Q.  Might that be relevant to whether or not a
4  party could, in perpetuity, continue to get new leases
5  to perpetuate the AMI?
6     A.  Usually, extension renewal leases have to be
7  acquired within six months after expiration.
8     Q.  But not always.  You yourself just said
9  "usually."
10    A.  Well, the operating agreements, I think
11 that's industry custom and practice, is six months.
12 You've got 60 years of operating agreements out there
13 that say six months.
14    Q.  But looking at it -- when we talk about
15 extensions and renewals clauses in the context of
16 overrides on working interests, the override applies
17 to the extended renewal or new lease if there is an
18 extension and renewal clause in the assignment of the
19 override; correct?
20    A.  Yes.
21    Q.  And wouldn't the same hold true as to an AMI?
22    A.  That if a lease is extended or renewed?
23    Q.  Or it expires and somebody gets annuities.
24    A.  I would say that the override would apply, as
25 I've already said, to extensions and renewals.

Page 125

1     Q.  Listen to my question.
2        The override would apply to extensions and
3  renewals if there is a contractual provision that
4  allows for the override to apply to extensions and
5  renewals; right?
6     A.  Usually, when overrides are reserved, there's
7  usually a sentence that will say it applies to
8  extensions and renewals.
9     Q.  But you're not answering my question.  You're
10 avoiding my question.  Right?
11    A.  It's there because, in the absence of that
12 language, the extensions and renewals clause is
13 usually there because, without it, the override would
14 not carry through to the extended or renewed lease;
15 correct?
16    A.  Yes.
17    Q.  So doesn't the same analysis apply to an AMI?
18    A.  In what manner?  I don't understand what you
19 mean.
20    Q.  Well, I guess it's -- this agreement -- tell
21 me if I'm wrong, based on how it reads -- provides
22 that the AMIs expire when the leases expire; right?
23    A.  Yes.
24    Q.  So if the leases expire and the AMI doesn't
25 carry through to new leases on the same land or

# EXHIBIT A-1

## UNITED STATE BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| ULTRA PETROLEUM CORP., et al | § § | Case No. 16-32202 |
| Debtor | § § § | (Jointly Administered) |
| | § | |
| GASCONADE OIL CO. | § § | |
| RIGGS OIL & GAS CORPORATION | § | |
| THE ROY H. DUBITZKY TRUST | § | |
| DATED JUNE 28, 1996, ROY H. | § | |
| DUBITZKY, TRUSTEE | § § | |
| Plaintiffs | § § | |
| v. | § § | Adversary No. 17-03019 |
| ULTRA RESOURCES, INC. | § § | |
| UPL PINEDALE, LLC | § § | |
| Defendants | § § | |
| | § | |

## EXPERT REPORT OF DORSEY T. ROACH

DORSEY T. ROACH declares under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

1. My name is Dorsey T. Roach. I am over 18 years of age, of sound mind, and am otherwise competent to make this Expert Report. The facts stated in this Expert Report are within my personal knowledge and are true and correct to the best of my belief. I was retained by Ultra Resources, Inc., a wholly-owned subsidiary of Ultra Petroleum Corporation ("Ultra

1



EXHIBIT 1
Roach
December 21, 2017
Reported by:
D. SANDERS, CSR, RDR, CRR

Resources") and UPL Pinedale, LLC ("UPL Pinedale") through their attorneys with the Farnsworth & vonBerg, LLP law firm, to provide expert opinions in the above-named and numbered cause as to the industry custom and practices with respect to relevant documents, and how they apply to the facts of this case. This Expert Report constitutes the opinions I have developed. My qualifications to provide expert opinions in this case include the following:

- I graduated from the University of Oklahoma in 1977 with a B.B.A., majoring in Petroleum Land Management (PLM). Upon graduating, I began my career with Exxon Corporation ("Exxon"). I have held various staff and management positions with Exxon, Mesa Petroleum Co., Crawley Petroleum Corporation, Union Pacific Resources Company, the Williams Cos. and Cheyenne Petroleum Company where my duties and responsibilities were primarily joint operating agreements, well trades and participation agreements. I am currently the managing member of UnitPro Land Consultants, LLC, where I offer consulting and expert witness services to the oil and gas industry.

- I am an author and have given hundreds of presentations and seminars on joint operating agreements, well trades and participation agreements to such organizations as the American Association of Professional Landmen ("AAPL"), the Southwestern Legal Foundation, the Rocky Mountain Mineral Law Foundation, the Texas, Oklahoma, Kansas and Arkansas Bar Associations, the Oklahoma Marginal Well Commission, the Oklahoma Corporation Commission and many local landmen's associations and other industry-related organizations. I also served as an adjunct professor at the University of Oklahoma (1983-2008) and Tulsa University (2007-2015) where my primary lecture topics were joint operating agreements and well trades.

2

- I served as Chairman of the AAPL 1989 Operating Agreement Revision Committee that drafted the AAPL Form 610-1989 Model Form Operating Agreement, and I served as a member of the AAPL Operating Agreement Task Force that drafted the AAPL Form 610-1989 (Horizontal) Model Form Operating Agreement, and the AAPL Form 610-2015 Model Form Operating Agreement.

- I currently serve as Chairman of the AAPL Participation Agreement Drafting Committee that is responsible for drafting a model form participation agreement.

- My curriculum vitae, containing additional details regarding my career, is attached hereto as Exhibit "A."

2. I am being compensated for this matter at $200 per hour for study and testimony, plus reimbursement of expenses.

3. In preparing this Declaration, I have reviewed the following documents:

    a.   (Bates 62-171) WY–Assignment Conveyance and BOS, Sublette Co., WY

    b.   Certificate of Formation @ 2014 -8-03

    c.   Fossil 1994 Agreement

    d.   First Amendment to SWEPI PSA (2014-09-25)

    e.   Second Amendment to SWEPI PSA (2015-08-13)

    f.   1-23-90 Amendment

    g.   02 – Fossil 1994 Agreement - Amendment

    h.   02-LLC Agreement for UPL Pinedale (2014-08-13)

    i.   03-1996 PSA between CNG and Ultra Petroleum (USA)

    j.   03-Certificate of Authority in Wyoming (UPL Pinedale)

3

k.  4-15-88 Amendment

l.  5-7-86 Amendment

m.  6-22-88 Amendmeñt

n.  17.01.05 Gasconade v Ultra Original Complaint

o.  17.02.21 Defendants' Original Answer Counterclaim

p.  17.03.17 Answer to Counterclaims

q.  2014-09-25 – Capital Contribution Letter (SWEPI Acquisition)

r.  2017-09-01 Cummings Expert Report - Gasconade

s.  Services Agreement by UPL Pinedale and Ultra Resources @ 2014-09-25

t.  SWEPI-UPL – Purchase and Sale Agreement (2014-08-13)

u.  Ultra Petroleum – Org Chart @ 2017-04-12

v.  Consulting Agreement dated 11/1/83 between Fossil and CNG

w.  05-2017 PSA between WPX Energy and UPL Pipeline

4.  After reviewing the above documents, I have formed opinions regarding Plaintiffs' allegations and claims that Ultra Resources, as successor in interest to CNG to certain properties in Sublette County, Wyoming, breached the 1994 Letter Agreement when UPL Pinedale purchased certain leases and wells in Wyoming from SWEPI and from WPX Energy RM Company without assigning Plaintiffs an overriding royalty in some of the leases. My opinions are based upon common and accepted oil and gas industry customs and practices and include the matters set forth below.

5.  Pursuant to a Consulting Agreement dated November 1, 1983 (Consulting Agreement"), Fossil Associates ("Fossil") agreed to provide services to CNG Producing Company ("CNG")

4

including giving CNG a first right of refusal to purchase oil and gas drilling prospects ("Prospects") originated and assembled by Fossil within a defined Area of Mutual Interest ("AMI") that covered lands in various counties and states in the Rocky Mountains and elsewhere (an "AMI" is an acquisition tool or provision that is incorporated into a written agreement between 2 or more parties that (1) defines a geographical area to which the AMI applies, and (2) requires an acquiring party of the specified types of oil and gas interests to offer to the non-acquiring party a percentage of the acquired interest). Fossils' services also included providing to CNG the geological and geophysical technical data it prepared or assembled that supported and/or identified a Prospect, Fossils' evaluation and analysis in support of the drilling of a Prospect well, the estimated costs of leasing and drilling a Prospect, and responsibility for the leasing of lands in a Prospect. In exchange for these services, Fossil was initially paid a monthly retainer fee of $21,500 by CNG to cover Fossil's overhead and salaries, and Fossil received other forms of consideration as well including, but not limited to, an overriding royalty on all leases acquired within the AMI, a 12.5% reversionary interest "after payout" (as defined in the Consulting Agreement), and the option to retain and participate with up to 12.5% of the acquired working interest in a Prospect.

6. Pursuant to a Letter Agreement dated March 15, 1994, and referenced therein as the "Southwestern Wyoming Revised CNG/Fossil Agreement" ("Letter Agreement"), Fossil and CNG agreed that the Letter Agreement "…shall supersede and replace all previous agreements executed by the parties insofar, and only insofar, as such previous agreements relate to Sublette, Sweetwater, Lincoln and Uinta Counties in Wyoming, hereinafter referred to as the Contract Area, and specifically, but not limited to that certain Consulting Agreement dated November 1,

1983, as amended...". Therefore, the Letter Agreement both terminated and replaced the Consulting Agreement as to the named counties in Wyoming, including Sublette County, but it had no effect on the Consulting Agreement for leases, lands, wells, equipment and production outside of the Letter Agreement's Contract Area.

7. The Letter Agreement further replaced Fossil's prior overriding royalties and other consideration with a fixed 5.5% overriding royalty on existing leases in the Jonah Gulch Prospect, and a 5.0% overriding royalty on existing leases in the Contract Area. The Letter Agreement also created a 9-section AMI surrounding each individual lease still in effect, or any of the leases in the AMI are still in effect, and eliminated the following:

      a.  The monthly $21,500 retainer fee paid to Fossil;

      b.  CNG's first right of refusal to buy Prospects generated by Fossil;

      c.  Fossil providing CNG with Prospect technical data and evaluations;

      d.  Fossil leasing Prospect lands;

      e.  Fossil receiving a reversionary interest after payout;

      f.  Fossil having the right to acquire up to 12.5% working interest in a Prospect;

Therefore, the Letter Agreement eliminated any and all services required for Fossil to provide to CNG, and eliminated CNG's payment of the required monthly retainer fee to Fossil. The Letter Agreement also provided for Fossil to receive a 5.0% overriding royalty on new leases acquired by CNG that lie within any AMI outside of the Jonah Gulch Prospect.

8. Pursuant to a Purchase and Sale Agreement dated July 17, 1996 ("CNG PSA"), CNG agreed to sell to Ultra Petroleum (USA) Inc. the following:

a. The oil and gas leases listed on Exhibit A to the CNG PSA ("Leases") limited, however, to the lands described on Exhibit A ("Lands");

b. All property, production and rights incident to the Leases;

c. All wells associated with the Leases including, but not limit to, those listed on Exhibit B;

d. Gathering and flowlines;

e. Pipelines;

f. Facilities;

g. all other personal property, equipment and fixtures appurtenant thereto;

All of the above items are collectively called the "Interests". The Interests were sold to Ultra subject to the Letter Agreement but only insofar as the Letter Agreement "affected" the Interests.

9. Pursuant to a Purchase and Sale Agreement dated 8/13/2014, by and between SWEPI LP and Ultra Resources, Inc. and UPL Pinedale, LLC, SWEPI sold and assigned oil and gas producing properties it owned in Sublette County, Wyoming, to UPL Pinedale ("SWEPI PSA") and a Purchase and Sale Agreement dated 5/8/2017, by and between WPX Energy RM Company and UPL Pinedale ("WPX PSA"). It is through this acquisition that UPL Pinedale acquired producing wells and related leases from SWEPI and WPX that involved some of the lands offsetting the Interests Ultra Resources acquired from CNG. Plaintiffs claim some of these leases lie within AMI's created under the Letter Agreement, and that they are entitled to an overriding royalty on these leases from UPL Pinedale in accordance with the Letter Agreement. Ultra and UPL Pinedale dispute Fossil's allegations and claim.

7

10. After having reviewed the above case documents, I have developed the following opinions regarding the issues in this case:

a.  The Interests acquired by UPL Pinedale from SWEPI and WPX were not subject to the Consulting Agreement or the Letter Agreement.

b.  The Letter Agreement converted the consideration already earned by Fossil for services provided to CNG under the Consulting Agreement and replaced it with a fixed overriding royalty and a 9-section AMI surrounding each of the existing leases.

c.  In the CNG PSA, CNG assigned the Interests to Ultra Petroleum (USA) Inc., which was subsequently named Ultra Resources, Inc., subject to the terms and conditions of the Letter Agreement insofar as it affects the Interests. The Letter Agreement does affect the Interests in several ways because it provides for Fossil's retained overriding royalty in the Leases whether or not filed for record, and it also affects the Leases in that it provides should CNG decide to release or terminate a lease, that Fossil has the right to take over the lease. However, it is my opinion the Letter Agreement's AMI provision does not apply to the acquisition of new leases covering lands adjacent to the Lands described in the Leases after Ultra acquired the Interests from CNG. Therefore, it is my opinion that the Letter Agreement's AMI provision does *not* affect the Leases assigned in the CNG PSA in that the AMI provision applies to the lands that lie outside of the Leases. Although Ultra may have subsequently acquired new leases in one or several of the AMI areas, and assigned Fossil an overriding royalty in same, I am of the opinion this was not necessary as they were under no obligation to do so.

8

d. In the CNG PSA, CNG retained all properties, rights and interests under the Letter Agreement that were not assigned to Ultra Resources including all lands, leases, wells and production. In my opinion, the rights retained by CNG would also include the AMI's surrounding the Leases, and CNG would have a continuing obligation to give Fossil an overriding royalty on offsetting lands and leases that CNG should acquire in the AMI, not Ultra Resources.

e. If the AMI provision in the Letter Agreement was intended to apply to Ultra Resources, an all-inclusive provision would be needed in the CNG PSA making it abundantly clear that the buyer is subject to *all* of the terms of the Letter Agreement, "including but not limited to" the AMI provision, that the buyer accepts and agrees to be bound by these terms and conditions and that the seller agrees not to compete for a certain period of time. However, the CNG PSA does just the opposite and instead provides that Ultra Resources agrees to comply with the Letter Agreement "…*insofar as it affects the Interests*". Therefore, it limits the application of the terms and conditions to just the Interests and nothing more.

f. The Assignment, Bill of Sale and Conveyance attached as Exhibit D to the CNG PSA states CNG is assigning "All of Assignor's right, title and interest in and to those certain oil and gas leases listed and described on Exhibit "A"…and in the contractual interests and other interests described in Exhibit "A" (all of which are herein called the "Leases") *insofar and only insofar as the Leases cover and relate to the lands described in Exhibit "A" (herein called the "Lands").*" The AMI lands all lie outside of the Lands described

in the Leases on Exhibit "A". Therefore, in my opinion, the AMI provision in the Letter Agreement does not apply to the Leases and Interests Ultra acquired from CNG.

g. It is my understanding Ultra chose to have UPL Pinedale acquire the SWEPI properties in order to take advantage of SWEPI's post-production agreements. However, I do not think it makes any difference why they created UPL Pinedale. In this day and time there are many, many companies that have affiliates, subsidiaries, parent corporations or other related entities. The AAPL Model Form Operating Agreements[1] and the COPAS Accounting Procedures[2] both acknowledge and contain provisions dealing with related entities.

Companies use, or create, related entities for a variety of reasons including keeping an acquired company segregated and managed separately from its other companies for tax reasons, for environmental or other liability reasons, lender requirements, or to create a new company division (ex. – midstream, pipeline, energy trading, etc.). I have worked for companies that had such affiliates or related entities (Ex. - look at Exxon Corporation's acquisition of XTO in 2010 which it continues to maintain as a separate entity from its domestic E&P company since acquiring XTO). The Williams Cos. in Tulsa is a pipeline company that bought Northwest Pipeline in the mid-1990's. NWPL was a pipeline company, too, but it also owned and operated upstream E&P properties in the San Juan Basin. When Williams bought NWPL, they transferred the upstream properties into a newly created Williams Production Company. When I worked

---

[1] American Association of Professional Landmen Form 610-2015 Model Form Operating Agreement (Articles V.A, V.B., V.D, and VIII.F)

[2] Council of Petroleum Accountants Societies 2005 Accounting Procedures (Articles I.C and II.7)

for Mesa Petroleum, Mesa bought Tenneco's Mid-Continent Division. Since Mesa borrowed most of the acquisition funds, the lenders required Mesa to create Mesa Midcontinent and place all of the properties into this new entity until the loan was paid down.

I have seen no evidence that indicates, much less proves, that the SWEPI or WPX properties were bought in the name of UPL Pinedale, LLC to avoid liabilities, or that it was a scheme to defraud Plaintiffs, or that Ultra Resources has stolen or converted any of Plaintiffs' overriding royalty production proceeds, or that Ultra Resources knew that Plaintiffs would expect to be compensated for the SWEPI or WPX properties.

It is my opinion that Ultra Petroleum had every right to create UPL Pinedale who would acquire the SWEPI and WPX properties, that creating new entities to transfer property interests into is very common in the oil and gas industry and done for a variety of reasons, that Ultra Resources had no duty or obligation under the Letter Agreement or CNG PSA to explain the creation of this new entity to Plaintiffs, and that there is no evidence that would show or indicate that UPL Pinedale was created to cheat Fossil out of any overriding royalties.

The AMI provisions in both the Consulting Agreement and the Letter Agreement contemplate the acquisition of *undeveloped leases*, primarily through federal government lease sales, for the purpose of identifying and creating a prospect, and drilling a prospect well. The SWEPI PSA and the WPX PSA were acquisitions primarily of *producing properties*. At no time did Plaintiffs provide any services and/or other valuable consideration to Ultra Resources or UPL Pinedale that identified, generated, supported or

11

assisted either entity in UPL Pinedale's acquisition of the SWEPI or WPX properties. Another reason Ultra Resources did not recognize Fossil as being entitled to an overriding royalty on any of the SWEPI or WPX properties is while Ultra Resources may have viewed itself as being subject to the AMI provision in the Letter Agreement, UPL Pinedale does not. It is for this reason Ultra Resources and UPL Pinedale have refused to assign an overriding royalty interest in the properties acquired from SWEPI or WPX to Plaintiffs. I have further seen no evidence that Ultra Resources has mistreated Plaintiffs, that Ultra Resources has been unfair or inequitable in the way it has treated Plaintiffs, or that Ultra Resources has been unjustly enriched by depriving Plaintiffs of an overriding royalty they are clearly not entitled to.

11.    In summary, it is my opinion that Ultra Resources acquired the Leases and Interests from CNG free and clear of the AMI provision in the Letter Agreement. Even though the PSA and related Assignment, Bill of Sale and Conveyance state the Leases, the Lands and the Interests are subject to the Letter Agreement, they are subject "only insofar" as the Letter Agreement "affects" **the Leases**. The PSA does not state that Ultra is subject to *all* of the provisions of the Letter Agreement, only those affecting the Leases and Interests. Nor did I see any provisions whereby Ultra Resources agreed to be subject to an AMI with Fossil

To emphasize my point, what if the Letter Agreement between Fossil and CNG had a Contract Area and AMI covering the entire State of Wyoming? After buying hundreds of leases and drilling dozens of wells over several years, assume CNG decides to sell one well and four related leases to Ultra. Both a PSA and an Assignment state the assigned property is "subject to the Letter Agreement". In this case Plaintiffs and their Expert Witness would have you believe

12

that Ultra Resources is subject to the entire Letter Agreement, *including the AMI*, and that should Ultra Resources or any other Ultra entity should buy any leases *anywhere* in the State of Wyoming, Ultra or the acquiring entity would owe Fossil a 5.0% overriding royalty on all of such acquired leases. Think about that in comparison to the language in the PSA in this case which states the Leases and Interests are subject to the Letter Agreement *but only insofar as the it affects the Leases and Interests*, keeping in mind that the AMI provision doesn't affect the Leases or Interests; the AMI only applies to the lands offsetting the Leases.

Or, what if ExxonMobil had an AMI with Company A that gave Company A an overriding royalty on all new leases acquired by ExxonMobil in several counties in Wyoming. Exxon purchases a company called XTO who already owns leases in several of the AMI areas. Company A had nothing to do with the ExxonMobil acquisition and provided no geological or geophysical services or data, technical evaluations, recommendations or services of any type with respect to the acquisition. Once again, Plaintiffs and their expert witness would have you believe that Company A is entitled to an overriding royalty on all of the XTO leases that lie within the AMI even though XTO continues to own title to and manage the properties as a separate entity.

The AMI provisions in both the Consulting Agreement and the Letter Agreement contemplate the acquisition of oil and gas leases through leasing activities in approved Prospects. Most of the parties' leasing activities involved leases acquired from the federal government at government lease auctions which Plaintiffs were expressly made responsible for handling. The AMI provisions did not mention anything about the acquisition of royalties, overriding royalties, working interests, producing properties, minerals, production payments or net profits interests

13

which are usually associated with large property acquisition packages. It is industry custom and practice to list every one of these types of interests separately in AMI provisions if the AMI provision is to apply to them. In this case, UPL Pinedale acquired producing property packages from SWEPI and WPX that included leases, both producing and non-producing. There were no leasing activities ever conducted by Plaintiffs, CNG or Ultra in connection with the leases or properties UPL Pinedale acquired from SWEPI or WPX. The AMI, therefore, did not apply to any of the leases or properties subject to the SWEPI PSA or the WPX PSA.

12.    Lastly, I am also of the opinion that an open-ended term to an AMI provision is a violation of the Rule Against Perpetuities. Without a fixed term, a provision like the AMI provision in the Letter Agreement could remain in effect indefinitely. Although open-ended AMI terms are occasionally seen in contracts and agreements, the industry custom and practice is to oppose and avoid such terms due to the problems and confusion they often create between the parties, or their successors or assigns.

13.    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Oklahoma City, Oklahoma this 26th day of September, 2017.

*/s/ Dorsey T. Roach*
Dorsey T. Roach, CPL
Managing Member/Owner
UnitPro Land Consultants, LLC

14

## EXHIBIT "A"

# DORSEY T. ROACH, CPL

12101 N. MacArthur Blvd., Suite A-148                                    (405) 301-5068
Oklahoma City, OK 73162

---

**EDUCATION**

**Bachelor of Business Administration**, *University of Oklahoma*, Norman, Oklahoma (1977), majoring in Petroleum Land Management

**Heritage Hall College Preparatory School,** Oklahoma City, Oklahoma (1972)

**RELEVANT EXPERIENCE**

**UnitPro Land Consultants, Inc.,** Tulsa, Oklahoma (2004-2006), and **UnitPro Land Consultants, LLC**, Oklahoma City, Oklahoma (2006 – Present)
*Managing Member/Owner* (2004 – Present)
• Expert witness services for O&G litigation
• Prepare and negotiate Operating Agreements, Exploration Agreements, Participation Agreements, Well Trades and other land contracts for clients
• Conduct seminars for industry organizations and companies

**Cheyenne Petroleum Company,** Oklahoma City, Oklahoma
*Area Land Manager* (2006-2009)
• Processed exploration and development prospects and projects in Canada and the Midcontinent, Gulf Coast, South Texas and Ohio Basin regions of the U.S. for possible company participation
• Prepare and negotiate land contracts including, but not limited to, Confidentiality Agreements, Exploration Agreements, Participation Agreements, Operating Agreements and Well Trades
• Seek prospect and/or project participation opportunities

**The Williams Companies**, Tulsa, Oklahoma
*Director of Land* (2001-2004), *Land Manager* (2000-2001)
• Managed a land department (landmen, lease records and division order analysts) consisting of 25 employees
• Responsible for hiring and training land department personnel
• Prepared and managed both G&A and capital budgets for department
• Negotiated major land deals including Exploration Agreements, Participation Agreements and Operating Agreements
• Coordinated and managed land due diligence on all major acquisitions and divestitures
• Generated strategies and ideas for growth and expansion of the E&P organization in the Gulf Coast, South Texas, Midcontinent, San Juan Basin and Green River Basin
• Developed strategies for an active lease acquisition and horizontal drilling program in the Hartshorne CBM and Caney Shale plays in the Arkoma Basin

15

**Union Pacific Resources Company**, Fort Worth, Texas
*Staff Landman* (1997-2000)
• Assisted team and management in developing strategies for active horizontal
  drilling program in the Austin Chalk play of East Texas
• Supervised lease brokers involved with lease acquisitions and title curative
• Negotiated and prepared land contracts with industry partners including
  Operating Agreements and Well Trades
• Responsible for compliance with regulatory rules, regulations and orders
• Served as a mentor and helped train entry-level landmen

**Crawley Petroleum Corporation,** Oklahoma City, Oklahoma
*Land Manager* (1994 – 1997)
• Managed a land department consisting of 4 employees
• Supervised lease brokers involved with lease acquisitions and title curative
• Negotiated and prepared all land contracts with industry partners including
  Exploration Agreements, Participation Agreements, Operating Agreements and
  Well Trades
• Responsible for compliance with regulatory rules, regulations and orders
• Active in the Anadarko Basin, Anadarko Shelf, Golden Trend, Nemaha Ridge,
  Texas Panhandle, Permian Basin and Powder River Basin

**Mesa, Inc.,** Dallas, Texas; Amarillo, Texas
*Land Supervisor* (1991-1994), *Senior Landman* (1987-1991)
• Areas of responsibility included Oklahoma, Louisiana, Powder River Basin,
  San Juan Basin and Gulf of Mexico
• Supervised lease brokers involved with lease acquisitions and title curative
• Negotiated and prepared land contracts with industry partners including
  Participation Agreements, Operating Agreements and Well Trades
• Responsible for compliance with regulatory rules, regulations and orders
• Coordinated and managed land due diligence on Tenneco acquisition, and
  Midcontinent and San Juan Basin divestitures

**Exxon Corporation,** Houston, Texas; Oklahoma City, Oklahoma; Midland,
Texas; Los Angeles, California, Anchorage, Alaska (temporary assignments)
*Senior Petroleum Landman* (1986-1987), *Land Supervisor* (1982-1986),
*Senior Landman* (1981-1982), *Landman* (1977-1981)
• Supervised pooling and unitization land staff consisting of 10 employees
• Negotiated and prepared land contracts with industry partners including
  Participation Agreements, Operating Agreements and Well Trades
• Responsible for compliance with regulatory rules, regulations and orders
• Trained entry-level landmen
• Assisted management in developing strategies for active drilling program in the
  Anadarko Basin following Penn Square Bank failure
• Areas of responsibility included Midcontinent (1981-1987) and
  California/Alaska (1977-1980)

16

**OTHER**
**EXPERIENCE**

• **University of Oklahoma,** Petroleum Land Management (PLM) Program
  • *Adjunct Professor* (1983-2009), Topics included pooling, unitization, operating agreements, regulatory agencies, title opinions, title curative, and land administration
  • *Chairman*, Steering Committee (1995-1997), responsible for designing the restructuring of the PLM Program into the Energy Management Program

• **The University of Tulsa**, Energy Management Program
  • *Adjunct Professor* (2007 – 2015), Topics include Pooling, Unitization, Well Trades and Operating Agreements

• **American Association of Professional Landmen**
  • *Seminar and CPL Review Instructor* (1984-Present)
    • Topics include Pooling, Unitization, Operating Agreements, Well Trades and Participation Agreements
  • *Institute and Conference Speaker* (1985-Present)
    • Various topics and issues relating to Operating Agreements

• **Conference and Institute Speaker**
  • Oklahoma, Texas, Kansas and Arkansas Energy Bar Associations
  • Council of Petroleum Accountants Societies (COPAS), North American Petroleum Accountants Conference (NAPAC)
  • Numerous local/regional landman organizations
  • Numerous regional and national industry organizations

**MEMBERSHIPS**

• **American Association of Professional Landmen** (1977-Present)
  • *Certified Professional Landman* (1986-Present)
    • CPL No. 3311
  • *Chairman*, 1989 Operating Agreement Revision Committee
  • *Member*, 2002 Operating Agreement Task Force (CBM Modifications)
  • *Member*, 1989 (Horizontal) Operating Agreement Task Force
  • Member, 2015 Operating Agreement Task Force
  • *Chairman*, Model Form Participation Agreement Drafting Committee

• **Oklahoma City Association of Professional Landmen** (1981-Present)
  • *Chairman,* Industry and Regulatory Affairs Committee (1984)
  • *Secretary* (1985)
  • *Treasurer* (1986)
  • *Co-Chair*, Governmental Action Committee (2008-2009)

• **Tulsa Association of Petroleum Landmen** (2000-Present)
  • *President* (2004-2005)
  • *Chairman*, Education Committee (2000-2004)
  • *Chairman,* Scholarship Committee (2001-2005)

• **Adams Society Member**, Price College of Business, University of Oklahoma (inducted in 2012)

17

## Published Articles in Past 10 Years

1. *The Maintenance of Uniform Interest Provision – Are You at Risk?*
   Presented to and published by the American Association of Petroleum Landmen
   June 1999 (1st publication)

2. *Evolution of the AAPL Form 610-Model Form Operating Agreement*
   Presented to and published by the American Association of Professional Landmen
   January 1984 (1st publication)

3. *JOA Calculations – What Happens When a Lease Goes Bad*
   Presented to and published by the National Association of Lease and Title Analysts
   September 2007

4. *Current Issues Involving Operating Agreements*
   Presented to and published by the American Association of Professional Landmen
   September 2003 (1st publication)

5. *The 2005 COPAS Accounting Procedure – Is It Really Better?*
   Presented to and published by the Council of Petroleum Accountants Societies of
   North America
   April, 2008 (1st publication)

6. *Exploration Agreements, Participation Agreements and Operating Agreements - What
   Every Landman Should Know*
   Presented to and published by the American Association of Professional Landmen
   December, 2009 (1st publication), February 2010

7. *JOA's, Exploration Agreements and Participation Agreements - What's the Difference?*
   Presented to and published by the Arkansas Bar Association
   February, 2010

8. *Select Issues Involving Operating Agreements*
   Published in The Landman (American Association of Professional Landmen magazine)
   September/October 2010

9. *Joint Operations in Down Economic Times: Practical Applications for the New 2015
   JOA,*
   Presented to and published by the American Association of Professional Landmen
   AAPL 2016 Annual Conference, Orlando, Florida

10. *What's New In the 2015 Form?* (co-authored with Fred MacDonald, J.D.)
    Presented to and published by the Rocky Mountain Mineral Law Foundation
    RMMLF Institute on the New AAPL 2015 Model Form Operating Agreement,
    November 2016, Houston, Texas

## PRIOR TESTIMONY

1.  Case: **David L. Blake, et al v. Cabot Oil & Gas Corporation, et al** (Cause No. 06-2-
    8965-VC, 24th Judicial District Court, Goliad County, Texas)
    Client: Cabot Oil & Gas Corporation (Farnsworth & VonBerg)
    Issue:  Was geologist entitled to overriding royalty on new leases?

2.  Case: **Longfellow Exploration Partners Limited, et al v. SandRidge Energy, Inc., et
    al** (Case No. 4:09-cv-00045-RAJ, U.S. District Court, Western District of Texas,
    Pecos District)
    Client: SandRidge Energy, Inc. (Locke Lord Bissell & Liddell)
    Issue:  Were drilling obligations created by provision added to JOA?

3.  Case: **Marbob Energy Corporation, et al v. BP America Inc., et al** (Case No. CV-
    2010-647 and Case No. CV-2010-648, 5th Judicial District Court, Eddy County,
    New Mexico)
    Client: Marbob Energy Corporation and Concho Energy (Cotton Bledsoe Tighe &
    Dawson)
    Issue:  Were Marbob et al entitled to preferential rights when BP sold properties to
    Apache simultaneous with Marbob, et al selling their rights in the same properties
    to Concho? Was BP entitled to a preferential right on the Marbob, et al interests in
    these same properties?

4.  Case: **Hawkins & Hawkins v. Nance Petroleum Corporation** (Case No. 2007-C-012,
    District Court, Northwest Judicial District, State of North Dakota, County of
    McKenzie)
    Client: Hawkins & Hawkins (Poulson, Odell & Peterson)
    Issue:  Was Hawkins' overriding royalty reduced for subsequent wells under Farmout
    Agreement and JOA?

5.  Case: **Bishop Petroleum, Inc. v. Indian Oil Company, et al** (Case No. 2009-34720,
    District Court of Harris County, Texas)
    Client: Indian Oil Company, et al (Farnsworth & VonBerg)
    Issue:  Were Bishop et al liable for costs of workover?

6.  Case: **Carbon Economy, LLC, et al v. SM Energy Company, et al** (Case No. CV-11-
    4, District Court of Beckham County, Oklahoma)
    Client: SM Energy Company (Wilguess & Garrett)
    Issue:  Was Carbon or SM Energy the designated operator under a JOA? Was Exxon
    assignment limited to wellbore rights only?

7.  Case: **Cardinal River Energy, et al v. Unit Petroleum Company, et al** (Case No. CJ-
    2008-7388, District Court of Oklahoma County, Oklahoma)
    Client: Cardinal River Energy et al (Kirk & Chaney)

Issue: Was JOA amended to cover deep rights thereby giving parties uniform interest as to all depths? Was Unit entitled to propose well and apply cost allocation between shallow and deep owners?

8.   Case: **Roger Wheeler, et al v. Crest Resources, Inc., et al** (Case No. CJ-2010-6340, District Court, Tulsa County, Oklahoma)
     Client: Crest Resources, Inc. (Conner & Winters)
     Issue: Pursuant to the terms of a Participation Agreement and JOA, did Plaintiffs have the right to participate in infill wells when they didn't participate in the initial test well in the unit? Did operator provide all required well information to Plaintiffs? Does a party to a JOA have the right to split their election?

9.   Case: **Sally Stanford v. Jack Stanford Estate, et al**
     Client: Sally Stanford
     Issue: Was the amount charged to a trust for landman services associated with organizing files and preparing assignments and deeds, a fair and reasonable amount, or was it excessive?

10.  Case: **Crimson Exploration, et al v. Allen Drilling Acquisition Company, et al** (Cause No. 12,991, District Court, Madison County, Texas, 278th Judicial District)
     Client: Allen Drilling Acquisition Company, et al
     Issue: (1) May an operator both deem a defaulting party as non-consent as to the amounts owed, _and_ sue the defaulting party for the amounts owed, under a 1989 JOA?
     (2) Did a new JOA with a 3rd party that was depth limited and covered a smaller geographical area replace the entire old JOA that covered all depths and a larger geographical area?

11.  Case: **Wicklund Petroleum v. Thomas Meason**
     Client: Wicklund Petroleum (Mitchell DeClerck Firm)
     Issue: Was an overriding royalty to be earned by a geologist on a well-by-well basis or for all wells in a prospect basis.

12.  Case: **Union Pacific Railroad and Ivy Energy, Inc. v. Williams Production RMT Co., et al** (Case No. 10cv371, District Court of Garfield County, Colorado)
     Client: Ivy Energy, Inc.
     Issues: (1) did operator have the authority to make unilateral changes to a participant's interest in wells? (2) was operator in compliance with JOA for suspending production revenues of a participant?; (3) was a participant entitled to 100% recoupment of well costs after title failed on a producing well?;

13.  Case: **Enduro Operating LLC v. Echo Production, Inc., et al** (Case No.: D-503-CV-2013-134, Fifth Judicial District Court, Eddy County, NM)
     Client: Echo Production, Inc.

Issue: (1) was actual drilling required by the JOA for a subsequent well, or just drilling operations? (2) Were drilling operations timely commenced?

14. Case: **Summa Engineering, Inc. v. Venus Energy, LLC, et al** (Case No. CJ-2012-10, District Court, Grant County, Oklahoma)

Client: Venus Energy, LLC, et al

Issue: Was the operator liable to the non-operators because the company man he employed was inexperienced and unsupervised, and the company man's lack of knowledge and experience resulted in bad decisions causing wellbore damage and lost opportunities?

15. Case: **Kenneth W. Cory, Ltd. V. Apache Corporation** (Case No. CJ-2014-1, Roger Mills County District Court, State of Oklahoma)

Client: Kenneth W. Cory, Ltd.

Issue: Does an overproduced party have the right to ignore an operator's Gas Balancing Statements during the life of a well but then claim errors were made over 30 years ago and demand and receive adjustments to the operator's Final Gas Balancing Statement, or does the overproduced party only have a reasonable time to challenge the accuracy and correctness of the statements?

16. Case: **Osage Exploration & Development, Inc., et al vs. Stephens Energy Group, LLC** (Case No. CJ-2014-239, Logan County District Court, State of Oklahoma)

Client: Osage E&D, Inc., U.S. Energy Development Corporation

Issue: Did the assignee of the operator's interest under a JOA have the right to assume operatorship of the wells even though 2 or more parties owning a majority in interest under the JOA voted for an existing party to the JOA to assume operatorship?

17. Case: **Mardan Energy Corporation, et al vs. Faulconer 1996 LP, LLP, et al** (Cause No. 10-12363-278-06, District Court, Madison County, Texas)

Client: Crimson Exploration, Inc., Crimson Exploration Operating, Inc. Gulfwest Oil Company and Gulfwest Oil & Gas Company

Issue: Absent an AMI provision being added, does the AAPL Model Form JOA contain language that establishes an AMI?

18. Case: **Clovelly Oil Co., LLC vs. Midstates Petroleum Company, LLC** (Case No. 70728, Division B, 13th Judicial District Court, Parish of Evangeline, State of Louisiana)

Client: Midstates Petroleum Company, LLC

Issue: Are there any provisions contained in a standard AAPL Model Form JOA that obligate a party to share in new lease acquisitions with the other parties to the JOA absent an AMI provision being added to the JOA?

19. Case: **Anderson Energy Corporation, et al vs. Dominion Oklahoma Texas Exploration & Production, Inc., et al** (Sutton County, Texas District Court, Cause No. 0005419)

21

Client: EnerVest Operating, LLC

Issue: Was a 1980 Letter Agreement and JOA still in force thereby obligating successors to the original parties to offer new lease acquisitions and the opportunity to participate in wells drilled thereon, or did these contracts terminate once there was no longer joint operations or uniformity of ownership?

20.    Case:   **Encana v. Vanguard**, (U.S. Bankruptcy Court, Southern District of Texas, Houston, Texas, Case No. 17-30560)

Client: Encana Oil & Gas (USA) Inc.

Issue: Was a drilling and development agreement between the parties an operating agreement or a farmout agreement for determining whether or not it was an executory contract for bankruptcy purposes?

# EXHIBIT A-2

## PURCHASE AND SALE AGREEMENT

THIS AGREEMENT, dated as of _July 19, 1996_ , is between

CNG PRODUCING COMPANY, a Delaware Corporation, whose mailing address is 1450

Poydras Street, New Orleans, Louisiana, 70112-6000 (herein called "Seller"), and ULTRA

PETROLEUM (USA) Inc., a Colorado corporation, whose mailing address is c/o Woerndle,

Patterson, Strain & Miller, 1004 North Big Spring, Suite 121, Midland, Texas 79701, (herein

called "Buyer").

Seller is the owner of oil and gas leases, leasehold estates, contractual rights, and other

interests described in Exhibit "A" attached hereto and made a part hereof (hereinafter called the

"Leases") insofar as the Leases cover and relate to the land described in Exhibit "A" (hereinafter

called the "Land"). Seller's interests in the Leases, insofar and only insofar as the Leases cover

and relate to the Land, together with all of Seller's right, title and interest in and to all property,

production and rights incident thereto and all wells, (including, but not limited to, those wells

described on Exhibit "B" attached hereto and made a part hereof), gathering and flowlines,

pipelines, facilities and all other personal property, equipment and fixtures appurtenant thereto are

herein called the "Interests".

Seller desires to sell and convey and Buyer desires to purchase and pay for the Interests,

effective as of the date hereof, at 7:00 A.M., local time, said time to be determined for each

locality described on Exhibit "A" in accordance with the time observed in said locality, which time

shall be the Effective Time for the purposes of this agreement.

Seller is also the owner of the lands described in the Farmout Agreement attached hereto

and made a part hereof as Exhibit "C", (the "Farmout Acreage"). Seller desires to convey and

Buyer desires to acquire certain rights in and to the Farmout Acreage, subject to the terms set

forth in Exhibit "C".

IN CONSIDERATION of the above recitals and of the benefits to be derived by each

party under this agreement, it is hereby agreed as follows:

1)  Sale and Purchase.  Seller agrees to sell and convey and Buyer agrees to purchase

and pay for the Interests, subject to the terms and conditions of this agreement.



EXHIBIT 2

Roach

December 21, 2017

Reported by:
D. SANDERS, CSR, RDR, CRR

ULTRA.019  000679

2)  Farmout Agreement.  Seller agrees to grant to Buyer the right to acquire certain interests in the Farmout Acreage, subject to the terms and conditions contained in this Purchase and Sale Agreement and in the Farmout Agreement attached hereto as Exhibit "C".

3)  Purchase Price.  The purchase price for the Interests shall be U.S. $350,000.00 (Three Hundred and Fifty Thousand Dollars), of which a $35,000.00 deposit has been paid by Buyer, and shall be adjusted in the manner provided for herein.

4)  Title Information.  Seller shall make available in its offices in New Orleans, Louisiana during normal business hours, for inspection and copying by Buyer the following title information, to the extent contained in Seller's books, records or files, or in Seller's possession, pertaining to the Interests:

(a)  All title opinions and title reports pertaining to the Interests heretofore received by Seller.

(b)  All abstracts of title pertaining to the Interests heretofore received by Seller.

(c)  All of the Leases, prior conveyances of interests, unitization, pooling and operating agreements, division and transfer orders, mortgages, deeds of trust, and other contracts and documents affecting the title to the Interests.

(d)  All documents which Seller has relating to the payment of all rentals, royalties and other payments due under the Leases, and all other lease records relating to the Interests.

(e)  Ownership maps and surveys in Seller's possession, relating to the Land underlying the Interests.

(f)  All geological and geophysical information relating to the Interests to the extent disclosure of such data is not prohibited by confidentiality or similar agreements with third parties.

(g)  All well files and engineering data relating to the wells drilled by Seller on the Land or within the prospects listed on Exhibit "A" to the extent disclosure of such data is not prohibited by confidentiality or similar agreements with third parties.

All such information now in the possession of Seller shall also be open to inspection by Buyer at any reasonable time from the date hereof through the closing of this transaction and conveyance of title to the Interests hereunder (the "Closing") or the termination of this agreement. If such information or any other information or data shall reflect the existence of any encumbrance, or defect in title which shall render title to the Interests, or any portion thereof,

2

indefensible, and which Buyer does not waive (all of which are herein called the "Title Defects"), written notice of the Title Defects shall be given to Seller not later than Closing. Such notice shall include a description of the Title Defect, the basis for the defect that Buyer believes causes such Interest to be indefensible and the number of net acres affected by the Title Defect. Title to the Interests is not indefensible merely because it is not perfect. For purposes of this Agreement, indefensible title means that lack in quality of title to the Leases or portions thereof as of the Effective Time which, as to any claim based thereon, could not be reasonably assumed to be successfully defended against. It is the understanding of the parties that the purchase price is based on the assumption that Seller will deliver to Buyer leasehold interest in not less than 132,000 net acres. No adjustment to the Purchase Price shall be made unless and until the aggregate effect of all Title Defects is to reduce the number of net leasehold acres to be conveyed below 132,000 net acres. If Title Defects shall be so specified, Seller, at its option, may cure or remove all of the Title Defects at the expense of Seller and proceed with the Closing. If the Title Defects cannot be cured or removed or if Seller elects not to cure or remove such Title Defects, the purchase price shall be reduced by an amount equal to $2.65 multiplied by the difference between 132,000 and the number of net leasehold acres actually delivered by Seller. If this agreement is so terminated or terminated under any other provision of this agreement, Buyer shall return to Seller all of the documents and items which Seller has delivered to Buyer hereunder. If the conditions to either Seller's obligation to Close or Buyer's obligation to Close have been satisfied or waived and such party fails to perform its obligations on the Closing, such party shall be deemed to have breached this Agreement.

5) <u>Records</u>

(a)  Seller shall deliver to Buyer, within one week following Closing, the original or copies, at its option, of the materials and documents described in Paragraph 4 (a),(b),(c),(d),(e) and (g) above subject to any restrictions on the disclosure of such data under contracts with third parties. With respect to any other data or information not specifically described above, Seller shall be under no obligation to furnish such data to Buyer. However, in the event Buyer requests such data, Seller may at its sole discretion, furnish copies of such data to Buyer at Buyer's expense.

ULTRA.019  000681

(b)   With respect to all files, records, information and data described in Paragraphs 3 and 4 and delivered pursuant to this Paragraph 5 by Seller to Buyer (all such items being referred to as "Information"), Buyer agrees that Seller may have access to all such requested Information at reasonable times during normal business hours at Buyer's office and that Seller at its sole cost and expense may make copies of such requested Information.

6)   <u>Preferential Rights and Consents</u>   Promptly after the signing of this Purchase Agreement, Seller shall notify all appropriate third parties and endeavor to secure, if applicable, all consents that may be required for the execution of these transactions.   Seller shall endeavor to secure waivers of preferential rights or acknowledgments that preferential rights do not apply to the Interests.

7)   <u>Seller's Representations</u>.  Seller represents that:

(a)   Seller is and until the Closing shall continue to be a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, and Seller is and until the Closing shall continue to be duly qualified to carry on its business in the states in which the Interests are located.

(b)   Seller has all requisite power and authority to carry on its business as presently conducted, to enter into this agreement, and to perform its obligations under this agreement.   The consummation of the transactions contemplated by this agreement will not violate, nor be in conflict with, any provision of Seller's governing documents, or any agreement or instrument to which Seller is a party or is bound, or any judgment, decree, order, statute, rule or regulations applicable to Seller.

(c)   The execution, delivery and performance of this agreement and the transactions contemplated hereby have been duly and validly authorized by all requisite corporate action on the part of Seller.

(d)   This agreement has been duly executed and delivered on behalf of Seller, and at the Closing all documents and instruments required hereunder to be executed and delivered by Seller shall have been duly executed and delivered.   This agreement does, and such documents and instruments will, constitute legal, valid and binding obligations of Seller in accordance with their terms.

4

(e)   Seller has not alienated the Interests nor has it created or knowingly suffered to exist any liens, encumbrances or burdens thereon.  To the best of Seller's knowledge, the Interests are free and clear of all liens, encumbrances and burdens under or by virtue of acts of third parties except as noted on Exhibit "A".

(f)   All ad valorem, property and similar taxes and assessments based on or measured by the ownership of property or the production of hydrocarbons or the receipt of proceeds therefrom on the Interests for all years prior to the year in which this agreement is executed have been properly paid, and all such taxes and assessments which become due and payable prior to the Closing shall be properly paid by Seller.

(g)   Seller has incurred no liability, contingent or otherwise, for brokers' or finders' fees in respect of this transaction for which Buyer shall have any responsibility whatsoever.

(h)   Prior to the Closing, Seller will carry on the business of Seller with respect to the Interests in substantially the same manner as Seller has heretofore.

(i)   Seller shall exercise all due diligence in safeguarding and maintaining secure all engineering, geological and geophysical data, reports and maps, and all other confidential data in the possession of Seller, relating to the Interests; provided, however, Buyer is aware that Seller has provided prospective purchasers for the Interests with certain confidential data and agrees that such action does not constitute a breach of this representation.

(j)   To the best of Seller's knowledge, all contracts and other agreements which are material to Seller's ownership and the operation of the Interests are described on Exhibit "A".

(k)   To the best of Seller's knowledge, there are no material claims, suits or demands pending or threatened against Seller's ownership of the Interests.

8)   Buyer's Representations.  Buyer represents that:

(a)   Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of Colorado and Buyer is duly qualified to carry on its business in the states in which the Interests are located.

(b)   Buyer has all requisite power and authority to carry on its business as presently conducted, to enter into this agreement, to purchase the Interests on the terms described in this agreement and to perform its other obligations under this agreement.  Buyer has the financial capability to purchase the Interests at the stated Purchase Price.  The consummation of the

ULTRA.019  000683

transactions contemplated by this agreement will not violate, nor be in conflict with, any provision of Buyer's charter, bylaws or governing documents, or any agreement or instrument to which Buyer is a party or is bound, or any judgment, decree, order, statute, rule or regulations applicable to Buyer.

(c)   The execution, delivery and performance of this agreement and the transactions contemplated hereby have been duly and validly authorized by all requisite corporate action on the part of Buyer.

(d)   This agreement has been duly executed and delivered on behalf of Buyer, and at the Closing all documents and instruments required hereunder to be executed and delivered by Buyer shall have been duly executed and delivered.  This agreement does, and such documents and instruments will, constitute legal, valid and binding obligations of Buyer in accordance with their terms.

(e)   Buyer has incurred no liability, contingent or otherwise, for brokers' or finders' fees in respect of this transaction for which Seller shall have any responsibility whatsoever.

(f)   Buyer shall exercise all due diligence in safeguarding and maintaining secure all engineering, geological and geophysical data, reports and maps, and all other confidential data in the possession of Buyer, relating to the Interests.

(g)   Buyer acknowledges that Seller has made no statements or representations concerning the present or future value of the anticipated income, costs, or profits, if any, to be derived from the Interests and that Seller does not warrant title (except as expressly provided on Exhibit "C" hereto), description, value, quality, condition, merchantability, or fitness for purpose of any of the Interests or the wells, equipment, or other property located thereon or used in connection therewith.  Buyer acknowledges that it has relied solely upon its independent examination of the Interests and public records, and such purchase is based solely on Buyer's independent inspections, estimates, computations, evaluations, reports, studies, and knowledge of the Interests.

ULTRA.019  000684

(h)   Upon Closing, Buyer shall be bound by all terms, conditions and convenants contained in the contracts, agreements and instruments comprising or affecting the Interests, as described on Exhibit "A" hereto.

9)   Seller's Conditions.  The obligations of Seller at Closing are subject, at the option of Seller, to the satisfaction at or prior to the Closing of the following conditions:

(a)   All representations of Buyer contained in this agreement shall be true in all material respects at and as of the Closing as if such representations and warranties were made at and as of the Closing, and Buyer shall have performed and satisfied all agreements required by this agreement to be performed and satisfied by Buyer at or prior to the Closing.

(b)   All materials consents, permissions, waivers of notice requirements, if required, and approvals by third parties in connection with the sale and transfer of the Interests shall have been received prior to Closing or Buyer and Seller shall have reached agreement on a procedure to provide for receipt after Closing.

10)   Buyer's Conditions.  The obligations of Buyer at Closing are subject, at the option of Buyer, to the satisfaction at or prior to the Closing of the following conditions:

(a)   All representatives of Seller contained in this agreement shall be true in all material respects at and as of the Closing as if such representations were made at and as of the Closing, and Seller shall have performed and satisfied all agreements required by this agreement to be performed and satisfied by Seller at or prior to the Closing.

(b)   Buyer shall have received all necessary consents, waivers of notice requirements, if required, permissions and approvals by third parties or governmental authorities (except those governmental consents customarily generated and received in the ordinary course of business at a post-Closing date) in connection with the sale and transfer of the Interests and all necessary waivers of preferential and similar rights of third parties and/or concurrences that such preferential and similar rights are not applicable to the purchase of any part of the Interests.

7

11) Closing.

(a)   Unless extended by mutual agreement of Buyer and Seller, the Closing shall be held on or before July 19, 1996 at 9:00 A.M. at the Seller's office or at such other date or place as the parties agree upon in writing.

(b)   At the Closing the following shall occur and/or shall be effective:

(i)   Seller and Buyer shall execute, acknowledge and deliver appropriate and proper instruments of conveyance in form and substance similar to that in Exhibit "D" attached hereto and made a part hereof, conveying title to the Interests to Buyer, free and clear of all liens, encumbrances and burdens except as listed on Exhibit "A" and as they appear in the records of the respective counties listed on Exhibit "A".   Such instruments shall be in proper and recordable form and shall be effective as of the Effective Time.   The parties agree to execute any additional documents necessary to effectuate the transfer of the Interests, including the appropriate State and Federal forms.

(ii)   Seller and Buyer shall execute the Farmout Agreement attached hereto as Exhibit "C".

(iii)   Seller and Buyer by Closing hereunder agree as follows:

(A)   Buyer agrees to comply with any and all rules, regulations and laws of the local, state and federal governments (including applicable laws of Canada), including but not limited to environmental, securities and conservation laws. Buyer agrees to indemnify and hold Seller harmless from and against any and all liability, loss, cost and expense (including, without limitation, court costs and reasonable attorney's fees) that are attributable to Buyer's failure to so comply.  Seller agrees to indemnify and hold Buyer harmless from and against any and all liability, loss, cost and expense (including without limitation, court costs and reasonable attorney's fees) that are attributable directly or indirectly to Seller's ownership and use of the Interests prior to the Effective Time.

8

ULTRA.019  000686

Buyer agrees to indemnify and hold Seller harmless from any and all liability, loss cost and expense (including but not limited to court costs and reasonable attorney's fees) attributable directly or indirectly to Buyer's ownership and use of the Interests from and after the Effective Time.

(B)    Seller agrees that Buyer shall be entitled to receive all proceeds, if any, attributable to the Interests after the Effective Time; and

(C)    Buyer agrees that Seller shall be entitled to receive all proceeds, if any, attributable to the Interests prior to the Effective Time.

(D)    Seller and Buyer acknowledge and recognize that Seller is bound by a certain Consulting Agreement dated November 1, 1983, as amended and a certain Letter Agreement dated March 15, 1994 with Fossil Associates (hereinafter referred to as the "Fossil Agreements") and that some but not all of the properties involved in the aforementioned Fossil Agreements are included in this sale to Buyer, previously defined as the Interests, and further that a portion of the properties covered by the Fossil Agreements will remain in the possession of Seller.    As such, Seller recognizes that the terms and conditions of the Fossil Agreements shall apply to those remaining properties in Seller's possession and Seller shall indemnify and hold Buyer harmless from and against any and all liability, loss, obligations, cost and expense (including, without limitation, court costs and reasonable attorney's fees) that are attributable to any breach of Seller's obligations under the Fossil Agreements with respect to the remaining properties.

Insofar as the Fossil Agreement pertains to the Interests, Buyer agrees to comply with the terms and conditions of said agreement from and after the Effective Time.    Seller agrees to comply with the terms of the Fossil Agreement insofar as it pertains to the Interest to the extent that any obligations of Seller under said Agreement have not been discharged as of the

9

ULTRA.019  000687

Effective Time or to the extent that Seller remains bound by the terms and conditions of said Agreement after the Effective Time.

Seller shall indemnify and hold Buyer harmless from and against any and all liability or actions, duties and obligation of Seller that are attributable to the Interests, as they pertain to the Fossil Agreements, which accurred prior to the Effective Time.  Buyer shall indemnify and hold Seller harmless from and against any and all liability or actions, duties and obligation of Buyer that are attributable to the Interests, as they pertain to the Fossil Agreements, which accurred after the Effective Time.

(iv)  Buyer shall deliver to Seller the Purchase Price as adjusted pursuant to the provisions hereof by wire transfer.

(v)  Ad valorem, property, production, severance and similar taxes and assessments based upon or measured by the ownership of property or the production of hydrocarbons or the receipt of proceeds therefrom on the Interests shall be prorated between Seller and Buyer as of the Effective Time.  Buyer shall pay all sales taxes occasioned by the sale of the Interests and all documentary, filing and recording fees.

(vi)  Seller shall deliver to Buyer possession of the Interests.

(vii)  At the Closing, and thereafter as may be necessary, the parties hereto shall execute, acknowledge and deliver transfer orders or letters in lieu thereof and such other instruments as may be required to correct any erroneous description or omission on Exhibit "A", and shall take such other actions as may be necessary to carry out their obligations under this agreement.

12)  Notices.  All communications required or permitted under this agreement shall be in writing and any communication or delivery hereunder shall be deemed to have been duly made if actually delivered, or if mailed by registered or certified mail, postage prepaid, addressed as set

ULTRA.019  000688

forth above.  Either party may, by written notice so delivered to the other, change the address to which delivery shall thereafter be made.

13)  Entire Agreement.  This instrument (including the Exhibits hereto) states the entire agreement between the parties and may be supplemented, altered, amended, modified or revoked by writing only, signed by both parties.  The paragraph headings are for guidance only and shall have no significance in the interpretation of this agreement.

14)  Effect of Agreement.  This agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns and may not be assigned by either party without the written consent of the other party; such consent will not be unreasonably withheld.

15)  Miscellaneous Provisions.

(a)  At the request of Buyer, Seller shall continue all accounting functions relative to the Interests until the first day of the second calendar month following Closing.  Buyer agrees to hold harmless and indemnify Seller against any claims, suits, actions, expenses, costs or losses arising out of Seller's performance of this function.

(b)  If any provision of this agreement is held invalid, such invalidity shall not affect the remaining provisions.

(c)  The Exhibit's attached to this agreement are fully incorporated herein.

ULTRA.019  000689

IN WITNESS WHEREOF this agreement is executed on the date first set forth above.

WITNESSES:

SELLER

CNG Producing Company

By:

WITNESSES:

BUYER:

Ultra Petroleum (USA) Inc.

By:

ULTRA.019  000690

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

    **BE IT KNOWN**, that on this ___9th___ day of ___July___, 1996, before me, the undersigned authority, personally came and appeared **JAMES W. CARRINGTON, JR.** appearing herein in his capacity as Vice President of **CNG PRODUCING COMPANY**, to me personally known to be the identical person whose name is subscribed to the foregoing instrument as the said Vice President of said corporation, and declared and acknowledged to me, Notary, that he executed the same on behalf of said corporation with full authority of its Board of Directors, and that the said instrument is the free act and deed of the said corporation and was executed for the uses, purposes and benefits therein expressed.

                                             NOTARY PUBLIC

                                                EDWARD C. AMROCK
                                    NOTARY PUBLIC, STATE OF LOUISIANA
                                    MY COMMISSION IS FOR LIFE

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

    **BE IT KNOWN**, that on this ___9th___ day of ___July___, 1996, before me, the undersigned authority, personally came and appeared **R. J. "JERRY" ALBERTUS** appearing herein in his capacity as Director of **ULTRA PETROLEUM (USA) INC.**, to me personally known to be the identical person whose name is subscribed to the foregoing instrument as the said Director of said corporation, and declared and acknowledged to me, Notary, that he executed the same on behalf of said corporation with full authority of its Board of Directors, and that the said instrument is the free act and deed of the said corporation and was executed for the uses, purposes and benefits therein expressed.

                                             NOTARY PUBLIC

                                                EDWARD C. AMROCK
                                    NOTARY PUBLIC, STATE OF LOUISIANA
                                    MY COMMISSION IS FOR LIFE

Report: LseCrpLong

EXHIBIT 'A'
BULL DRAW
WY0098

Date: 04-JUN-96
Page: 1    of: 5

Selection Criteria:

Lease Number: L004933-00          ACTIVE
Lease Date:  03/06/1987    Lessor: W-101749
Expire Date: 06/11/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 001 | BULL DRAW | WY    SUBLETTE | 1,379.000 | 1,379.000 | 1,034.250 | .75000000 | .12500000 | .05000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 29 N Rng: 106 W, Sect: 29 QQtr:  Lot: 00
        NW/4; NE/4SW/4; S/2SW/4
    Twp: 29 N Rng: 106 W, Sect: 31 QQtr:  Lot: 00
        LOTS 1,2,3,4 (34.75 ACS EACH); E/2; E/2W/2
        ADJUSTMENT LOT - ACREAGE BASED ON AVERAGE PER LOT
        PURSUANT TO LEASE: ACTUAL ACREAGE NOT AVAILABLE.
    Twp: 29 N Rng: 106 W, Sect: 32 QQtr:  Lot: 00
        W/2; SE/4

Lease Number: L004958-00          ACTIVE
Lease Date:  05/11/1987    Lessor: W-104167
Expire Date: 06/11/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 001 | BULL DRAW | WY    SUBLETTE | 972.910 | 972.910 | 729.683 | .75000000 | .12500000 | .04125000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 28 N Rng: 106 W, Sect: 6 QQtr:  Lot: 00
        LOTS 5,6,7,8,9 (42.776 ACS EACH);
        SE/4SW/4; S/2SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER LOT IS NOT
        AVAILABLE, ACREAGE HAS BEEN ALLOCATED EQUALLY BTWN SAME.
    Twp: 28 N Rng: 106 W, Sect: 7 QQtr:  Lot: 00
        LOTS 1,2,3,4 (42.775 ACS EACH);
        E/2; E/2W/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE LOT IS NOT
        AVAILABLE, ACREAGE HAS BEEN ALLOCATED EQUALLY BTWN SAME.

Lease Number: L004960-00          ACTIVE
Lease Date:  05/11/1987    Lessor: W-104179
Expire Date: 06/11/1997    Lessee: FOSSIL ASSOCIATES

ULTRA.019  000692

Report: LseCrpLong

EXHIBIT 'A'
BULL DRAW
WY0098

Date: 04-JUN-96
Page: 3    of: 5

Selection Criteria:

Lease Number: L004962-00          ACTIVE
Lease Date:   05/11/1987   Lessor: W-104181
Expire Date:  06/11/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001  BULL DRAW | WY    SUBLETTE | 800.000 | 800.000 | 600.000 | .75000000 | .12500000 | .04125000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 28 N Rng: 107 W, Sect: 26 QQtr:   Lot: 00
        W/2; SE/4
    Twp: 28 N Rng: 107 W, Sect: 27 QQtr:   Lot: 00
        E/2

Lease Number: L004963-00          ACTIVE
Lease Date:   05/11/1987   Lessor: W-104182
Expire Date:  06/11/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001  BULL DRAW | WY    SUBLETTE | 880.000 | 880.000 | 660.000 | .75000000 | .12500000 | .05500000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 29 N Rng: 107 W, Sect: 34 QQtr:   Lot: 00
        E/2SW/4; SE/4
    Twp: 29 N Rng: 107 W, Sect: 35 QQtr:   Lot: 00
        ALL

Lease Number: L005108-00          ACTIVE
Lease Date:   05/20/1987   Lessor: W-104799
Expire Date:  06/11/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001  BULL DRAW | WY    SUBLETTE | 1,600.000 | 1,600.000 | 1,200.000 | .75000000 | .12500000 | .05500000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 28 N Rng: 107 W, Sect: 14 QQtr:   Lot: 00
        W/2
    Twp: 28 N Rng: 107 W, Sect: 15 QQtr:   Lot: 00
        ALL
    Twp: 28 N Rng: 107 W, Sect: 22 QQtr:   Lot: 00
        ALL

Lease Number: L005109-00          ACTIVE
Lease Date:   06/10/1987   Lessor: W-104800
Expire Date:  06/30/1997   Lessee: FOSSIL ASSOCIATES

Report: LseCrpLong

EXHIBIT 'A'
BULL DRAW
WY0098

Date: 04-JUN-96
Page: 4    of: 5

Selection Criteria:

Lease Number: L005109-00        ACTIVE
Lease Date:   06/10/1987    Lessor: W-104800
Expire Date:  06/30/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001   BULL DRAW | WY    SUBLETTE | | | | | | |
| | | 1,278.870 | 1,278.870 | 959.153 | .75000000 | .12500000 | .05500000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 28 N Rng: 107 W, Sect: 1 QQtr:   Lot: 00
          LOTS 3 & 4 (15.774 ACRES EACH)
          SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
          RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER LOT IS NOT
          AVAILABLE, ACREAGE HAS BEEN ALLOCATED EQUALLY BTWN SAME.
    Twp: 28 N Rng: 107 W, Sect: 4 QQtr:   Lot: 00
          LOT 2 (15.774 ACRES); SW/4; E/2SE/4
          SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
          RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER LOT IS NOT
          AVAILABLE, ACREAGE HAS BEEN ALLOCATED EQUALLY BTWN SAME.
    Twp: 28 N Rng: 107 W, Sect: 5 QQtr:   Lot: 00
          LOTS 1 & 2 (15.774 ACRES EACH)
          SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
          RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER LOT IS NOT
          AVAILABLE, ACREAGE HAS BEEN ALLOCATED EQUALLY BTWN SAME.
    Twp: 28 N Rng: 107 W, Sect: 9 QQtr:   Lot: 00
          ALL
    Twp: 29 N Rng: 107 W, Sect: 34 QQtr:   Lot: 00
          N/2

Lease Number: L008130-00        ACTIVE
Lease Date:   07/13/1987    Lessor: W-105475
Expire Date:  07/31/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001   BULL DRAW | WY    SUBLETTE | | | | | | |
| | | 40.000 | 40.000 | 30.000 | .75000000 | .12500000 | .05000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 29 N Rng: 106 W, Sect: 29 QQtr:   Lot: 00
          NW/4SW/4

Lease Number: L009912-00        ACTIVE
Lease Date:   02/29/1988    Lessor: W-108079
Expire Date:  02/28/1998    Lessee: FOSSIL ASSOCIATES

Report: LseCrpLong

EXHIBIT 'A'
BUCKSKIN
WY0099

Date: 04-JUN-96
Page: 2    of: 6

Selection Criteria:

Lease Number: L011608          ACTIVE
Lease Date:   05/11/1987    Lessor: W-134682
Expire Date:  05/31/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|------|------|------|------|------|------|------|------|
| 001  BUCKSKIN | WY   SUBLETTE | 640.000 | 640.000 | 640.000 | 1.00000000 | .12500000 | .05500000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 28 N Rng: 107 W, Sect: 35 QQtr:  Lot: 00
        ALL

Lease Number: L011609          ACTIVE
Lease Date:   05/11/1987    Lessor: W-134694
Expire Date:  05/31/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|------|------|------|------|------|------|------|------|
| 001  BUCKSKIN | WY   SUBLETTE | 1,301.470 | 1,301.470 | 1,301.470 | 1.00000000 | .12500000 | .05500000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 27 N Rng: 106 W, Sect: 4 QQtr:  Lot: 00
        LOTS 1,2,3,4 (41.195 ACS EACH);
        S/2N/2; S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS. WHERE THE ACTUAL ACREAGE PER LOT IS NOT
        AVAILABLE, ACREAGE HAS BEEN ALLOCATED EQUALLY BTWN SAME.
    Twp: 27 N Rng: 106 W, 6th Principal 1855 Sect: 5 QQtr:  Lot: 00
        LOTS 1 & 5 (41.197 ACS EA);
        LOTS 6 THRU 11 (41.196 ACS EA); S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS. WHERE THE ACTUAL ACREAGE PER LOT IS NOT
        AVAILABLE, ACREAGE HAS BEEN ALLOCATED EQUALLY BTWN SAME.

Lease Number: L011610          ACTIVE
Lease Date:   05/11/1987    Lessor: W-134681
Expire Date:  05/31/1997    Lessee: FOSSIL ASSOCIATES

ULTRA.019  000695

Report: LseCrpLong

EXHIBIT 'A'
BUCKSKIN
WY0099

Date: 04-JUN-96
Page: 3    of: 6

Selection Criteria:

Lease Number: L011610         ACTIVE
Lease Date:   05/11/1987    Lessor: W-134681
Expire Date:  05/31/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Acres | | | Interest | | | |
|---|---|---|---|---|---|---|---|---|
| | | Gross | Net | Company Net | Corporate | Royalty | Overriding |
| 001  BUCKSKIN | WY    SUBLETTE | 1,068.720 | 1,068.720 | 1,068.720 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 28 N Rng: 106 W, Sect: 3 QQtr:  Lot: 00
        LOTS 1,2,3,4 (42.775 ACS EACH);
        S/2S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER LOT IS NOT
        AVAILABLE, ACREAGE HAS BEEN ALLOCATED EQUALLY BTWN SAME.
Twp: 28 N Rng: 106 W, Sect: 4 QQtr:  Lot: 00
        LOT 1 (42.775 ACS);
        S/2S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER LOT IS NOT
        AVAILABLE, ACREAGE HAS BEEN ALLOCATED EQUALLY BTWN SAME.
Twp: 28 N Rng: 106 W, Sect: 5 QQtr:  Lot: 00
        LOT 2 (42.775 ACS);
        S/2SW/4; SW/4SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 28 N Rng: 106 W, Sect: 8 QQtr:  Lot: 00
        NW/4NE/4; NW/4; SE/4SW/4; NE/4SE/4;
        S/2SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

Lease Number: L011611         ACTIVE
Lease Date:   05/11/1987    Lessor: W-134696
Expire Date:  05/31/1997    Lessee: FOSSIL ASSOCIATES

ULTRA.019  000696

Report: LseCrpLong

EXHIBIT 'A'
BUCKSKIN
WY0099

Date: 04-JUN-96
Page: 4    of: 6

Selection Criteria:

Lease Number: L011611          ACTIVE
Lease Date:  05/11/1987   Lessor: W-134696
Expire Date: 05/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| | | ---------------- Acres ----------------- | | | ------------ Interest ------------- | | |
| 001  BUCKSKIN | WY   SUBLETTE | 875.970 | 875.970 | 875.970 | 1.00000000 | .12500000 | .05000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 28 N Rng: 106 W, Sect: 17 QQtr:   Lot: 00
    E/2; E/2NW/4; SW/4
Twp: 28 N Rng: 106 W, Sect: 18 QQtr:   Lot: 00
    LOT 1 (35.97 ACS); NE/4NE/4; W/2NE/4;
    E/2NW/4; E/2SE/4
    SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
    RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER LOT IS NOT
    AVAILABLE, ACREAGE HAS BEEN ALLOCATED EQUALLY BTWN SAME.

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 002  BUCKSKIN | WY   SUBLETTE | 1,040.000 | 1,040.000 | 1,040.000 | 1.00000000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 28 N Rng: 106 W, Sect: 19 QQtr:   Lot: 00
    NE/4
Twp: 28 N Rng: 106 W, Sect: 20 QQtr:   Lot: 00
    NW/4, E/2SW/4, SE/4
Twp: 28 N Rng: 106 W, Sect: 28 QQtr:   Lot: 00
    W/2
Twp: 28 N Rng: 106 W, Sect: 29 QQtr:   Lot: 00
    NE/4

Lease Number: L011615          ACTIVE
Lease Date:  07/13/1987   Lessor: W-134683
Expire Date: 07/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| | | ---------------- Acres ----------------- | | | ------------ Interest ------------- | | |
| 001  BUCKSKIN | WY   SUBLETTE | 160.000 | 160.000 | 160.000 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 29 N Rng: 106 W, Sect: 25 QQtr:   Lot: 00
    SE/4

Lease Number: L011616          ACTIVE
Lease Date:  07/21/1986   Lessor: W-134692
Expire Date: 07/31/1996   Lessee: FOSSIL ASSOCIATES

Report: LseCrpLong

EXHIBIT 'A'
G.R.S. RED CREEK EAST
WY0109

Date: 04-JUN-96
Page: 3    of: 4

Selection Criteria:

Lease Number: L008128-00          ACTIVE
Lease Date:  07/10/1987    Lessor: W-105467
Expire Date: 07/31/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|------|------|------|------|------|------|------|------|
| 001  G.R.S. RED CREEK EAST | WY   SWEETWATER | 309.410 | 309.410 | 309.410 | 1.00000000 | .12500000 | .03000000 |

        Recorded:
        Legal:  Free Form Remarks:
        Twp: 13 N Rng: 105 W, Sect: 3 QQtr:   Lot: 00
                LOTS 6,7,8,9 (7.3525 ACRES EACH)
                SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
                RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
                OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
                EQUALLY BETWEEN SAME.
        Twp: 13 N Rng: 105 W, Sect: 4 QQtr:   Lot: 00
                W/2SE/4; SE/4SE/4
                SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
                RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
                OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
                EQUALLY BETWEEN SAME.

Lease Number: L008258-00          ACTIVE
Lease Date:  10/09/1987    Lessor: W-106136
Expire Date: 10/31/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|------|------|------|------|------|------|------|------|
| 001  G.R.S. RED CREEK EAST | WY   SWEETWATER | 1,127.940 | 1,127.940 | 1,127.940 | 1.00000000 | .12500000 | .03000000 |

        Recorded:
        Legal:  Free Form Remarks:
        Twp: 12 N Rng: 105 W, Sect: 7 QQtr:   Lot: 00
                LOTS 5, 6, 7, 8, 9, 10, 11,
                SE/4 NW/4, E/2 SW/4, SE/4
                ACREAGE FIGURE IS AN ESTIMATE.
                ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
        Twp: 12 N Rng: 105 W, Sect: 8 QQtr:   Lot: 00
                LOTS 1, 2, 3, 4, 5, W/2 E/2, SE/4 NW/4, SW/4
                SE/4 SE/4
                ACREAGE FIGURE IS AN ESTIMATE.
                ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

Lease Number: L010279-00          ACTIVE
Lease Date:  10/12/1988    Lessor: WYW-107018
Expire Date: 10/31/1998    Lessee: FOSSIL ASSOCIATION

ULTRA.019  000698

Report: LseCrpLong

EXHIBIT 'A'
COUNTYLINE SOUTH
WY0113

Date: 19-JUL-96
Page: 1    of: 1

Selection Criteria:

Lease Number: L004964-00     ACTIVE
Lease Date:   05/12/1987   Lessor: W-104227
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

| | | | | ---------------- Acres ---------------- | | ------------ Interest ------------ | | |
| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 001 | COUNTYLINE SOUTH (G.R.) | WY | UINTA | | | | | | |
| | | | | 1,255.210 | 1,255.210 | 1,255.210 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 18 N Rng: 114 W,  Sect: 12 QQtr:   Lot: 00
        ALL
Twp: 18 N Rng: 114 W,  Sect: 14 QQtr:   Lot: 00
        ALL LESS 24.79 ACRES, MORE OR LESS, IN RAILROAD
        R/W W0294436

|  |  |
|-------------|-------------|
| Total Nets | 1,255.210 | 1,255.210 |

ULTRA.019  000699

Report: LseCrpLong

EXHIBIT 'A'
EDEN VALLEY
WY0100

Date: 04-JUN-96
Page: 1    of: 5

Selection Criteria:

Lease Number: L004854-00        ACTIVE
Lease Date:   11/18/1986    Lessor: W-102689
Expire Date:  11/30/1996    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|---|
| | | | | | **Acres** | | **Interest** | |
| 001  EDEN VALLEY | | WY    SUBLETTE | 1,147.080 | 1,147.080 | 1,147.080 | 1.00000000 | .12500000 | .03000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 27 N Rng: 104 W, Sect: 19 QQtr:   Lot: 00
        LOTS 1, 2, 4, E/2, E/2 W/2
    Twp: 27 N Rng: 104 W, Sect: 21 QQtr:   Lot: 00
        NE/4, N/2 NW/4, S/2

Lease Number: L004954-00        ACTIVE
Lease Date:   05/11/1987    Lessor: W-104142
Expire Date:  05/31/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|---|
| | | | | | **Acres** | | **Interest** | |
| 001 . EDEN VALLEY | | WY    SUBLETTE | 2,275.550 | 2,275.550 | 2,275.550 | 1.00000000 | .12500000 | .03000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 27 N Rng: 104 W, Sect: 3 QQtr:   Lot: 00
        LOTS 1 THRU 4 (39.682 ACS EACH);
        S/2N/2; S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
    Twp: 27 N Rng: 104 W, Sect: 4 QQtr:   Lot: 00
        LOTS 1 THRU 4 (39.682 ACS EACH);
        S/2N/2; S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
    Twp: 27 N Rng: 104 W, Sect: 5 QQtr:   Lot: 00
        SE/4NE/4; S/2NW/4; S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
    Twp: 27 N Rng: 104 W, Sect: 6 QQtr:   Lot: 00
        LOTS 1 & 2 (39.683 ACS EA); LOTS 3 THRU
        6 (39.682 ACS EA); S/2NE/2; SE/4NW/4; NE/4SW/4; SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

Report: LseCrpLong

EXHIBIT 'A'
EDEN VALLEY
WY0100

Date: 04-JUN-96
Page: 2    of: 5

Selection Criteria:

Lease Number: L005095-00          ACTIVE
Lease Date:   05/20/1987    Lessor: W-104775
Expire Date:  05/31/1997    Lessee: FOSSIL ASSOCIATES

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| | | | | | | Acres | | | Interest |
| 001 | EDEN VALLEY | WY | SUBLETTE | 2,560.000 | 2,560.000 | 2,560.000 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 27 N Rng: 104 W,  Sect: 10 QQtr:   Lot: 00
       ALL
Twp: 27 N Rng: 104 W,  Sect: 17 QQtr:   Lot: 00
       ALL
Twp: 27 N Rng: 104 W,  Sect: 8 QQtr:   Lot: 00
       ALL
Twp: 27 N Rng: 104 W,  Sect: 9 QQtr:   Lot: 00
       ALL

Lease Number: L005096-00          ACTIVE
Lease Date:   05/20/1987    Lessor: W-104776
Expire Date:  05/31/1997    Lessee: FOSSIL ASSOCIATES

Report: LseCrpLong                          EXHIBIT 'A'                     Date: 04-JUN-96
                                            EDEN VALLEY                    Page: 3   of: 5
                                            WY0100

Selection Criteria:


Lease Number: L005096-00        ACTIVE
Lease Date:   05/20/1987   Lessor: W-104776
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001  EDEN VALLEY | WY   SUBLETTE | 3,608.240 | 3,608.240 | 3,608.240 | 1.00000000 | .12500000 | .03000000 |

        Recorded:
        Legal:  Free Form Remarks:
        Twp: 27 N Rng: 104 W, Sect: 20 QQtr:   Lot: 00
              ALL
        Twp: 27 N Rng: 104 W, Sect: 22 QQtr:   Lot: 00
              W/2W/2; SE/4NW/4; NE/4SW/4;
              N/2SE/4; SE/4SE/4
        Twp: 27 N Rng: 104 W, Sect: 23 QQtr:   Lot: 00
              S/2SW/4
        Twp: 27 N Rng: 104 W, Sect: 30 QQtr:   Lot: 00
              LOT 35.79, LOT 2 35.85, LOT 3 35.91, LOT 4 35.97
              E/2; E/2W/2
              SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
              RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
              OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
              EQUALLY BETWEEN SAME.
        Twp: 27 N Rng: 104 W, Sect: 31 QQtr:   Lot: 00
              LOT 1 36.05, LOT 2 36.13, LOT 3 36.23, LOT 4 36.31
              E/2; E/2W/2
              SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
              RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
              OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
              EQUALLY BETWEEN SAME.
        Twp: 27 N Rng: 104 W, Sect: 32 QQtr:   Lot: 00
              ALL

              SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
              RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
              OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
              EQUALLY BETWEEN SAME.
        Twp: 27 N Rng: 104 W, Sect: 33 QQtr:   Lot: 00
              ALL

Lease Number: L005107-00        ACTIVE
Lease Date:   06/10/1987   Lessor: W-104782
Expire Date:  06/30/1997   Lessee: FOSSIL ASSOCIATES

Report: LseCrpLong

EXHIBIT 'A'
EDEN VALLEY
WY0100

Date: 04-JUN-96
Page: 5    of: 5

Selection Criteria:

Lease Number: L011613          ACTIVE
Lease Date:  06/10/1987   Lessor: W-134697
Expire Date: 06/30/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|----------------|--------------|-------|-----|-------------|-----------|---------|------------|
| 001  EDEN VALLEY | WY   SUBLETTE | 889.010 | 889.010 | 889.010 | 1.00000000 | .12500000 | .05000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 27 N Rng: 104 W, Sect: 18 QQtr:  Lot: 00
        LOTS 1,2,3 (35.573 ACS EA);
        NE/4NE/4; S/2NE/4; SE/4SW/4; SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 27 N Rng: 104 W, Sect: 7 QQtr:  Lot: 00
        LOTS 1,2,3,4 (35.573 ACS EA);
        N/2NE/4; SW/4NE/4; E/2W/2; SE/4SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

Lease Number: L011614          ACTIVE
Lease Date:  06/10/1987   Lessor: W-134698
Expire Date: 06/30/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|----------------|--------------|-------|-----|-------------|-----------|---------|------------|
| 001  EDEN VALLEY | WY   SUBLETTE | 1,840.000 | 1,840.000 | 1,840.000 | 1.00000000 | .12500000 | .05000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 27 N Rng: 105 W, Sect: 12 QQtr:  Lot: 00
        ALL
Twp: 27 N Rng: 105 W, Sect: 13 QQtr:  Lot: 00
        ALL
Twp: 27 N Rng: 105 W, Sect: 24 QQtr:  Lot: 00
        W/2NE/4; W/2
Twp: 27 N Rng: 105 W, Sect: 25 QQtr:  Lot: 00
        NE/4NE/4; S/2NE/4; NE/4SE/4

| | | Total Nets | 14,315.230 | 14,315.230 | | | |
|---|---|---|---|---|---|---|---|

ULTRA.019  000703

Report: LseCrpLong

EXHIBIT 'A'
EDEN VALLEY EXTENSION
WY0103

Date: 04-JUN-96
Page: 1    of: 2

Selection Criteria:

Lease Number: L005107-00     ACTIVE
Lease Date:  06/10/1987     Lessor: W-104782
Expire Date: 06/30/1997     Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 002  EDEN VALLEY EXT. | WY   SUBLETTE | 3,680.000 | 3,680.000 | 2,760.000 | .75000000 | .12500000 | .05000000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 27 N Rng: 105 W, Sect: 15 QQtr:  Lot: 00
        ALL
    Twp: 27 N Rng: 105 W, Sect: 22 QQtr:  Lot: 00
        ALL
    Twp: 27 N Rng: 105 W, Sect: 26 QQtr:  Lot: 00
        ALL
    Twp: 27 N Rng: 105 W, Sect: 27 QQtr:  Lot: 00
        ALL
    Twp: 27 N Rng: 105 W, Sect: 34 QQtr:  Lot: 00
        ALL
    Twp: 27 N Rng: 105 W, Sect: 35 QQtr:  Lot: 00
        N/2NE/4; SW/4NE/4; W/2; SE/4SE/4

Lease Number: L009766-00     ACTIVE
Lease Date:  12/09/1987     Lessor: W-107020
Expire Date: 12/31/1997     Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001  EDEN VALLEY EXT. | WY   SWEETWATER | 1,873.010 | 1,873.010 | 1,404.758 | .75000000 | .12500000 | .05000000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 26 N Rng: 105 W, Sect: 1 QQtr:  Lot: 00
        LOTS 1,2,3,4; S/2N/2; S/2
    Twp: 26 N Rng: 105 W, Sect: 11 QQtr:  Lot: 00
        W/2NW/4; E/2SW/4
    Twp: 26 N Rng: 105 W, Sect: 2 QQtr:  Lot: 00
        LOTS 1, 3, 4; SE/4NE/4
        S/2NW/4; W/2SW/4; NE/4SE/4; S/2SE/4
    Twp: 26 N Rng: 105 W, Sect: 3 QQtr:  Lot: 00
        LOTS 1,2,3,4; S/2N/2; S/2

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 002  EDEN VALLEY EXT. | WY   SWEETWATER | 636.390 | 636.390 | 477.293 | .75000000 | .12500000 | .05500000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 26 N Rng: 105 W, Sect: 4 QQtr:  Lot: 00
        LOTS 1,2,3,4; S/2N/2; S/2

Lease Number: L011614     ACTIVE
Lease Date:  06/10/1987     Lessor: W-134698
Expire Date: 06/30/1997     Lessee: FOSSIL ASSOCIATES

Report: LseCrpLong

EXHIBIT 'A'
EDEN VALLEY EXTENSION
WY0103

Date: 04-JUN-96
Page: 2   of: 2

Selection Criteria:

Lease Number: L011614          ACTIVE
Lease Date:   06/10/1987   Lessor: W-134698
Expire Date:  06/30/1997   Lessee: FOSSIL ASSOCIATES

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 002 | EDEN VALLEY EXT. | WY | SUBLETTE | | | | | | |
| | | | | 400.000 | 400.000 | 306.610 | .76652500 | .12500000 | .03750000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 27 N Rng: 105 W,  Sect: 25 QQtr:   Lot: 00
       W/2NW/4, SE/4NW/4, SW/4, W/2SE/4, SE/4SE/4

|  |  |
|--|--|
| Total Nets | 6,589.400   4,948.661 |

Report: LseCrpLong

EXHIBIT 'A'
ELKHORN
WYO101

Date: 06-JUN-96
Page: 1    of: 7

Selection Criteria:

Lease Number: L004181-00      ACTIVE
Lease Date:  09/10/1985   Lessor: W-95092
Expire Date: 05/06/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001  ELKHORN | WY   SUBLETTE | 628.400 | 628.400 | 471.300 | .75000000 | .12500000 | .05000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 28 N Rng: 105 W, Sect: 20 QQtr:  Lot: 00
    NE/4
Twp: 28 N Rng: 105 W, Sect: 31 QQtr:  Lot: 00
    LOTS 3, 4; E/2SW/4, SE/4
Twp: 28 N Rng: 106 W, Sect: 35 QQtr:  Lot: 00
    SE/4

Lease Number: L004489-00      ACTIVE
Lease Date:  05/01/1986   Lessor: W-99306
Expire Date: 05/05/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001  ELKHORN | WY   SUBLETTE | 1,720.000 | 1,720.000 | 1,720.000 | 1.00000000 | .12500000 | .05000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 28 N Rng: 105 W, Sect: 20 QQtr:  Lot: 00
Twp: 28 N Rng: 105 W, Sect: 28 QQtr:  Lot: 00
Twp: 28 N Rng: 105 W, Sect: 29 QQtr:  Lot: 00
Twp: 28 N Rng: 105 W, Sect: 31 QQtr:  Lot: 00
Twp: 28 N Rng: 105 W, Sect: 32 QQtr:  Lot: 00

Lease Number: L004626-00      ACTIVE
Lease Date:  07/21/1986   Lessor: W-100880
Expire Date: 05/05/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001  ELKHORN | WY   SUBLETTE | 308.480 | 308.480 | 231.360 | .75000000 | .12500000 | .03750000 |

Recorded:
Legal: Free Form Remarks:
Twp: 28 N Rng: 105 W, Sect: 31 QQtr:  Lot: 00
    LOTS 1 & 2 (34.24 ACS EA); E/2NW/4
    SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
    RIVERBEDS.  WHERE THE ACTUAL CREAGE PER SECTION, LOT
    OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
    EQUALLY BETWEEN SAME.
Twp: 28 N Rng: 105 W, Sect: 32 QQtr:  Lot: 00
    NE/4

ULTRA.019  000706

Report: LseCrpLong

EXHIBIT 'A'
ELKHORN
WY0101

Date: 06-JUN-96
Page: 2    of: 7

Selection Criteria:

Lease Number: L004668-00          ACTIVE
Lease Date:   09/18/1986   Lessor: W-101748
Expire Date:  05/05/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|------|------|------|------|------|------|------|------|
| 001  ELKHORN | WY  SUBLETTE | 641.020 | 641.020 | 480.765 | .75000000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 27 N Rng: 106 W, Sect: 1 QQtr:   Lot: 00
     LOTS 1, 2, 3, 4, S/2N/2, S/2

Lease Number: L004855-00          ACTIVE
Lease Date:   11/18/1986   Lessor: W-102690
Expire Date:  05/05/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|------|------|------|------|------|------|------|------|
| 001  ELKHORN | WY  SUBLETTE | 560.000 | 560.000 | 420.000 | .75000000 | .16666667 | .05000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 28 N Rng: 105 W, Sect: 34 QQtr:   Lot: 00
     N/2NE/4; W/2; SE/4

Lease Number: L004955-00          ACTIVE
Lease Date:   05/11/1987   Lessor: W-104152
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|------|------|------|------|------|------|------|------|
| 001  ELKHORN | WY  SUBLETTE | 957.600 | 957.600 | 718.200 | .75000000 | .12500000 | .05000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 27 N Rng: 105 W, Sect: 1 QQtr:   Lot: 00
     LOTS 1 THRU 4 (39.40 ACS EA); S/2N/2
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.
Twp: 28 N Rng: 105 W, Sect: 35 QQtr:   Lot: 00
     ALL
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.

Lease Number: L004956-00          ACTIVE
Lease Date:   05/11/1987   Lessor: W-104165
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

ULTRA.019  000707

Report: LseCrpLong

EXHIBIT 'A'
ELKHORN
WY0101

Date: 06-JUN-96
Page: 3   of: 7

Selection Criteria:

Lease Number: L004956-00          ACTIVE
Lease Date:   05/11/1987   Lessor: W-104165
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | | State County | | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|-------|-------|-------|-------|-------|-------|-------|-------|-------|
| 001 | ELKHORN | WY | SUBLETTE | | | | | | |
| | | | | 1,922.440 | 1,922.440 | 1,441.830 | .75000000 | .12500000 | .05500000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 27 N Rng: 106 W, 6th Principal 1855 Sect: 12 QQtr:  Lot: 00
        ALL
    Twp: 27 N Rng: 106 W, 6th Principal 1855 Sect: 2 QQtr:  Lot: 00
        LOTS 1,2,3,4 (41.195 ACS EACH);
        S/2N/2; S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
    Twp: 27 N Rng: 106 W, 6th Principal 1855 Sect: 3 QQtr:  Lot: 00
        LOTS 1,2,3,4 (41.195 ACS EACH);
        S/2N/2; S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

Lease Number: L004957-00          ACTIVE
Lease Date:   05/11/1987   Lessor: W-104166
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | | State County | | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|-------|-------|-------|-------|-------|-------|-------|-------|-------|
| 001 | ELKHORN | WY | SUBLETTE | | | | | | |
| | | | | 640.000 | 640.000 | 640.000 | 1.00000000 | .12500000 | .05000000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 28 N Rng: 106 W,  Sect: 25 QQtr:  Lot: 00
        ALL

Lease Number: L004959-00          ACTIVE
Lease Date:   05/11/1987   Lessor: W-104168
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | | State County | | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|-------|-------|-------|-------|-------|-------|-------|-------|-------|
| 001 | ELKHORN | WY | SUBLETTE | | | | | | |
| | | | | 480.000 | 480.000 | 360.000 | .75000000 | .12500000 | .05000000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 28 N Rng: 106 W,  Sect: 34 QQtr:  Lot: 00
        S/2
    Twp: 28 N Rng: 106 W,  Sect: 35 QQtr:  Lot: 00
        SW/4

Report: LseCrpLong

EXHIBIT 'A'
ELKHORN
WYO101

Date: 06-JUN-96
Page: 4    of: 7

Selection Criteria:

Lease Number: L005097-00          ACTIVE
Lease Date:   06/10/1987   Lessor: W-104777
Expire Date:  06/30/1997   Lessee: FOSSIL ASSOCIATES

| | | | | | --- Acres --- | | | --- Interest --- | |
| Tract | Prospect | | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
| ----- | -------- | | ----- | ------ | ----- | --- | ----------- | --------- | ------- | ---------- |
| 001 | ELKHORN | | WY | SUBLETTE | 640.000 | 640.000 | 480.000 | .75000000 | .12500000 | .03750000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 28 N Rng: 105 W, Sect: 33 QQtr:   Lot: 00
      ALL

Lease Number: L005098-00          ACTIVE
Lease Date:   06/10/1987   Lessor: W-104780
Expire Date:  06/30/1997   Lessee: FOSSIL ASSOCIATES

| | | | | | --- Acres --- | | | --- Interest --- | |
| Tract | Prospect | | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
| ----- | -------- | | ----- | ------ | ----- | --- | ----------- | --------- | ------- | ---------- |
| 001 | ELKHORN | | WY | SUBLETTE | 320.000 | 320.000 | 240.000 | .75000000 | .12500000 | .03750000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 27 N Rng: 105 W, Sect: 1 QQtr:   Lot: 00
      S/2

Lease Number: L005099-00          ACTIVE
Lease Date:   06/10/1987   Lessor: W-104781
Expire Date:  06/30/1997   Lessee: FOSSIL ASSOCIATES

| | | | | | --- Acres --- | | | --- Interest --- | |
| Tract | Prospect | | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
| ----- | -------- | | ----- | ------ | ----- | --- | ----------- | --------- | ------- | ---------- |
| 001 | ELKHORN | | WY | SUBLETTE | 2,554.310 | 2,554.310 | 1,915.733 | .75000000 | .12500000 | .05000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 27 N Rng: 105 W, Sect: 11 QQtr:   Lot: 00
      ALL
Twp: 27 N Rng: 105 W, Sect: 3 QQtr:   Lot: 00
      LOTS 1,2,3,4, (39.289 ACS EA);
      S/2N/2; S/2
      SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
      RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
      OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
      EQUALLY BETWEEN SAME.
Twp: 27 N Rng: 105 W, Sect: 4 QQtr:   Lot: 00
      LOTS 1,2,3,4, (39.289 ACS EA);
      S/2N/2; S/2
      SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
      RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
      OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
      EQUALLY BETWEEN SAME.
Twp: 27 N Rng: 105 W, Sect: 9 QQtr:   Lot: 00
      ALL

Report: LseCrpLong

EXHIBIT 'A'
ELKHORN
WY0101

Date: 06-JUN-96
Page: 5    of: 7

Selection Criteria:

Lease Number: LCO8002-00          ACTIVE
Lease Date:   06/10/1987     Lessor: W-102699
Expire Date:  06/30/1997     Lessee: FOSSIL ASSOCIATES

| | | | ---------------- Acres ----------------- | | ------------ Interest ------------ |
| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
| ----- ---------------------------- | ----- -------- | -------- | -------- | ----------- | --------- | ------- | ---------- |
| 001  ELKHORN | WY    SUBLETTE | 1,278.090 | 1,278.090 | 958.568 | .75000000 | .12500000 | .05000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 27 N Rng: 105 W, Sect: 10 QQtr:  Lot: 00
          ALL
    Twp: 27 N Rng: 105 W, Sect: 2 QQtr:  Lot: 00
          LOTS 1,2,3,4, (39.5225 ACS EACH);
          S/2N/2; S/2
          SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
          RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
          OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
          EQUALLY BETWEEN SAME.

Lease Number: LCO8129-00          ACTIVE
Lease Date:   07/10/1987     Lessor: W-105469
Expire Date:  07/31/1997     Lessee: FOSSIL ASSOCIATES

| | | | ---------------- Acres ----------------- | | ------------ Interest ------------ |
| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
| ----- ---------------------------- | ----- -------- | -------- | -------- | ----------- | --------- | ------- | ---------- |
| 001  ELKHORN | WY    SUBLETTE | 2,508.680 | 2,508.680 | 1,881.510 | .75000000 | .12500000 | .05000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 27 N Rng: 105 W, Sect: 5 QQtr:  Lot: 00
          LOTS 1-4 INCLUSIVE (36.5787 ACS EA);
          S/2N/2; S/2
          SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
          RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
          OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
          EQUALLY BETWEEN SAME.
    Twp: 27 N Rng: 105 W, Sect: 6 QQtr:  Lot: 00
          LOTS 1-7 INCLUSIVE (36.5785 ACS EA);
          S/2NE/4; SE/4NW/4; E/2SW/4; SE/4
          SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
          RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
          OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
          EQUALLY BETWEEN SAME.
    Twp: 27 N Rng: 105 W, Sect: 7 QQtr:  Lot: 00
          LOTS 1-4 INCLUSIVE (36.5787 ACS EA);
          E/2; E/2W/2
          SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
          RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
          OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
          EQUALLY BETWEEN SAME.
    Twp: 27 N Rng: 105 W, Sect: 8 QQtr:  Lot: 00
          ALL

Report: LseCrpLong

EXHIBIT 'A'
ELKHORN EXTENSION
WY0102

Date: 04-JUN-96
Page: 1    of: 1

Selection Criteria:

Lease Number: L004857-00          ACTIVE
Lease Date:   11/18/1986   Lessor: W-102710
Expire Date:  11/30/1996   Lessee: FOSSIL ASSOCIATES

| | | | | ---------------- Acres ---------------- | | ------------ Interest ------------ | | |
| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
| ----- | -------- | ----- | ------ | ----- | --- | ----------- | --------- | ------- | ---------- |
| 001 | ELKHORN EXT. | WY | SUBLETTE | 640.000 | 640.000 | 480.000 | .75000000 | .16666667 | .05500000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 27 N Rng: 106 W, Sect: 13 QQtr:   Lot: 00
ALL

Lease Number: L011612          ACTIVE
Lease Date:   05/11/1987   Lessor: W-134695
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

| | | | | ---------------- Acres ---------------- | | ------------ Interest ------------ | | |
| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
| ----- | -------- | ----- | ------ | ----- | --- | ----------- | --------- | ------- | ---------- |
| 001 | ELKHORN EXT. | WY | SUBLETTE | 1,600.000 | 1,600.000 | 1,200.000 | .75000000 | .12500000 | .05500000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 27 N Rng: 106 W,  Sect: 21 QQtr:   Lot: 00
N/2; N/2S/2
Twp: 27 N Rng: 106 W,  Sect: 22 QQtr:   Lot: 00
N/2; N/2S/2
Twp: 27 N Rng: 106 W,  Sect: 23 QQtr:   Lot: 00
N/2; N/2S/2
Twp: 27 N Rng: 106 W,  Sect: 24 QQtr:   Lot: 00
NW/4

|  |  |
| ------------- | ------------- |
| Total Nets | 2,240.000 | 1,680.000 |

Report: LseCrpLong

EXHIBIT 'A'
FONTENELLE RESERVOIR
WY0048

Date: 20-JUN-96
Page: 1    of: 2

Selection Criteria:

Lease Number: L008195-00          ACTIVE
Lease Date:   01/30/1987    Lessor: W-103526
Expire Date:  01/31/1997    Lessee: SHARON L. CARPENTER

| Tract Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 001  FONTENELLE RESERVOIR | WY | LINCOLN | 636.730 | 636.730 | 636.730 | 1.00000000 | .12500000 | .08000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 23 N Rng: 113 W,  Sect: 23 QQtr:   Lot: 00
        LOT 1, E/2, E/2W/2, SW/4NW/4, W/2SW/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        AS RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

Lease Number: L008343-00          ACTIVE
Lease Date:   01/30/1987    Lessor: W-103514
Expire Date:  01/31/1997    Lessee: MICHAEL L. ROBINSON

| Tract Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 001  FONTENELLE RESERVOIR | WY | LINCOLN | 160.000 | 160.000 | 80.000 | .50000000 | .12500000 | .08000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 24 N Rng: 112 W,  Sect: 31 QQtr:   Lot: 00
        N/2NE/4, E/2NW/4

ULTRA.019  000712

Report: LseCrpLong

EXHIBIT 'A'
G.R.S. COAL LANDS
WYO111

Date: 04-JUN-96
Page: 1    of: 1

Selection Criteria:

Lease Number: L004951-00          ACTIVE
Lease Date:   04/16/1987   Lessor: W-104092
Expire Date:  04/30/1997   Lessee: FOSSIL ASSOCIATES

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| | | | | ---- Acres ---- | | | ---- Interest ---- | | |
| 001 | G.R.S. COAL LANDS | WY | SWEETWATER | 400.350 | 400.350 | 400.350 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 13 N Rng: 99 W,  Sect: 10 QQtr:   Lot: 00
        SW/4
Twp: 13 N Rng: 99 W,  Sect: 3 QQtr:   Lot: 00
        LOTS 1,2,4, S/2NE/4, SW/4NW/4

|  | Gross | Net |
|--|-------|-----|
| Total Nets | 400.350 | 400.350 |

Report: LseCrpLong

EXHIBIT 'A'
G.R.S. RED CREEK
WY0108

Date: 17-JUL-96
Page: 1    of: 2

Selection Criteria:

Lease Number: L004890-00          ACTIVE
Lease Date:   01/30/1987   Lessor: W-103493
Expire Date:  01/30/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|----------------|--------------|-------|-----|-------------|-----------|---------|------------|
| 001  G.R.S. RED CREEK | WY   SWEETWATER | 1,080.000 | 1,080.000 | 1,080.000 | 1.00000000 | .12500000 | .03000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 13 N Rng: 107 W, Sect: 17 QQtr:   Lot: 00
        ALL
    Twp: 13 N Rng: 107 W, Sect: 20 QQtr:   Lot: 00
        NE/4NE/4, S/2NW/4, S/2

Lease Number: L005100-00          ACTIVE
Lease Date:   05/12/1987   Lessor: W-104788
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|----------------|--------------|-------|-----|-------------|-----------|---------|------------|
| 001  G.R.S. RED CREEK | WY   SWEETWATER | 640.800 | 640.800 | 640.800 | 1.00000000 | .12500000 | .03000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 12 N Rng: 107 W, Sect: 6 QQtr:   Lot: 00
        LOTS 8,9,10,11 (40.20 ACS EACH);
        E/2; E/2W/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

Lease Number: L005101-00          ACTIVE
Lease Date:   06/10/1987   Lessor: W-104808
Expire Date:  06/30/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|----------------|--------------|-------|-----|-------------|-----------|---------|------------|
| 002  G.R.S. RED CREEK | WY   SWEETWATER | 160.000 | 160.000 | 160.000 | 1.00000000 | .12500000 | .03000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 12 N Rng: 109 W, Sect: 9 QQtr:   Lot: 00
        NW/4

Lease Number: L008255-00          ACTIVE
Lease Date:   07/23/1987   Lessor: W-104170
Expire Date:  07/31/1997   Lessee: FOSSIL ASSOCIATES

Report: LseCrpLong

EXHIBIT 'A'
G.R.S. RED CREEK
WY0108

Date: 17-JUL-96
Page: 2    of: 2

Selection Criteria:

Lease Number: L008255-00          ACTIVE
Lease Date:   07/23/1987   Lessor: W-104170
Expire Date:  07/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| | | | | | | Acres | | Interest | |
| 001 | G.R.S. RED CREEK | WY | SWEETWATER | 1,278.800 | 1,278.800 | 1,278.800 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 13 N Rng: 107 W, Sect: 1 QQtr:   Lot: 00
        LOTS 1,2,3,4 (39.70 ACS EACH); S/2N/2; S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 13 N Rng: 107 W, Sect: 12 QQtr:   Lot: 00
        ALL
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

                          Total Nets      3,159.600   3,159.600

Report: LseCrpLong

EXHIBIT 'A'
G.R.S. RED CREEK EAST
WY0109

Date: 04-JUN-96
Page: 1    of: 4

Selection Criteria:

Lease Number: L004889-00          ACTIVE
Lease Date:   01/30/1987   Lessor: W-103485
Expire Date:  01/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|---|
| 001  G.R.S. RED CREEK EAST | WY | SWEETWATER | | | | | | |
| | | | 1,360.000 | 1,360.000 | 1,360.000 | 1.00000000 | .12500000 | .03000000 |

     Recorded:
     Legal: Free Form Remarks:
     Twp: 13 N Rng: 105 W, Sect: 11 QQtr:  Lot: 00
         NE/4NW/4, S/2NW/4, SW/4
     Twp: 13 N Rng: 105 W, Sect: 13 QQtr:  Lot: 00
         SW/4NE/4, W/2SE/4, W/2
     Twp: 13 N Rng: 105 W, Sect: 14 QQtr:  Lot: 00
         ALL

Lease Number: L004952-00          ACTIVE
Lease Date:   05/11/1987   Lessor: W-104137
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|---|
| 001  G.R.S. RED CREEK EAST | WY | SWEETWATER | | | | | | |
| | | | 638.900 | 638.900 | 638.900 | 1.00000000 | .12500000 | .03000000 |

     Recorded:
     Legal: Free Form Remarks:
     Twp: 13 N Rng: 104 W, Sect: 31 QQtr:  Lot: 00
         LOTS 5,6,7,8 (39.725 ACS EACH);
         E/2; E/2W/2
         SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
         RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
         OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
         EQUALLY BETWEEN SAME.

Lease Number: L004953-00          ACTIVE
Lease Date:   05/11/1987   Lessor: W-104138
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

Report: LseCrpLong

EXHIBIT 'A'
G.R.S. RED CREEK EAST
WY0109

Date: 04-JUN-96
Page: 2   of: 4

Selection Criteria:

Lease Number: L004953-00        ACTIVE
Lease Date:   05/11/1987   Lessor: W-104138
Expire Date:  05/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-----|-----|-----|-----|-----|-----|-----|-----|
| 001  G.R.S. RED CREEK EAST | WY   SWEETWATER | | | | | | |
| | | 1,750.610 | 1,750.610 | 1,750.610 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 14 N Rng: 104 W, Sect: 18 QQtr:  Lot: 00
     LOTS 5,6,7,8,9,10 (34.413 ACS EA);
     NE/4; E/2W/2; W/2SE/4
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.
Twp: 14 N Rng: 104 W, Sect: 33 QQtr:  Lot: 00
     E/2

     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.
Twp: 14 N Rng: 104 W, Sect: 6 QQtr:  Lot: 00
     LOTS 10 & 11 (34.414 ACS EACH);
     S/2NE/4; E/2SW/4; N/2SE/4; SW/4SE/4
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.
Twp: 14 N Rng: 104 W, Sect: 7 QQtr:  Lot: 00
     LOTS 6,7,8,9,10,11,12,13 (34.413 ACS EA);
     E/2W/2; SW/4SE/4
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.

Lease Number: L008128-00        ACTIVE
Lease Date:   07/10/1987   Lessor: W-105467
Expire Date:  07/31/1997   Lessee: FOSSIL ASSOCIATES

ULTRA.019  000717

Report: LseCrpLong

EXHIBIT 'A'
G.R.S. RED CREEK WEST
WY0110

Date: 04-JUN-96
Page: 1    of: 2

Selection Criteria:

Lease Number: L005101-00         ACTIVE
Lease Date:   06/10/1987   Lessor: W-104808
Expire Date:  06/30/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|----------------|--------------|-------|-----|-------------|-----------|---------|------------|
| 001  G.R.S. RED CREEK WEST | WY   SWEETWATER | 1,851.440 | 1,851.440 | 1,851.440 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 12 N Rng: 109 W, Sect: 16 QQtr:   Lot: 00
        LOT 1
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 12 N Rng: 109 W, Sect: 18 QQtr:   Lot: 00
        LOTS 5 & 6 (15.065 ACRES EACH);
        NE/4; E/2NW/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 12 N Rng: 109 W, Sect: 19 QQtr:   Lot: 00
        LOTS 7,8,9 & 10 (15.065 ACRES EACH)
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 12 N Rng: 109 W, Sect: 20 QQtr:   Lot: 00
        E/2; E/2SW/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 12 N Rng: 109 W, Sect: 21 QQtr:   Lot: 00
        LOTS 4,5 & 6 (15.065 ACRES EACH);
        N/2SW/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 12 N Rng: 109 W, Sect: 7 QQtr:   Lot: 00
        LOTS 5,6,7,8,9,10 (15.065 ACS EACH);
        W/2NE/4; E/2W/2; SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 12 N Rng: 109 W, Sect: 8 QQtr:   Lot: 00
        LOTS 4,8,9,10,11 (15.065 ACS EACH);
        W/2NE/4; E/2W/2; SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT

Report: LseCrpLong

EXHIBIT 'A'
G.R.S. RED CREEK WEST
WYO110

Date: 04-JUN-96
Page: 2    of: 2

Selection Criteria:

Lease Number: L005101-00          ACTIVE
Lease Date:  06/10/1987    Lessor: W-104808
Expire Date: 06/30/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|

Legal:  Free Form Remarks:
Twp: 12 N Rng: 109 W,  Sect: 8 QQtr:   Lot: 00
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

Lease Number: L005103-00          ACTIVE
Lease Date:  06/10/1987    Lessor: W-104816
Expire Date: 06/30/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001 G.R.S. RED CREEK WEST | WY   SWEETWATER | 1,086.000 | 1,086.000 | 1,086.000 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 13 N Rng: 110 W,  Sect: 32 QQtr:   Lot: 00
        W/2NE/4; SE/4NE/4; NW/4; S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 13 N Rng: 110 W,  Sect: 33 QQtr:   Lot: 00
        LOT 2 (6.00 ACRES);
        N/2; N/2S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

                          Total Nets       2,937.440    2,937.440

ULTRA.019  000719

Report: LseCrpLong

EXHIBIT 'A'
G.R.S. ROCK SPRINGS
WY0112

Date: 04-JUN-96
Page: 1    of: 1

Selection Criteria:

Lease Number: L004888-00          ACTIVE
Lease Date:   01/30/1987    Lessor: W-103459
Expire Date:  01/31/1997    Lessee: FOSSIL ASSOCIATES

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 001 | G.R.S. ROCK SPRINGS | WY | SWEETWATER | 600.000 | 600.000 | 600.000 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 17 N Rng: 101 W, Sect: 14 QQtr:   Lot: 00
      E/2, NE/4NW/4, S/2NW/4, SW/4

|  |  |
|--|--|
| Total Nets | 600.000 | 600.000 |

ULTRA.019  000720

Report: LseCrpLong

EXHIBIT 'A'
G.R.S. TOTEM
WY0114

Date: 06-JUN-96
Page: 1   of: 1

Selection Criteria:

Lease Number: L005106-00          ACTIVE
Lease Date:   07/23/1987   Lessor: W-104837
Expire Date:  07/31/1997   Lessee: FOSSIL ASSOCIATES

| | | | | Acres | | | | Interest | |
| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 001 | G.R.S. TOTEM | WY | SWEETWATER | | | | | | |
| | | | | 3,520.080 | 3,520.080 | 3,520.080 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 14 N Rng: 112 W,  Sect: 10 QQtr:   Lot: 00
        ALL
Twp: 14 N Rng: 112 W,  Sect: 11 QQtr:   Lot: 00
        ALL
Twp: 14 N Rng: 112 W,  Sect: 15 QQtr:   Lot: 00
        ALL
Twp: 14 N Rng: 112 W,  Sect: 2 QQtr:   Lot: 00
        LOTS 5,6,7,8 (40.02 ACRES EACH);
        S/2N/2; S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 14 N Rng: 112 W,  Sect: 21 QQtr:   Lot: 00
        E/2
Twp: 14 N Rng: 112 W,  Sect: 22 QQtr:   Lot: 00
        ALL

                              Total Nets        3,520.080    3,520.080

ULTRA.019  000721

Report: LseCrpLong

EXHIBIT 'A'
JONAH
WY0050

Date: 04-JUN-96
Page: 1   of: 6

Selection Criteria:

Lease Number: L004627-00          ACTIVE
Lease Date:   08/22/1986   Lessor: W-100887
Expire Date:  08/31/1996   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001  JONAH | WY   SWEETWATER | 40.000 | 40.000 | 40.000 | 1.00000000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 25 N Rng: 106 W, Sect: 30 QQtr:   Lot: 00
      SE/4NE/4

Lease Number: L004628-00          ACTIVE
Lease Date:   08/22/1986   Lessor: W-100895
Expire Date:  08/31/1996   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001  JONAH | WY   SWEETWATER | 200.000 | 200.000 | 200.000 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 25 N Rng: 107 W, Sect: 12 QQtr:   Lot: 00
      SW/4NW/4
Twp: 25 N Rng: 107 W, Sect: 13 QQtr:   Lot: 00
      S/2SE/4
Twp: 25 N Rng: 107 W, Sect: 2 QQtr:   Lot: 00
      N/2SE/4           JONAH C

Lease Number: L004667-00          ACTIVE
Lease Date:   09/18/1986   Lessor: W-101747
Expire Date:  09/30/1996   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001  JONAH | WY   SWEETWATER | 155.370 | 155.370 | 155.370 | 1.00000000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 24 N Rng: 106 W, Sect: 18 QQtr:   Lot: 00
      LOT 2, S/2NE/4, SE/4NW/4

Lease Number: L004669-00          ACTIVE
Lease Date:   09/18/1986   Lessor: W-101756
Expire Date:  09/30/1996   Lessee: FOSSIL ASSOCIATES

ULTRA.019  000722

Report: LseCrpLong

EXHIBIT 'A'
JONAH
WY0050

Selection Criteria:

---

Lease Number: L004669-00         ACTIVE
Lease Date:   09/18/1986    Lessor: W-101756
Expire Date:  09/30/1996    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|---|
| 001   JONAH | WY | SWEETWATER | 120.000 | 120.000 | 120.000 | 1.00000000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 25 N Rng: 107 W, Sect: 1 QQtr:  Lot: 00
    NE/4 SE/4
Twp: 25 N Rng: 107 W, Sect: 2 QQtr:  Lot: 00
    S/2 SW/4

---

Lease Number: L004856-00         ACTIVE
Lease Date:   11/18/1986    Lessor: W-102709
Expire Date:  11/30/1996    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|---|
| 001   JONAH | WY | SWEETWATER | 80.000 | 80.000 | 80.000 | 1.00000000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 25 N Rng: 106 W, Sect: 30 QQtr:  Lot: 00
    N/2SE/4

---

Lease Number: L008131-00         ACTIVE
Lease Date:   07/10/1987    Lessor: W-105474
Expire Date:  07/31/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|---|
| 001   JONAH | WY | SWEETWATER | 159.600 | 159.600 | 159.600 | 1.00000000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 25 N Rng: 106 W, Sect: 30 QQtr:  Lot: 00
    S/E4NW/4

        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
Twp: 25 N Rng: 106 W, Sect: 7 QQtr:  Lot: 00
        LOT 3 (39.60 ACRES);
        E/2NW/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

Report: LseCrpLong

EXHIBIT 'A'
JONAH
WY0050

Date: 04-JUN-96
Page: 3    of: 6

Selection Criteria:

Lease Number: L008132-00          ACTIVE
Lease Date:   07/13/1987   Lessor: W-105480
Expire Date:  07/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Acres | | | Interest | | |
|---|---|---|---|---|---|---|---|
| | | Gross | Net | Company Net | Corporate | Royalty | Overriding |
| 001   JONAH | WY   SWEETWATER | 360.000 | 360.000 | 360.000 | 1.00000000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 25 N Rng: 107 W,  Sect: 1 QQtr:   Lot: 00
       SE/4NE/4; SW/4NW/4
Twp: 25 N Rng: 107 W,  Sect: 10 QQtr:   Lot: 00
       NW/4SE/4
Twp: 25 N Rng: 107 W,  Sect: 11 QQtr:   Lot: 00
       N/2NE/4; W/2SW/4
Twp: 25 N Rng: 107 W,  Sect: 14 QQtr:   Lot: 00
       SW/4SE/4
Twp: 25 N Rng: 107 W,  Sect: 3 QQtr:   Lot: 00
       NW/4SE/4

Lease Number: L008261-00          ACTIVE
Lease Date:   10/09/1987   Lessor: W-106147
Expire Date:  10/31/1997   Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Acres | | | Interest | | |
|---|---|---|---|---|---|---|---|
| | | Gross | Net | Company Net | Corporate | Royalty | Overriding |
| 001   JONAH | WY   SWEETWATER | 1,800.000 | 1,800.000 | 1,800.000 | 1.00000000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 24 N Rng: 106 W,  Sect: 22 QQtr:   Lot: 00
       SE/4
Twp: 24 N Rng: 106 W,  Sect: 23 QQtr:   Lot: 00
       W/2
Twp: 24 N Rng: 106 W,  Sect: 25 QQtr:   Lot: 00
       NW/4
Twp: 24 N Rng: 106 W,  Sect: 26 QQtr:   Lot: 00
       NE/4, W/2
Twp: 24 N Rng: 106 W,  Sect: 27 QQtr:   Lot: 00
       E/2, E/2NW/4, SW/4NW/4, SW/4
Twp: 24 N Rng: 106 W,  Sect: 28 QQtr:   Lot: 00
       S/2SE/4

Lease Number: L008262-00          ACTIVE
Lease Date:   10/09/1987   Lessor: W-106148
Expire Date:  10/31/1997   Lessee: FOSSIL ASSOCIATES

Report: LseCrpLong

EXHIBIT 'A'
LITTLE SNAKE
WY0039

Date: 04-JUN-96
Page: 1    of: 1

Selection Criteria:

Lease Number: L004675-00       ACTIVE
Lease Date:   09/10/1986   Lessor: W-101639
Expire Date:  09/30/1996   Lessee: FOSSIL ASSOCIATES

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 001 | LITTLE SNAKE | WY | SWEETWATER | 40.000 | 40.000 | 40.000 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 12 N Rng: 95 W, Sect: 2 QQtr:   Lot: 00
     SE/4NE/4

|  |  | Total Nets | 40.000 | 40.000 |
|--|--|------------|--------|--------|

ULTRA.019  000725

Report: LseCrpLong                          EXHIBIT 'A'                        Date: 04-JUN-96
                                            PINEDALE EXTENSION                 Page: 1    of: 10
                                            WY0090

Selection Criteria:


Lease Number: L004629-00          ACTIVE
Lease Date:   08/22/1986     Lessor: W-100903
Expire Date:  08/31/1996     Lessee: FOSSIL ASSOCIATES

---------------- Acres ------------------ ------------ Interest -------------

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 001 | PINEDALE EXTENSION | WY | SUBLETTE | 1,279.830 | 1,279.830 | 1,279.830 | 1.00000000 | .12500000 | .03000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 33 N Rng: 108 W, Sect: 11 QQtr:  Lot: 00
            W/2
            ACREAGE FIGURE IS AN ESTIMATE.
            ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    Twp: 33 N Rng: 108 W, Sect: 14 QQtr:  Lot: 00
            LOT 1, W/2 NE/4, SE/4 NE/4, W/2 (LESS 1.57 ACRES
            MORE OR LESS IN RESERVOIR R/W W-014221)
            ACREAGE FIGURE IS AN ESTIMATE .
            ACTUAL ACREAGE FIGURE IS UNAVAILABLE
    Twp: 33 N Rng: 108 W, Sect: 3 QQtr:  Lot: 00
            LOTS 1, 2, 3, S/2 N/2, N/2 SW/4    EXTENSION H

            ACREAGE FIGURE IS AN ESTIMATE.
            ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    Twp: 33 N Rng: 108 W, Sect: 4 QQtr:  Lot: 00
            NE/4 SE/4
            ACREAGE FIGURE IS AN ESTIMATE.
            ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    Twp: 33 N Rng: 108 W, Sect: 6 QQtr:  Lot: 00
            W/2 SE/4
            ACREAGE FIGURE IS AN ESTIMATE.
            ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

Lease Number: L004630-00          ACTIVE
Lease Date:   08/22/1986     Lessor: W-100909
Expire Date:  08/31/1996     Lessee: FOSSIL ASSOCIATES

---------------- Acres ------------------ ------------ Interest -------------

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 001 | PINEDALE EXTENSION | WY | SUBLETTE | 680.000 | 680.000 | 680.000 | 1.00000000 | .12500000 | .03000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 34 N Rng: 109 W, Sect: 15 QQtr:  Lot: 00
            N/2, SW/4            EXTENSION G
    Twp: 34 N Rng: 109 W, Sect: 22 QQtr:  Lot: 00
            E/2 E/2
    Twp: 34 N Rng: 109 W, Sect: 27 QQtr:  Lot: 00
            NE/4 SE/4

Lease Number: L004670-00          ACTIVE
Lease Date:   09/18/1986     Lessor: W-101759
Expire Date:  09/30/1996     Lessee: FOSSIL ASSOCIATES

Report: LseCrpLong

EXHIBIT 'A'
PINEDALE EXTENSION
WY0090

Date: 04-JUN-96
Page: 2    of: 10

Selection Criteria:

Lease Number: L004670-00          ACTIVE
Lease Date:   09/18/1986    Lessor: W-101759
Expire Date:  09/30/1996    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-----|-----|-----|-----|-----|-----|-----|-----|
| 001  PINEDALE EXTENSION | WY   SUBLETTE |  |  |  |  |  |  |
|  |  | 321.280 | 321.280 | 321.280 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 31 N Rng: 108 W, Sect: 1 QQtr:   Lot: 00
       LOTS 1, 2, 3, 4, SW/4        EXTENSION B

Lease Number: L004858-00          ACTIVE
Lease Date:   11/18/1986    Lessor: W-102759
Expire Date:  11/30/1996    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-----|-----|-----|-----|-----|-----|-----|-----|
| 001  PINEDALE EXTENSION | WY   SUBLETTE |  |  |  |  |  |  |
|  |  | 400.000 | 400.000 | 400.000 | 1.00000000 | .16666667 | .03000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 34 N Rng: 110 W, Sect: 17 QQtr:   Lot: 00
       SW/4 NE/4, S/2 NW/4
Twp: 34 N Rng: 110 W, Sect: 29 QQtr:   Lot: 00
       SE/4 NW/4, NE/4 SE/4
Twp: 34 N Rng: 110 W, Sect: 4 QQtr:   Lot: 00
       S/2 NW/4        EXTENSION F
Twp: 34 N Rng: 110 W, Sect: 5 QQtr:   Lot: 00
       SE/4 NE/4
Twp: 34 N Rng: 110 W, Sect: 9 QQtr:   Lot: 00
       W/2 SW/4

Lease Number: L004891-00          ACTIVE
Lease Date:   01/31/1987    Lessor: W-103505
Expire Date:  01/31/1997    Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-----|-----|-----|-----|-----|-----|-----|-----|
| 001  PINEDALE EXTENSION | WY   SUBLETTE |  |  |  |  |  |  |
|  |  | 640.000 | 640.000 | 640.000 | 1.00000000 | .12500000 | .03000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 33 N Rng: 110 W, Sect: 17 QQtr:   Lot: 00
       ALL        EXTENSION F

Lease Number: L005102-00          ACTIVE
Lease Date:   06/10/1987    Lessor: W-104813
Expire Date:  06/30/1997    Lessee: FOSSIL ASSOCIATES

ULTRA.019  000727

```
Report: LseCrpLong                    EXHIBIT 'A'                    Date: 04-JUN-96
                                      PINEDALE EXTENSION            Page: 3    of: 10
                                      WY0090


Selection Criteria:


Lease Number: L005102-00              ACTIVE
Lease Date:   06/10/1987    Lessor: W-104813
Expire Date:  06/30/1997    Lessee: FOSSIL ASSOCIATES
```

| Tract Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|---|
| 001   PINEDALE EXTENSION | WY | SUBLETTE | 1,005.000 | 1,005.000 | 1,005.000 | 1.00000000 | .12500000 | .03000000 |

```
         Recorded:
         Legal: Free Form Remarks:
         Twp: 34 N Rng: 109 W, Sect: 5 QQtr:  Lot: 00
                LOTS 1,2,3,4, (41.25 ACS EA);   EXTENSION G
                S/2N/2; S/2
                SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
                RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
                OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
                EQUALLY BETWEEN SAME.
         Twp: 34 N Rng: 109 W, Sect: 8 QQtr:  Lot: 00
                N/2N/2; SE/4NE/4
                SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
                RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
                OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
                EQUALLY BETWEEN SAME.
         Twp: 34 N Rng: 110 W, Sect: 1 QQtr:  Lot: 00
                SE/4NE/4
         Twp: 35 N Rng: 109 W, Sect: 31 QQtr:  Lot: 00
                E/2NE/4
         Twp: 35 N Rng: 109 W, Sect: 32 QQtr:  Lot: 00
                SW/4SW/4


Lease Number: L005104-00              ACTIVE
Lease Date:   06/12/1987    Lessor: W-104825
Expire Date:  06/30/1997    Lessee: FOSSIL ASSOCIATES
```

| Tract Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|---|
| 001   PINEDALE EXTENSION | WY | SUBLETTE | 2,200.000 | 2,200.000 | 2,200.000 | 1.00000000 | .12500000 | .03000000 |

```
         Recorded:
         Legal: Free Form Remarks:
         Twp: 35 N Rng: 110 W, Sect: 10 QQtr:  Lot: 00
                ALL                 EXTENSION I
         Twp: 35 N Rng: 110 W, Sect: 11 QQtr:  Lot: 00
                W/2
         Twp: 35 N Rng: 110 W, Sect: 14 QQtr:  Lot: 00
                NE/4NE/4; W/2NE/4; NW/4; N/2SW/4; NW/4SE/4
         Twp: 35 N Rng: 110 W, Sect: 15 QQtr:  Lot: 00
                ALL
         Twp: 35 N Rng: 110 W, Sect: 22 QQtr:  Lot: 00
                NE/4; NW/4NW/4


Lease Number: L005105-00              ACTIVE
Lease Date:   06/12/1987    Lessor: W-104826
Expire Date:  06/30/1997    Lessee: FOSSIL ASSOCIATES
```

Report: LseCrpLong

EXHIBIT 'A'
TRAIL
WY0107

Date: 04-JUN-96
Page: 1    of: 1

Selection Criteria:

Lease Number: L004431-00          ACTIVE
Lease Date:   04/01/1986   Lessor: W-98370
Expire Date:  03/31/1996   Lessee: FOSSIL ASSOCIATES

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 001 | TRAIL | WY | SWEETWATER | 401.360 | 401.360 | 401.360 | 1.00000000 | .12500000 | .03000000 |

    Recorded:
    Legal: Free Form Remarks:
    Twp: 24 N Rng: 109 W, Sect: 18 QQtr:   Lot: 00
          LOTS 1 - 8 INCL.(33.447 ACS EACH),
          LOTS 9 - 12 INCL.(33.446 ACS EACH).
          ADJUSTMENT LOT - ACREAGE BASED ON AVERAGE PER LOT
          PURSUANT TO LEASE: ACTUAL ACREAGE NOT AVAILABLE.

                         Total Nets       401.360      401.360

Report: LseCrpLong

EXHIBIT 'A'
COUGAR CANYON
C00160

Date: 04-JUN-96
Page: 1    of: 1

Selection Criteria:

Lease Number: L010456-00        ACTIVE
Lease Date:   06/20/1989    Lessor: C-44065
Expire Date:  04/30/1997    Lessee: R K O'CONNELL

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001   COUGAR CANYON | CO   SAN MIGUEL | 80.000 | 80.000 | 80.000 | 1.00000000 | .12500000 | .08000000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 44 N Rng: 19 W,  Sect: 15 QQtr:   Lot: 00
          SW/4SW/4
    Twp: 44 N Rng: 19 W,  Sect: 22 QQtr:   Lot: 00
          SW/4SW/4

Lease Number: L010748-00        ACTIVE
Lease Date:   12/11/1990    Lessor: C-51977
Expire Date:  12/31/1996    Lessee: COASTAL OIL & GAS CORP

| Tract Prospect | — State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|
| 001   COUGAR CANYON | CO   SAN MIGUEL | 40.000 | 40.000 | 10.000 | .25000000 | .12500000 | .00750000 |

    Recorded: 000
    Legal:  Free Form Remarks:
    Twp: 44 N Rng: 19 W,  Sect: 25 QQtr:   Lot: 00
          NW/4SW/4

Total Nets          120.000      90.000

Report: LseCrpLong

Selection Criteria:

Lease Number: L004988-00        ACTIVE
Lease Date:   02/05/1987    Lessor: C-44060
Expire Date:  02/28/1997    Lessee: GARY LUNING

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|----------------|--------------|-------|-----|-------------|-----------|---------|------------|
| | | ---------------- Acres ----------------- | | | ----------- Interest ------------- | | |
| 001 HAMM CANYON | CO    SAN MIGUEL | 2,356.180 | 2,356.180 | 2,356.180 | 1.00000000 | .12500000 | .10350000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 45 N Rng: 18 W,  Sect: 14 QQtr:  Lot: 00
         SE/4
         ACREAGE FIGURE IS AN ESTIMATE.
         ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    Twp: 45 N Rng: 18 W,  Sect: 15 QQtr:  Lot: 00
         S/2
         ACREAGE FIGURE IS AN ESTIMATE.
         ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    Twp: 45 N Rng: 18 W,  Sect: 20 QQtr:  Lot: 00
         SW/4
         ACREAGE FIGURE IS AN ESTIMATE.
         ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    Twp: 45 N Rng: 18 W,  Sect: 22 QQtr:  Lot: 00
         NE/4
         ACREAGE FIGURE IS AN ESTIMATE.
         ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    Twp: 45 N Rng: 18 W,  Sect: 23 QQtr:  Lot: 00
         NE/4, E/2SE/4
         ACREAGE FIGURE IS AN ESTIMATE.
         ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    Twp: 45 N Rng: 18 W,  Sect: 24 QQtr:  Lot: 00
         W/2
         ACREAGE FIGURE IS AN ESTIMATE.
         ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    Twp: 45 N Rng: 18 W,  Sect: 25 QQtr:  Lot: 00
         NE/4
         ACREAGE FIGURE IS AN ESTIMATE.
         ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    Twp: 45 N Rng: 18 W,  Sect: 28 QQtr:  Lot: 00
         NE/4SW/4, SE/4
         ACREAGE FIGURE IS AN ESTIMATE.
         ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    Twp: 45 N Rng: 18 W,  Sect: 36 QQtr:  Lot: 00
         ALL
         ACREAGE FIGURE IS AN ESTIMATE.
         ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

Report: LseCrpLong

EXHIBIT 'A'
HAMM CANYON
C00080

Date: 04-JUN-96
Page: 2    of: 2

Selection Criteria:

Lease Number: L004988-00          ACTIVE
Lease Date:   02/05/1987   Lessor: C-44060
Expire Date:  02/28/1997   Lessee: GARY LUNING

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 002 | HAMM CANYON | CO | MONTROSE | 200.000 | 200.000 | 200.000 | 1.00000000 | .12500000 | .10350000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 45 N Rng: 18 W, Sect: 15 QQtr:   Lot: 00
          NW/4NE/4, NW/4
          ACREAGE FIGURE IS AN ESTIMATE.
          ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

                              Total Nets      2,556.180    2,556.180

Report: LseCrpLong

EXHIBIT 'A'
MAYBERRY
C00140

Date: 04-JUN-96
Page: 1    of: 12

Selection Criteria:

Lease Number: L004902-00       ACTIVE
Lease Date:   02/17/1987    Lessor: C-44435
Expire Date:  02/28/1997    Lessee: PARTNERS ENERGY

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 001 | MAYBERRY | CO | MOFFAT | 3,655.370 | 3,655.370 | 3,655.370 | 1.00000000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 11 N Rng: 94 W, Sect: 17 QQtr:  Lot: 00
       ALL

       DEPTH A - DEEP RIGHTS
Twp: 11 N Rng: 94 W,  Sect: 18 QQtr:  Lot: 00
       LOTS 1 THRU 4, E/2, E/2W/2   (ALL)

       DEPTH A - DEEP RIGHTS
Twp: 11 N Rng: 94 W, Sect: 5 QQtr:  Lot: 00
       LOTS 1 THRU 4, S/2N/2, SW/4

       DEPTH A - DEEP RIGHTS
Twp: 11 N Rng: 94 W, Sect: 6 QQtr:  Lot: 00
       LOTS 1, 2 ,3 , 8 THRU 20, S/2NE/4, SE/4 (ALL)

       DEPTH A - DEEP RIGHTS
Twp: 11 N Rng: 94 W, Sect: 7 QQtr:  Lot: 00
       LOTS 2 THRU 10, E/2, E/2SW/4 (ALL)

       DEPTH A - DEEP RIGHTS
Twp: 11 N Rng: 94 W, Sect: 8 QQtr:  Lot: 00
       ALL

       DEPTH A - DEEP RIGHTS

Report: LseCrpLong

EXHIBIT 'A'
MAYBERRY
C00140

Date: 04-JUN-96
Page: 2    of: 12

Selection Criteria:

Lease Number: L004902-00        ACTIVE
Lease Date:   02/17/1987   Lessor: C-44435
Expire Date:  02/28/1997   Lessee: PARTNERS ENERGY

| | | | | | Acres | | | | Interest | |
| Tract Prospect | | State County | | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|---|---|---|---|---|---|---|---|---|---|
| 002  MAYBERRY | | CO   MOFFAT | | 3,655.370 | 3,655.370 | 456.921 | .12500000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 11 N Rng: 94 W, Sect: 17 QQtr:  Lot: 00
        ALL


        DEPTH B - FROM THE SURFACE DOWN TO, BUT NOT BELOW,
                  THE STRATIGRAPHIC EQUIVALENT OF THE BASE OF
                  THE ALMOND FORMATION
Twp: 11 N Rng: 94 W, Sect: 18 QQtr:  Lot: 00
        LOTS 1 THRU 4, E/2, E/2W/2   (ALL)


        DEPTH B - FROM THE SURFACE DOWN TO, BUT NOT BELOW,
                  THE STRATIGRAPHIC EQUIVALENT OF THE BASE OF
                  THE ALMOND FORMATION
Twp: 11 N Rng: 94 W, Sect: 5 QQtr:  Lot: 00
        LOTS 1 THRU 4, S/2N/2, SW/4


        DEPTH B - FROM THE SURFACE DOWN TO, BUT NOT BELOW,
                  THE STRATIGRAPHIC EQUIVALENT OF THE BASE OF
                  THE ALMOND FORMATION
Twp: 11 N Rng: 94 W, Sect: 6 QQtr:  Lot: 00
        LOTS 1, 2 ,3 , 8 THRU 20, S/2NE/4, SE/4 (ALL)


        DEPTH B - FROM THE SURFACE DOWN TO, BUT NOT BELOW
                  THE STRATIGRAPHIC EQUIVALENT OF THE BASE
                  OF THE ALMOND FORMATION
Twp: 11 N Rng: 94 W, Sect: 7 QQtr:  Lot: 00
        LOTS 2 THRU 10, E/2, E/2SW/4 (ALL)


        DEPTH B - FROM THE SURFACE DOWN TO, BUT NOT BELOW,
                  THE STRATIGRAPHIC EQUIVALENT OF THE BASE
                  OF THE ALMOND FORMATION
Twp: 11 N Rng: 94 W, Sect: 8 QQtr:  Lot: 00
        ALL


        DEPTH B - FROM THE SURFACE DOWN TO, BUT NOT BELOW,
                  THE STRATIGRAPHIC EQUIVALENT OF THE BASE
                  OF THE ALMOND FORMATION

        ACREAGE FIGURE IS AN ESTIMATE.

ULTRA.019  000734

Report: LseCrpLong

EXHIBIT 'A'
MAYBERRY
C00140

Date: 04-JUN-96
Page: 3     of: 12

Selection Criteria:

Lease Number: L004902-00     ACTIVE
Lease Date:   02/17/1987     Lessor: C-44435
Expire Date:  02/28/1997     Lessee: PARTNERS ENERGY

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|------|------|------|------|------|------|------|------|
| | | | | | | | |

Legal: Free Form Remarks:
Twp: 11 N Rng: 94 W,  Sect: 8 QQtr:  Lot: 00
    ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

Lease Number: L005110-00     ACTIVE
Lease Date:   09/08/1987     Lessor: C-45279
Expire Date:  09/30/1997     Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|------|------|------|------|------|------|------|------|
| 001  MAYBERRY | CO   MOFFAT | 559.000 | 559.000 | 559.000 | 1.00000000 | .12500000 | .05500000 |

Recorded:
Legal: Free Form Remarks: ‾
Twp: 9 N Rng: 94 W,  Sect: 10 QQtr:  Lot: 00
    W/2 NE/4
    ACREAGE FIGURE IS AN ESTIMATE.
    ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
Twp: 9 N Rng: 94 W,  Sect: 30 QQtr:  Lot: 00
    LOT 2, E/2, SE/4NW/4
    ACREAGE FIGURE IS AN ESTIMATE.
    ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
Twp: 9 N Rng: 95 W,  Sect: 24 QQtr:  Lot: 00
    NE/4SW/4, NE/4SE/4
    ACREAGE FIGURE IS AN ESTIMATE.
    ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

Lease Number: L005111-00     ACTIVE
Lease Date:   09/08/1987     Lessor: C-45280
Expire Date:  09/30/1997     Lessee: FOSSIL ASSOCIATES

| Tract Prospect | State County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|------|------|------|------|------|------|------|------|
| 001  MAYBERRY | CO   MOFFAT | 120.000 | 120.000 | 120.000 | 1.00000000 | .12500000 | .02500000 |

Recorded:
Legal: Free Form Remarks:
Twp: 10 N Rng: 94 W,  Sect: 32 QQtr:  Lot: 00
    S/2SW/4, SW/4SE/4

    DEPTH A - DEEP RIGHTS

ULTRA.019  000735

Report: LseCrpLong

EXHIBIT 'A'
MAYBERRY
C00140

Date: 04-JUN-96
Page: 7    of: 12

Selection Criteria:

Lease Number: L010876          ACTIVE
Lease Date:   12/17/1992   Lessor: STATE OF COLORADO 92/9152-S
Expire Date:  12/17/1997   Lessee: BRIAN HALEY

| | | | | ---------------- Acres ---------------- | | | ------------ Interest ------------ | | |
| Tract Prospect | | State County | Gross | Net | Company Net | Corporate | Royalty Overriding |
| 001 MAYBERRY | | CO   MOFFAT | | | | | |
| | | | 640.000 | 640.000 | 80.000 | .12500000 | .12500000   .00000000 |

    Recorded:
    Legal:  Free Form Remarks:
    Twp: 11 N Rng: 95 W,  Sect: 16 QQtr:   Lot: 00
        LOTS 7, 9, 11, 13, 17-24
    Twp: 11 N Rng: 95 W,  Sect: 17 QQtr:   Lot: 00
        LOTS 16, 17, 31
    Twp: 11 N Rng: 95 W,  Sect: 20 QQtr:   Lot: 00
        LOTS 1, 17
    Twp: 11 N Rng: 95 W,  Sect: 21 QQtr:   Lot: 00
        LOTS 2-6, 8, 10, 12

Lease Number: L010877-01        ─ ACTIVE
Lease Date:   09/25/1992   Lessor: EVELYN JANE POWELL  ,
Expire Date:  09/25/1997   Lessee: TRANSCONTINENT OIL COMPANY

| | | | ---------------- Acres ---------------- | | | ------------ Interest ------------ | | |
| Tract Prospect | | State County | Gross | Net | Company Net | Corporate | Royalty Overriding |
| 001 MAYBERRY | | CO   MOFFAT | | | | | |
| | | | 320.000 | 64.000 | 8.000 | .12500000 | .12500000   .00000000 |

    Recorded: BK 663 PG 510
    Legal:  Free Form Remarks:
    Twp: 11 N Rng: 95 W,  Sect: 14 QQtr:   Lot: 00
        LOTS 1, 2, 3, 4, 5, 6, 7, 8,
        9, 10, 11, 12, 13, 14, 15

Lease Number: L010877-02        ACTIVE
Lease Date:   09/25/1992   Lessor: JACK D ANDERSON
Expire Date:  09/25/1997   Lessee: TRANSCONTINENT OIL COMPANY

| | | | ---------------- Acres ---------------- | | | ------------ Interest ------------ | | |
| Tract Prospect | | State County | Gross | Net | Company Net | Corporate | Royalty Overriding |
| 001 MAYBERRY | | CO   MOFFAT | | | | | |
| | | | 320.000 | 21.340 | 2.668 | .12500000 | .12500000   .00000000 |

    Recorded: BK 663 PG 890
    Legal:  Free Form Remarks:
    Twp: 11 N Rng: 95 W,  Sect: 14 QQtr:   Lot: 00
        LOTS 1, 2, 3, 4, 5, 6, 7, 8,
        9, 10, 11, 12, 13, 14, 15

Lease Number: L010877-03        ACTIVE
Lease Date:   09/25/1992   Lessor: BETH LAURINE POWELL
Expire Date:  09/25/1997   Lessee: TRANSCONTINENT OIL COMPANY

Report: LseCrpLong

EXHIBIT 'A'
DIMINUTIVE INDIAN
UT0021

Date: 04-JUN-96
Page: 1   of: 1

Selection Criteria:

Lease Number: L009971-00      ACTIVE
Lease Date:   03/19/1987   Lessor: U-61386
Expire Date:  03/30/1997   Lessee: RICHARD BEVERIDGE

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 001 | DIMINUTIVE INDIAN | UT | SAN JUAN | 80.000 | 80.000 | 80.000 | 1.00000000 | .12500000 | .06000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 31 S Rng: 26 E,  Sect: 28 QQtr:   Lot: 00
       N/2NE/4

Total Nets                80.000    80.000

Report: LseCrpLong

EXHIBIT 'A'
LITTLE INDIAN
UT0023

Date: 04-JUN-96
Page: 1     of: 1

Selection Criteria:

Lease Number: L008084-00        ACTIVE
Lease Date:   05/29/1987   Lessor: U-61634
Expire Date:  05/31/1997   Lessee: ELZALENE SULLIVAN

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 002 | LITTLE INDIAN | UT | SAN JUAN | 400.000 | 400.000 | 400.000 | 1.00000000 | .12500000 | .07000000 |

Recorded:
Legal:  Free Form Remarks:
Twp: 30 S Rng: 25 E,  Sect: 33 QQtr:   Lot: 00
       S/2N/2; N/2S/2; SE/4SW/4; SW/4SE/4

Total Nets        400.000     400.000

Report: LseCrpLong

EXHIBIT 'A'
LITTLE VALLEY FIELD EXTENSION
UT0022

Date: 04-JUN-96
Page: 1   of: 1

Selection Criteria:

Lease Number: L008084-00          ACTIVE
Lease Date:   05/29/1987   Lessor: U-61634
Expire Date:  05/31/1997   Lessee: ELZALENE SULLIVAN

| Tract | Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|-------|----------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 001 | LITTLE VALLEY FIELD EXTENSION | UT | SAN JUAN | 40.000 | 40.000 | 40.000 | 1.00000000 | .12500000 | .07000000 |

Recorded:
Legal: Free Form Remarks:
Twp: 30 S Rng: 25 E, Sect: 18 QQtr:   Lot: 00
      NE/4NE/4

| | | Total Nets | 40.000 | 40.000 |
|--|--|--|--|--|

ULTRA.019   000739

Report: LseCrpLong

EXHIBIT 'A'
PERIDOT
UT0024

Date: 04-JUN-96
Page: 1    of: 1

Selection Criteria:

Lease Number: L010608-00          ACTIVE
Lease Date:   09/11/1986    Lessor: BRUCE K HALLIDAY, ET UX
Expire Date:  09/11/1996    Lessee: LARRY J WHITE

| Tract Prospect | State | County | Gross | Net | Company Net | Corporate | Royalty | Overriding |
|----------------|-------|--------|-------|-----|-------------|-----------|---------|------------|
| 001 PERIDOT | UT | SAN JUAN | | | | | | |
| | | | 160.000 | 80.000 | 40.000 | .50000000 | .15000000 | .00000000 |

  Recorded: BK 684, PG 892
  Legal:  Free Form Remarks:
  Twp: 31 S Rng: 23 E,  Sect: 28 QQtr:   Lot: 00
          NE/4SW/4, NW/4SE/4, S/2NE/4

| | | | Total Nets | 80.000 | 40.000 |
|--|--|--|--|--|--|

EXHIBIT 'A' (continued)

The following contracts affect one or more of the above-described leases:

1.  Bull Draw Unit Operating Agreement dated 05-12-94, effective as of 06-03-94.

2.  Acreage Exchange Agreement, dated 06-14-94, executed by CNG Producing
    Company and Texaco Exploration and Production Inc.

3.  Area of Mutual Interest Agreement for the Bull Draw Area, attached as Exhibit E-1
    to the above-described Acreage Exchange Agreement.

4.  Area of Mutual Interest Agreement for the Big Cone Area, attached as Exhibit E-2
    to the above-described Acreage Exchange Agreement.

5.  Area of Mutual Interest Agreement for the Clay Buttes Area, dated June 1, 1994,
    executed by and between Vastar Resources, Inc. and CNG Producing Company.

6.  Area of Mutual Interest Agreement, dated 06-29-94, executed by and between
    CNG Producing Company, Texaco Exploration and Production, Inc. and Vastar
    Resources, Inc.

7.  Operating Agreement, dated 04-06-94, executed by and between Snyder Oil
    Corporation and Vastar Resources, Inc.

8.  Unit Operating Agreement for the Sublette Flats Unit Area dated 10-14-94,
    effective as of 11-29-94.

9.  Operating Agreement dated 07-27-94, executed by Snyder Oil Corporation et al,
    attached as Exhibit "B" to Pooling Agreement dated 07-27-94 executed by the
    same parties.

10. Acreage Exchange Agreement, dated June 14, 1994 executed by CNG Producing
    Company and Vastar Resources, Inc.

11. Area of Mutual Interest Agreement attached as Exhibit "C" to the above Acreage
    Exchange Agreement.

12. Unit Operating Agreement for the Big Cone Unit Area, dated 05-19-94, effective as
    of 08-12-94.

13. Area of Mutual Interest Agreement, dated 06-29-94, executed by Texaco
    Exploration and Production, Inc. and CNG Producing Company.

14. Operating Agreement dated 02-01-95, attached as Exhibit "B" to Pooling
    Agreement, dated 02-01-95, executed by Vastar Resource Inc., et al.

C:ECAMROCK\EXHIBITA.DOC

15. Operating Agreement attached to Farmout Agreement dated 12-01-93 between CNG Producing Company and Intrepid Production Company.

16. Operating Agreement dated November 22, 1991 by and between Coastal Oil & Gas Corporation and CNG Producing Company and Fossil Associates, Inc.

17. Operating Agreement dated October 17, 1989 by and between CNG Producing Company and Marathon Oil Company.

18. Consulting Agreement, dated November 1, 1983, executed by Fossil Associates and CNG Producing Company, as amended by Letter Agreement dated March 15, 1994, and all other amendments thereto.

19. Exploration Agreement, dated effective August 1, 1990, executed by and between Coastal Oil and Gas, CNG Producing and Fossil Associates, and all amendments thereto.

C:\ECAMROCK\EXHIBITA.DOC

EXHIBIT "B"

Attached to and made part of that certain Purchase and Sale Agreement
dated _July 19, 1996_ between CNG Producing Company and
Ultra Petroleum (USA) Inc.

| Well Name | Location |
|-----------|----------|
| 1. CNG - Bull Draw Federal #3-11 | Section 11, T28N-R107W, Sublette County, Wyoming |
| 2. Texaco - Big Cone Unit #1 | Section 29, T26N-R105W Sweetwater County, Wyoming |
| 3. Snyder - Sublette Flats Unit 4-10 | Section 10, T26N-R107W Sweetwater County, Wyoming |

B:\FORMS\EXHIBIT.DOC

EXHIBIT "D"

Attached to and made part of that certain Purchase and Sale Agreement
dated _*July 19, 1996*_ between CNG Producing Company and
Ultra Petroleum (USA) Inc.

## ASSIGNMENT, BILL OF SALE AND CONVEYANCE

THIS Assignment, Bill of Sale and Conveyance, dated effective as of July ____, 1996, is

from CNG Producing Company, a Delaware corporation,  (herein referred to as "Assignor"),

whose address is 1450 Poydras Street, New Orleans, Louisiana 70112, to Ultra Petroleum (USA)

Inc., a Colorado corporation (herein referred to as "Assignee"), whose mailing address is c/o

Woerudle, Patterson, Strain & Miller, 1004 North Big Spring, Suite 121, Midland, Texas 79701.

FOR AND IN CONSIDERATION OF THE SUM OF ONE HUNDRED DOLLARS

($100.00) and other good and valuable consideration in hand paid, the receipt and sufficiency of

which hereby are acknowledged by Assignor, Assignor hereby transfers, grants, bargains, sells and

conveys and assigns to Assignee the following (all of which are herein called "Interests"):

1.   All of Assignor's right, title and interest in and to those certain oil, gas and mineral

leases listed and described in Exhibit "A", which is attached hereto and made a part hereof for all

purposes, and in and to the entire estates created by the leases, licenses and permits described in

Exhibit "A" and in the contractual interests, and other interests described in Exhibit "A" (all of

which are herein called the "Leases") insofar and only insofar as the Leases cover and relate the

lands described in Exhibit "A" (herein called the "Land"), together with all of Assignor's interest

in and to all the property and rights incident thereto, including all rights in, to and under all

agreements, leases, permits, easements, licenses and orders in any way relating thereto; and

2.   All of Assignor's right, title and interests in and to all wells on the Leases and Lands,

including, but not limited to, those wells described on Exhibit "B" attached hereto and made a

part hereof, all production therefrom, and all gathering and flowlines, pipelines, processing plants,

facilities, equipment and improvements and any and all other personal property now located on

the Leases and Lands, or appurtenant thereto or used or obtained in connection therewith, or with

the production, storage, treatment and/or transportation of hydrocarbons produced therefrom or

attributable thereto, and all other appurtenances thereunto belonging.

TO HAVE AND TO HOLD the Interests unto Assignees and their successors and assigns, subject of the following conditions:

1.   This Assignment, Bill of Sale and Conveyance is made and accepted subject to all burdens, encumbrances, contracts and agreements, which are of record, and/or listed on Exhibit "A" affecting the Interests.

2.   Unless provided otherwise, all recording references in Exhibit "A" are to the official real property records of the county or counties in which the Interests are located.

3.   This Assignment, Bill of Sale and Conveyance shall extend to, be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

4.   In order to evidence this Assignment, Bill of Sale and Conveyance pursuant to the rules and regulations of the United States of America or other governmental authorities or agencies, Assignor and Assignee have executed, or will execute, certain separate assignments of record title and/or operating rights in individual oil, gas and mineral leases for filing with the United States of America or other governmental authorities or agencies.  Such separate assignments (i) are or will be on forms prescribed, suggested or approved by such governmental authorities or agencies, (ii) evidence the conveyance or assignment of the Assets herein made, but do not constitute any additional conveyance or assignment of the Assets described or of any rights therein, (iii) are not intended to modify, and shall not modify, any of the terms, convenants or conditions set forth herein and are not intended to create and shall not create any additional convenants or warranties of or by Assignor to Assignee, and (iv) shall be deemed to contain all of the terms and provisions hereof, as fully and to all intents and purposes as though the same were set forth at length in the separate assignments.  This Assignment, Bill of Sale and Conveyance, insofar as it pertains to that portion of the Interests as to which separate assignments have been, or will be, executed for filing with the United States of America or any other governmental authority or agency, is made and accepted subject to the necessary approvals, if any, of the appropriate governmental authorities or agencies and to the terms of such approval, if any, to the extent required by law.

5.   Assignee expressly assumes, as of the Effective Date, all of Assignor's obligations relating to the Interests assigned to Assignee hereunder for plugging and abandoning any well on

2

the Lands, including, but not limited to those wells listed on Exhibit "B" attached hereto and made a part hereof at Assignee's sole cost, risk and expense.

6. To the extent the Interest conveyed hereby constitute personal property or fixtures ASSIGNOR EXPRESSLY DISCLAIMS AND NEGATES (a) ANY IMPLIED OR EXPRESS WARRANTY OF MERCHANTABILITY, (b) ANY IMPLIED OR EXPRESS WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, and (c) ANY IMPLIED OR EXPRESS WARRANTY OF CONFORMITY TO MODELS OR SAMPLES OF MATERIALS.

7. This Assignment, Bill of Sale and Conveyance is made by Assignor and accepted by Assignee without warranty of title, express or implied, except against every person whomsoever claiming or to claim the Interests, or a part thereof, by, through or under Assignor only, and is made with full substitution and subrogation in and to all of the rights of warranty of Assignor against predecessors in title.

8. This Assignment is made and shall be subject to the terms and provisions of that certain Purchase and Sale Agreement between Assignor, as Seller, and Assignee, as Buyer, dated July ____, 1996, which shall prevail in the event of a conflict between the terms and provisions hereof and thereof. Capitalized terms not otherwise defined herein shall have the meanings given to them in said Purchase and Sale Agreement.

EXECUTED this ____ day of _____, 1996, TO BE EFFECTIVE for all purposes as of the date first above written.

ATTEST:                              **ASSIGNOR:**

                                     CNG Producing Company

_____        By: _____

ATTEST:                              **ASSIGNEE:**

                                     Ultra Petroleum (USA) Inc.

_____        By: _____

3

ULTRA.019 000746

# EXHIBIT A-3

March 15, 1994

Fossil Associates
1675 Broadway, Suite 2400
Denver, Colorado 80202

Attention: W. Clifton Arbuckle

Re:   Southwestern Wyoming Revised CNG/Fossil Agreement

Gentlemen:

Pursuant to our various discussions and in consideration of the promises contained herein, CNG Producing Company (CNG) and Fossil Associates, a Joint Venture comprised of W.K. Arbuckle, R.H. Dubitzky and E.A. Riggs and Fossil Associates business associates W. Clifton Arbuckle and Holmes P. McLish (collectively referred to as Fossil) agree as follows:

(1)    This Letter Agreement effective March 1, 1994, shall supersede and replace all previous agreements executed by the parties insofar, and only insofar, as such previous agreements relate to Sublette, Sweetwater, Lincoln and Uinta Counties in Wyoming, hereinafter referred to as the Contract Area, and specifically, but not limited to that certain Consulting Agreement dated November 1, 1983, as amended, including any related amendments or agreements relative to the Federal Simultaneous Filing Program. This Letter Agreement shall be of no force and effect as to such previous agreements outside of the Contract Area.

(2)    On or before December 31, 1994, CNG agrees to commence operations for two wells within the Potential Unit Area as set out on Exhibit "C". Each well shall be designed to reach a total depth greater than 8,000' and shall be drilled in a good and workmanlike manner. In the event CNG fails to commence both wells, Fossil shall have the option to be exercised on or before March 31, 1995, to terminate this Agreement except as to any interests contained within a federal exploratory unit on which CNG has in fact drilled a producing well to a depth greater than 8,000'.

(3)    Fossil hereby specifically waives all rights to participate, overriding royalties and back-ins previously granted and CNG hereby grants to Fossil a 5.5% overriding royalty (ORR) on all leases owned by CNG within the confines of the Jonah Gulch Prospect as itemized on Exhibit "A-2" and a 5% ORR on all remaining properties located within the Contract Area in which Fossil previously was due an ORR as itemized on Exhibit "B" (see Paragraph (4) below for the ORR attributable to subsequently acquired leases). All such overriding royalties to be proportionately



EXHIBIT 3
Roach
December 21, 2017
Reported by:
D. SANDERS, CSR, RDR, CRR

SOUTHWESTERN WYOMING REVISED CNG/FOSSIL AGREEMENT

reduced in accord with the interest actually owned by CNG. Fossil shall account for all overriding royalties previously granted to consulting geologists including, but not limited to, that granted to Gerald G. Cooper on leases acquired within the Jonah Gulch Prospect as set out on Exhibit "A-1" out of Fossil's retained ORR. Nothing contained herein shall be interpreted to expand the rights currently held by Gerald G. Cooper or to alter the obligation of Fossil therefore. Where ORR's have been previously assigned to Fossil, CNG shall assign an additional ORR to Fossil such that the total ORR assigned to Fossil is equal to that provided for above. (For example if Gerald G. Cooper has been previously assigned a 2 1/2% ORR and Fossil a 1/2% ORR on a Jonah Gulch lease for a total of 3%, CNG will assign to Fossil an additional 2 1/2% ORR for a total of 5 1/2%)

(4)     Areas of Mutual Interest (AMI or AMI's) are hereby established covering all acreage within the Jonah Gulch Prospect and, except as set out in Paragraph (5) below, all sections contiguous to sections containing existing leases as set out on Exhibit "B" (including diagonal offsets) for leases outside of the Jonah Gulch Prospect and within the Contract Area. The Jonah Gulch AMI shall remain in effect so long as any of the leases located therein remain in effect. The AMI surrounding each individual lease lying outside of Jonah Gulch shall remain in effect so long as each individual lease listed on Exhibit "B", or acquired pursuant to the terms of this paragraph within the AMI's, remains in effect and shall expire on an AMI by AMI basis as the last lease in each AMI expires. In the event CNG acquires a leasehold interest within any such AMI, Fossil shall be assigned an ORR on the same basis as set out in Paragraph (3) above. Except as set out below, if Fossil acquires an interest within any AMI, such interest shall be offered to CNG at cost, but subject to the ORR set out in Paragraph (3) above which ORR shall be in addition to any third party ORR's previously reserved. CNG shall have 15 days in which to accept assignment.

(5)     Notwithstanding anything contained herein to the contrary there shall be no AMI's north of the northern boundary of T32N.

(6)     Fossil will not bid competitively against CNG, or against any company designated by CNG within the area set out on Exhibit "C". The parties agree to timely coordinate their efforts and where CNG or such designated company indicates that it has reached its highest authorized bid and at least one intervening bid has occurred Fossil Associates may bid for their own account. In the event that Fossil bids as set out herein and such bid is accepted, Fossil shall offer such interest to CNG at cost, but retaining a 7.5% ORR and CNG shall have 48 hours from receipt of such notice to accept assignment of the interest.

(7)     Subject to paragraph (8) below and notwithstanding anything contained herein to the contrary, in the event CNG enters into an agreement with another company whereby such company is to acquire acreage for its own account for the purpose of pooling same with acreage owned by CNG and CNG designates such company to bid at a State or Federal Sale, Fossil shall retain no ORR in such property unless CNG acquires an interest in same.

(8)     CNG shall have the right to pool all or any portion of its interest lying within the area set out on Exhibit "C". Fossil's ORR shall be proportionately reduced as a result of such pooling. It is the intent of the parties that Fossil retain the same net ORR within any such pooled area and that such ORR be proportionate to CNG's interest.

2

SOUTHWESTERN WYOMING REVISED CNG/FOSSIL AGREEMENT

(9)    CNG agrees to offer to assign or reassign all leases within the area to Fossil at least 60 days prior to expiration or release. Notwithstanding same, there shall be no penalty for CNG's failure to do so unless such offer is willfully withheld. It is agreed that where CNG is actively considering options designed to maintain a lease, including but not limited to drilling or causing a well to be drilled, that the failure to make the offer as set out above shall not be considered willful. In such event the required offer shall be made as soon as is reasonably possible after a decision not to proceed with such options.

(10)    In the event CNG decides to sell or to solicit offers for the sale of any of the acreage included herein prior to the drilling of a test well thereon, CNG shall advise Fossil of its decision to sell or to solicit offers and Fossil shall have 30 days in which to elect to retain its ORR or to assign same to CNG and to participate in any subsequent sale as set out herein. In the event Fossil fails to make an election Fossil, Fossil shall be presumed to have elected to retain its ORR. If Fossil elects to participate, CNG shall be entitled to receive out of the consideration paid therefore, an amount equal to its investment therefore including, but not limited to, bonus paid, costs of third party services and expenses directly incurred in lease acquisitions, including the hiring of supervisory office Landmen and field Landmen, recording and title certification costs. Such costs shall not include any portion of Fossil's or CNG's general overhead expenses, salaries or other indirect costs. Any proceeds remaining after reimbursement to CNG shall be divided 87.5% CNG and 12.5% Fossil. It is specifically understood that any ORR due any consulting geologist shall be retained by such geologist and Fossil shall have no obligation to assign such ORR to CNG. For the purpose of this paragraph, a sale shall not include any agreement whose objective is to cause the wells required in paragraph (2) to be drilled, so long as CNG retains at least a 50% working interest in such wells and the CNG leases lying within the area set out on Exhibit "C".

In the event CNG elects to farmout substantially all of its interest within an approved federal exploratory unit or an AMI prior to drilling the initial test well thereon, Fossil shall have the option to be assigned 50% of CNG's retained working interest back-in in such farmout. Said option to be exercised within 30 days of CNG's election to back-in. In the event Fossil elects to exercise its option, Fossil shall reassign to CNG that portion of Fossil's ORR attributable to the working interest reassigned to CNG.

For the purpose of this paragraph, the initial unit well for any lease placed within an approved federal exploratory unit shall be considered to be the initial test well attributable to such lease. For leases not placed within a federal exploratory unit, the initial well within the AMI shall be considered to be the initial well attributable to the lease and contiguous and/or overlapping AMI's shall be considered to be one AMI.

(11)    CNG and Fossil shall timely provide each other with two copies of geologic, seismic and well data relative to any operations within five miles of the leases listed on Exhibits "A-2" and "B" so long as such leases are in effect. **The parties specifically recognize that they may be prohibited from disclosing certain geologic, seismic and well data by contract, such as licensed seismic and third party well information, and that such material and data**

3

SOUTHWESTERN WYOMING REVISED CNG/FOSSIL AGREEMENT

**including related interpretive studies, maps and reports may not be provided hereunder. Any party possessing such restricted data shall make reasonable efforts to secure access for the other, but under no conditions will such party be required to purchase such access on the others behalf.** Data to be provided includes, but is not limited to, any information derived from wells such as logs, core analysis, mud logs, DST charts and analysis, dip meters, fracture data, production and pressure tests. In addition, it shall include geologic studies, reports and maps, such as structural, isopach, geophoto, geomorphic, geochemical, fracture, potentiometric, temperature gradient and all types of cross sections and diagrams, whether generated by hand, computer or any other method, as well as seismic data and geophysical studies. CNG and Fossil shall, from time to time, provide one another with copies of internally generated land maps covering the Contract Area which are periodically produced and updated. The party delivering interpretive information represents only that such interpretive information has been prepared in the due course of business.

Any party hereto who furnishes geologic, seismic and well data under the terms of this agreement shall retain all rights of ownership to such data that it may have. Any party hereto receiving such data shall keep it confidential, and agrees not to sell, trade or otherwise divulge such data to other parties. However, to support a farmout or joint venture, the data may be shown to other parties, who shall also agree in writing to keep such data confidential.

(12)   CNG shall host an annual meeting to brief Fossil on our plans within remaining AMI's so long as any AMI's remain in effect.

(13)   CNG shall market natural gas attributable to Fossil's ORR which is subject to this Letter Agreement on the same basis and subject to the same charges as CNG's gas.

14)   Fossil shall instruct CNG in writing as to the distribution of interests retained hereunder and CNG shall make no assignment of such interests until said instructions are received.

15)   Any transferee of an interest hereunder shall agree in writing to be bound by the provisions of this agreement.

16)   This agreement shall terminate with the expiration of the last AMI.

17)   This agreement may be executed in any number of counterparts, each of which shall be considered an original and all of which , taken together, shall constitute one and the same instrument. This agreement shall be binding upon each party executing a counterpart of this instrument upon execution of a counterpart by all of the signatories listed below, and shall inure to the benefit of the parties hereto and to their respective heirs devisees, legal representatives, successors and assigns.

Executed as of the year and day first above set forth.

4

SOUTHWESTERN WYOMING REVISED CNG/FOSSIL AGREEMENT

**CNG Producing Company**

By: _____

**Fossil Associates**

**Partners**

By: _____
W.K. Arbuckle

By: _____
R.H. Dubitzky

By: _____
E.A. Riggs

**Business Associates**

By: _____
W. Clifton Arbuckle

By: _____
Holmes P. McLish

PINE12FS.DOC

SOUTHWESTERN WYOMING REVISED CNG/FOSSIL AGREEMENT

**CNG Producing Company**

By: _____

**Fossil Associates**

Partners

By: _____
W.K. Arbuckle

By: _____
R.H. Dubitzky

By: _____
E.A. Riggs

**Business Associates**

By: _____
W. Clifton Arbuckle

By: _____
Holmes P. McLish

# EXHIBIT "A-1"

## CNG PRODUCING COMPANY
## NEW ORLEANS, LOUISIANA

## GREEN RIVER BASIN
## JONAH GULCH PROSPECT
## SUBLETTE & SWEETWATER COUNTIES
## WYOMING



Jonah Gulch Prospect outline

*James R. Nicas  Sr Landman*
*March 15, 1994*

PAGE   1

COMPANY              OIL        CNG PRODUCING COMPANY
PROSPECT NUMBER      WY0050     JONAH GULCH                          EXHIBIT A-2
                                                                    SCHEDULE OF

LEASE NUMBER    LESSOR    PROSPECT              LESSEE       STATE/COUNTY           LSE DTE       EXPIRE DTE
                                                            GROSS ACRES            RECORDED

L004627/00   W-100887   JONAH GULCH        FOSSIL ASSOCIATES
  TRACT 01                                    WY SWEETWATER                        08/22/1986    08/31/1996
  T 25 N  R 106 W                                          40.000
  SEC  30
     SE/4NE/4

L004657/00   W-101747   JONAH GULCH        FOSSIL ASSOCIATES
  TRACT 01                                    WY SWEETWATER                        09/18/1986    09/30/1996
  T 24 N  R 106 W                                         155.370
  SEC  18
     LOT 2, S/2NE/4, SE/4NW/4

L004668/00   W-101748   JONAH GULCH        FOSSIL ASSOCIATES
  TRACT 01                                    WY SUBLETTE                          09/18/1986    09/30/1996
  T 27 N  R 106 W                                        641.020
  SEC  1
     LOTS 1, 2, 3, 4, S/2N/2, S/2

L004856/00   W-102709   JONAH GULCH        FOSSIL ASSOCIATES
  TRACT 01                                    WY SWEETWATER                        11/18/1986    11/30/1996
  T 25 N  R 106 W                                         80.000
  SEC  30
     N/2SE/4

L004857/00   W-102710   JONAH GULCH        FOSSIL ASSOCIATES
  TRACT 01                                    WY SUBLETTE                          11/18/1986    11/30/1996
  T 27 N  R 106 W                                        640.000
  SEC  13
     ALL

L004856/00   W-104165   JONAH GULCH        FOSSIL ASSOCIATES
  TRACT 01                                    WY SUBLETTE                          05/11/1987    05/31/1997
  T 27 N  R 106 W 6TH PM                                 3223.910
  SEC  2
     LOTS 1,2,3,4 (41.195 ACS EACH);
     S/2N/2; S/2
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.
  SEC  3
     LOTS 1,2,3,4 (41.195 ACS EACH);
     S/2N/2; S/2
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT

EXHIBIT A-2
SCHEDULE OF

| OMPANY ROSPECT NUMBER | 011 WYOOSO | ONG PRODUCING COMPANY JONAH GULCH | | | |
|---|---|---|---|---|---|
| EASE NUMBER | LESSOR | PROSPECT | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED   EXPIRE DTE |

OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

SEC   4

LOTS 1,2,3,4 (41.195 ACS EACH);
S/2N/2; S/2
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

SEC   5

LOTS 1 & 5 (41.197 ACS EA);
LOTS 6 THRU 11 (41.190 ACS EA); S/2
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

SEC   12

SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

SEC   ALL

LOO4957/OO   W-104166   JONAH GULCH                FOSSIL ASSOCIATES
TRACT 01                                           WY SUBLETTE    1600.000    05/11/1987   05/31/1997
T   27 N   R   106 W
  SEC   21
  SEC   N/2; N/2S/2
  SEC   23   N/2; N/2S/2
  SEC   N/2; N/2S/2
  SEC   24
        NW/4

TRACT 02                                           WY SUBLETTE     640.000
T   28 N   R   106 W
  SEC   25
        ALL



EXHIBIT A-2
SCHEDULE OF

| COMPANY | | | CNG PRODUCING COMPANY | | | |
|---|---|---|---|---|---|---|
| PROSPECT NUMBER | O11 | WYOO5O | JONAH GULCH | | | |
| LEASE NUMBER | LESSOR | PROSPECT | LESSEE | STATE/COUNTY | LSE DTE | EXPIRE DTE |
| | | | | GROSS ACRES | RECORDED | |

L004959/OO   W-104168

FOSSIL ASSOCIATES                    05/11/1987   05/31/1997

TRACT 02      JONAH GULCH                    WY SUBLETTE      1040.000
T 28 N   R 106 W 6TH PM
    SEC 19
        NE/4
    SEC 20
    SEC NW/4; E/2SW/4; SE/4
    SEC W/2
    SEC 29
        NE/4

L004960/OO   W-104179

FOSSIL ASSOCIATES                    05/11/1987   05/31/1997

TRACT 01      JONAH GULCH                    WY SUBLETTE      1308.120
T 28 N   R 107 W 6TH PM
    SEC S/2
    SEC 1
    SEC 2
        LOTS 1 & 2 (14.06 ACS EA); S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
    SEC 12
    SEC ALL

L004961/OO   W-104180

FOSSIL ASSOCIATES                    05/11/1987   05/31/1997

TRACT 01      JONAH GULCH                    WY SUBLETTE      3349.440
T 28 N   R 107 W 6TH PM
    SEC 3
        LOTS 2 & 3 (14.72 ACS EA), S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
    SEC 10
        ALL
    SEC 11
        ALL
    SEC 13
        ALL

PAGE 4

EXHIBIT 2
SCHEDULE OF

COMPANY                    CNG PRODUCING COMPANY
PROSPECT NUMBER   011        JONAH GULCH
                  WYOOSO

LEASE NUMBER    LESSOR    PROSPECT    LESSEE    STATE/COUNTY GROSS ACRES    LSE DTE    EXPIRE DTE
                                                                            RECORDED

SEC  14
  E/2
SEC  23
  NE/4
SEC  24
  N/2; SW/4; N/2SE/4; SW/4SE/4
--------------------------------------------

LO04962/00   W-104181   JONAH GULCH   FOSSIL ASSOCIATES            05/11/1987   05/31/1997
TRACT 01                                WY SUBLETTE
T 28 N  R 107 W                                        1440.000
SEC  26
  W/2; SE/4
SEC  27
  E/2
SEC  35
  ALL
--------------------------------------------

LO04963/00   W-104182   JONAH GULCH   FOSSIL ASSOCIATES            05/11/1987   05/31/1997
TRACT 01                                WY SUBLETTE
T 29 N  R 107 W                                        880.000
SEC  34
  E/2SW/4; SE/4
SEC  35
  ALL
--------------------------------------------

LO05108/00   W-104799              FOSSIL ASSOCIATES            05/20/1987   05/31/1997

PAGE 5

EXHIBIT A-2
SCHEDULE OF

| COMPANY | | | CNG PRODUCING COMPANY | | | | |
| PROSPECT NUMBER | 011 | | JONAH GULCH | | | | |
| | WYOOSO | | | | | | |
| LEASE NUMBER | LESSOR | | PROSPECT | LESSEE | STATE/COUNTY | LSE DTE | EXPIRE DTE |
| | | | | | GROSS ACRES | RECORDED | |

TRACT 01
T 28 N  R 107 W  JONAH GULCH                    WY SUBLETTE
SEC 14                                                    1600.000
    W/2
SEC 15
    ALL
SEC 22
    ALL

---

LOO5109/00   M-104800   JONAH GULCH                FOSSIL ASSOCIATES
TRACT 01                                             WY SUBLETTE
T 28 N  R 107 W 6TH PM                                   1278.870
SEC 1
    LOTS 3 & 4 (15.774 ACRES EACH)
    SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
    RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
    OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
    EQUALLY BETWEEN SAME.
SEC 4
    LOT 2 (15.774 ACRES); SW/4; E/2SE/4
    SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
    RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
    OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
    EQUALLY BETWEEN SAME.
SEC 5
    LOTS 1 & 2 (15.774 ACRES EACH)
    SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
    RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
    OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
    EQUALLY BETWEEN SAME.
SEC 9
    ALL
    SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
    RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
    OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
    EQUALLY BETWEEN SAME.
T 29 N  R 107 W 6TH PM
SEC 34
    N/2
    SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
    RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
    OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
    EQUALLY BETWEEN SAME.

06/10/1987   06/30/1997

---

LOO8131/00   M-105474   JONAH GULCH                FOSSIL ASSOCIATES
TRACT 01                                             WY SWEETWATER
T 25 N  R 106 W 6TH PM                                    159.600
SEC 7

07/10/1987   07/31/1997

---

PAGE 6

EXHIBIT A-2
SCHEDULE OF

| COMPANY | | CNG PRODUCING COMPANY | | |
| PROSPECT NUMBER | 011 | JONAH GULCH | | |
| | W'00050 | | | |
| LEASE NUMBER | LESSOR | PROSPECT | LESSEE | STATE/COUNTY |
| | | | | GROSS ACRES |
| | | | | LSE DTE    EXPIRE DTE |
| | | | | RECORDED |

LOT 3 (39.60 ACRES):
E/2NW/4
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC    30
S/E4NW/4

SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

---

L008132/00   W-105480   JONAH GULCH          FOSSIL ASSOCIATES
TRACT 01                                     WY SWEETWATER      360.000    07/13/1987   07/31/1997
T  25 N  R 107 W
SEC    1
      SE/4NE/4; SW/4NW/4
SEC    3
      NW/4SE/4
SEC    10
      NW/4SE/4
SEC    11
      N/2NE/4; W/2SW/4
SEC    14
      SW/4SE/4

---

L008260/00   W-106146   JONAH GULCH          FOSSIL ASSOCIATES
TRACT 01                                     WY SWEETWATER     1264.620    10/09/1987   10/31/1997
T  23 N  R 106 W
SEC    6
      LOTS 1 THRU 7, S/2NE/4, SE/4NW/4, E/2SW/4, SE/4

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE
SEC    20
      ALL

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE

---

L008261/00   W-106147   JONAH GULCH          FOSSIL ASSOCIATES
TRACT 01                                     WY SWEETWATER     1800.000    10/09/1987   10/31/1997
T  24 N  R 106 W
SEC    22
      SE/4

EXHIBIT A-2
SCHEDULE OF

| COMPANY PROSPECT NUMBER | 011 MYOOSO | CNG PRODUCING COMPANY JONAH GULCH | | | |
|---|---|---|---|---|---|
| LEASE NUMBER | LESSOR | PROSPECT | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE / EXPIRE DTE RECORDED |

L008262/00 W-106148 JONAH GULCH
TRACT 01
T 25 N R 106 W
SEC 23
    W/2
SEC 25
    NW/4
SEC 26
    NE/4, W/2
SEC 27
    E/2, E/2NW/4, SW/4NW/4, SW/4
SEC 28
    S/2SE/4

FOSSIL ASSOCIATES
WY SWEETWATER          240.000          10/09/1987   10/31/1997

L008263/00 W-106153 JONAH GULCH
TRACT 01
T 27 N R 107 W
SEC 7
SEC 18
    N/2NE/4
SEC 19
    NW/4SE/4
SEC 30
    S/2NE/4
    NW/4NE/4
SEC 35
    ALL

FOSSIL ASSOCIATES
WY SUBLETTE           640.000          10/09/1987   10/31/1997

L009766/00 W-107020 JONAH GULCH
TRACT 01
T 26 N R 105 W
SEC 1
    LOTS 1,2,3,4 (47.30 ACS EA); S/2N/2; S/2
    ADJUSTMENT LOT - ACREAGE BASED ON AVERAGE PER LOT
    PURSUANT TO LEASE; ACTUAL ACREAGE NOT AVAILABLE.
SEC 2
    LOTS 1(47.30), 3(47.29), 4(47.29),
    SE/4NE/4; S/2NW/4; N/2SW/4
    ADJUSTMENT LOT - ACREAGE BASED ON AVERAGE PER LOT
    PURSUANT TO LEASE; ACTUAL ACREAGE NOT AVAILABLE.
SEC 3
    LOTS 1,2,3,4 (47.29 ACS EACH); S/2N/2; S/2
    ADJUSTMENT LOT - ACREAGE BASED ON AVERAGE PER LOT
    PURSUANT TO LEASE; ACTUAL ACREAGE NOT AVAILABLE.
SEC 4
    LOTS 1,2,3,4 (47.29 ACS EACH); S/2N/2; S/2

FOSSIL ASSOCIATES
WY SWEETWATER         2509.400          12/09/1987   12/31/1997

PAGE 6

COMPANY                    011              CNG PRODUCING COMPANY
PROSPECT NUMBER            WYOO5O           JONAH GULCH

LEASE NUMBER      LESSOR      PROSPECT         LESSEE      STATE/COUNTY   LSE DTE     EXPIRE DTE
                                                          GROSS ACRES    RECORDED

ADJUSTMENT LOT - ACREAGE BASED ON AVERAGE PER LOT
PURSUANT TO LEASE:  ACTUAL ACREAGE NOT AVAILABLE.
SEC   11
      W/2NW/4; E/2SW/4

L009769/00   W-107032   JONAH GULCH        FOSSIL ASSOCIATES              12/09/1987  12/31/1997
TRACT 01                                       WY SWEETWATER   2560.000
T  26 N  R  107 W
SEC  14
     ALL
SEC  15
     ALL
SEC  21
     ALL
SEC  22
     ALL

L009912/00   W-108079   JONAH GULCH        FOSSIL ASSOCIATES              02/29/1988  02/28/1998
TRACT 01                                       WY SUBLETTE     2539.740
T  28 N  R  107 W
SEC  6
     LOTS 1, 5, 6, 7, 8, 9, NE/4SE/4, S/2SE/4

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC  7
     E/2

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC  8
     ALL

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC  21
     ALL

L009768/00   W-107025   JONAH GULCH        FOSSIL ASSOCIATES              12/09/1987  12/31/1997
TRACT 01                                       WY SUBLETTE      800.000
T  28 N  R  108 W
SEC  20
     NE/4
SEC  21
     ALL

EXHIBIT  A-2
SCHEDULE OF

```
COMPANY
PROSPECT NUMBER     011              CNG PRODUCING COMPANY        EXHIBIT   A-2
                    WYOOSO           JONAH GULCH                  SCHEDULE OF
LEASE NUMBER     LESSOR    PROSPECT        LESSEE    STATE/COUNTY          LSE DTE    EXPIRE DTE
                                                    GROSS ACRES           RECORDED
```

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
    SEC  28
        ALL

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

```
LO10280/00   WYW-101746                      FOSSIL ASSOCIATES
TRACT 01                                         WY SWEETWATER     320.000    10/18/1988   10/31/1998
T  23 N  R 106 W  JONAH GULCH
    SEC  29
        N/2
```

```
LO10522/00   W-117446                        WELLS PETROLEUM
TRACT 01                                         WY SWEETWATER      39.930    08/23/1989   08/31/1999
T  25 N  R 107 W  JONAH GULCH
    SEC   1
        LOT 3
```

```
LO10565/00   W-118155                        ONAGER ENTERPRISES
TRACT 01                                         WY SUBLETTE      1920.000    11/06/1989   11/30/1999
T  29 N  R 108 W  JONAH GULCH
    SEC  21
        ALL
    SEC  23
        ALL
    SEC  24
        ALL
```

COMPANY        O11        CMG PRODUCING COMPANY        EXHIBIT B
                                                       SCHEDULE OF

| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY | GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |
|---|---|---|---|---|---|---|

LOO418/OO   W-95092
TRACT 01
T 28 N  R 105 W
  SEC 20
    NE/4
  SEC 31
    LOTS 3, 4, E/2SW/4, SE/4
T 28 N  R 106 W
  SEC 35
    SE/4
                    FOSSIL ASSOCIATES
                    WY SWEETWATER        628.400      09/10/1985   08/31/1995

LOO482/OO   W-95105
TRACT 01
T 12 N  R 109 W
  SEC 18
  SEC SE/4
  SEC 19
  SEC NE/4, E/2W/2
  SEC 20
    W/2SW/4
                    FOSSIL ASSOCIATES
                    WY SWEETWATER        560.000      08/30/1985   08/31/1995

LOO252/OO   W-96032
TRACT 01
T 19 N  R 105 W
  SEC 12
    E/2, E/2W/2
                    FOSSIL ASSOCIATES
                    WY SWEETWATER        160.000      11/01/1985   10/31/1995

LOO253/OO   W-96039
TRACT 01
T 20 N  R 106 W
  SEC 2
    LOTS 5, 6, 7, 8, S/2
                    FOSSIL ASSOCIATES
                    WY SWEETWATER        389.080      11/01/1985   10/31/1995

LOO431/OO   W-88370
TRACT 01
T 24 N  R 109 W
  SEC 18
    LOTS 1 - 8 INCL (33.447 ACS EACH).
    LOTS 9 - 12 INCL (33.446 ACS EACH).
    ADJUSTMENT LOT - ACREAGE BASED ON AVERAGE PER LOT
    PURSUANT TO LEASE; ACTUAL ACREAGE NOT AVAILABLE.
                    FOSSIL ASSOCIATES
                    WY SWEETWATER        401.360      04/01/1986   03/31/1996

LOO489/OO   W-99305
TRACT 01
T 28 N  R 105 W
                    FOSSIL ASSOCIATES
                    WY SWEETWATER        2520.000     05/01/1986   04/30/1996

PAGE  2



COMPANY          O11          CNG PRODUCING COMPANY

EXHIBIT B
SCHEDULE OF

| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY | GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |
|---|---|---|---|---|---|---|

SEC  20  SE/4
SEC  28
SEC  N/2, 2SW/4, SW/4SW/4, SE/4
SEC  29
SEC  E/2
SEC  31
SEC  NE/4
SEC  32  SE/4
T  28  N  R  106 W  W/2,
SEC  10  SE/4
SEC  N/2, SE/4
SEC  14
        W/2

LOO4490/OO  W-99309        FOSSIL ASSOCIATES          600.060    05/01/1986   04/30/1996
TRACT 01                        WY SWEETWATER
T  12  N  R  106 W
SEC  1
SEC  E/2
SEC  6
        LOTS 8.9, NW/4NE/4, S/2NE/4, E/2NW/4

LOO4491/OO  W-99312        FOSSIL ASSOCIATES         1442.880    05/01/1986   04/30/1996
TRACT 01                        WY SWEETWATER
T  12  N  R  107 W
SEC  5
SEC  ALL
SEC  17
SEC  S/2S/2
SEC  18  LOTS 5,6,7,7, E/2, E/2W/2

LOO4529/OO  W-100186        FOSSIL ASSOCIATES         1437.340    05/28/1986   05/31/1996
TRACT 01                        WY SWEETWATER
T  13  N  R  98 W 6TH PM
SEC  4  LOTS 1-4 INCL (39.56 ACS EA): S/2N/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVRBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
SEC  5  LOTS 1 & 2 (39.55 ACS EA): S/2NE/4: S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVRBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT

PAGE :3

COMPANY                O11        CNG PRODUCING COMPANY        EXHIBIT B
                                                              SCHEDULE OF

LEASE NUMBER    LESSOR                    LESSEE          STATE/COUNTY        LSE DTE    EXPIRE DTE
                                                          GROSS ACRES        RECORDED

        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
   SEC  28
        ALL
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

L004530/00   W-100374              FOSSIL ASSOCIATES            06/12/1986   06/30/1996
  TRACT 01                          WY SWEETWATER
  T 12 N  R 106 W                                640.760
   SEC  30
        LOTS 1,2,3,4, (40.19 ACS EACH);
        E/2; E/2W/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

L004626/00   W-100880              FOSSIL ASSOCIATES            07/21/1986   07/31/1996
  TRACT 01                          WY SUBLETTE
  T 28 N  R 105 W                              1268.480
   SEC  1
   SEC  13     SW/4
   SEC  22     SE/4
              W/2;
   SEC  24     SW/4
   SEC  31     NE/4
        LOTS 1 & 2 (34.24 ACS EA); E/2NW/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.   WHERE THE ACTUAL CREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
   SEC  32     NE/4

L004628/00   W-100895              FOSSIL ASSOCIATES            08/22/1986   08/31/1996
  TRACT 01                          WY SWEETWATER
  T 25 N  R 107 W                               200.000
   SEC  2      N/2SE/4
   SEC  12     SW/4NW/4

| COMPANY | CNG PRODUCING COMPANY | EXHIBIT B SCHEDULE OF | | |
|---|---|---|---|---|
| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE  EXPIRE DTE RECORDED |

```
                                                        011
```

SEC  13
     S/2SE/4

---

LO04629/00    W-100903                    FOSSIL ASSOCIATES              08/22/1986   08/31/1996
TRACT 01                                      WY SUBLETTE   1279.830
T 33 N  R 108 W
SEC  3
     LOTS 1, 2, 3, S/2 N/2, N/2 SW/4

     ACREAGE FIGURE IS AN ESTIMATE.
     ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC  4
     NE/4 SE/4

     ACREAGE FIGURE IS AN ESTIMATE.
     ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC  6
     W/2 SE/4

     ACREAGE FIGURE IS AN ESTIMATE.
     ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC  11
     W/2

     ACREAGE FIGURE IS AN ESTIMATE.
     ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC  14
     LOT 1, W/2 NE/4, SE/4 NE/4, W/2 (LESS 1.57 ACRES
     MORE OR LESS IN RESERVOIR R/W W-014221)
     ACREAGE FIGURE IS AN ESTIMATE
     ACTUAL ACREAGE FIGURE IS UNAVAILABLE

---

LO04630/00    W-100909                    FOSSIL ASSOCIATES              08/22/1986   08/31/1996
TRACT 01                                      WY SUBLETTE   680.000
T 34 N  R 109 W
SEC  15
     N/2, SW/4
SEC  22
     E/2 E/2
SEC  27
     NE/4 SE/4

---

LO04669/00    W-101758                    FOSSIL ASSOCIATES              09/18/1986   09/30/1996
TRACT 01                                      WY SWEETWATER   120.000
T 25 N  R 107 W
SEC  1
     NE/4 SE/4

PAGE 5

| COMPANY | 011 | CNG PRODUCING COMPANY | EXHIBIT B SCHEDULE OF | | |

| LEASE NUMBER | LESSOR | PROSPECT | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |

SEC 2
  S/2 SW/4

L004670/OO   W-101759
TRACT 01
T 31 N  R 108 W
SEC 1
  LOTS 1, 2, 3, 4, SW/4

FOSSIL ASSOCIATES
  WY SUBLETTE   321.280
09/18/1986   09/30/1996

L004854/OO   W-102689
TRACT 01
T 27 N  R 104 W
SEC 19
  LOTS 1, 2, 4, E/2, E/2 W/2
SEC 21
  NE/4, N/2 NW/4, S/2

FOSSIL ASSOCIATES
  WY SUBLETTE   1147.080
11/18/1986   11/30/1996

L004855/OO   W-102690
TRACT 01
T 27 N  R 104 W
SEC 6
  LOT 7, SE/4 SW/4
T 28 N  R 105 W
SEC 34
  N/2 NE/4, W/2, SE/4

FOSSIL ASSOCIATES
  WY SUBLETTE   635.350
11/18/1986   11/30/1996

L004856/OO   W-102759
TRACT 01
T 34 N  R 110 W
SEC 4
  S/2 NW/4
SEC 5
  SE/4 NE/4
SEC 9
  W/2 SW/4
SEC 17
  SW/4 NE/4, S/2 NW/4
SEC 29
  SE/4 NW/4, NE/4 SE/4

FOSSIL ASSOCIATES
  WY SUBLETTE   400.000
11/18/1986   11/30/1996

L004888/OO   W-103459
TRACT 01
T 17 N  R 101 W
SEC 14
  E/2, NE/4NW/4, S/2NW/4, SW/4

FOSSIL ASSOCIATES
  WY SWEETWATER   600.000
01/30/1987   01/31/1997

EXHIBIT B
SCHEDULE OF

COMPANY    011    CNG PRODUCING COMPANY

| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY | GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |
|---|---|---|---|---|---|---|
| L004889/00 | W-103485 | FOSSIL ASSOCIATES | WY SWEETWATER | 1360.000 | 01/30/1987 | 01/31/1997 |

TRACT 01
T 13 N R 105 W
SEC 11
SEC 13   NE/4NW/4, S/2NW/4, SW/4
    SW/4NE/4, W/2SE/4, W/2
SEC 14   ALL

| L004890/00 | W-103493 | FOSSIL ASSOCIATES | WY SWEETWATER | 1080.000 | 01/30/1987 | 01/30/1997 |
|---|---|---|---|---|---|---|

TRACT 01
T 13 N R 107 W
SEC 17   ALL
SEC 20   NE/4NE/4, S/2NW/4, S/2

| L004891/00 | W-103505 | FOSSIL ASSOCIATES | WY SUBLETTE | 640.000 | 01/31/1987 | 01/31/1997 |
|---|---|---|---|---|---|---|

TRACT 01
T 33 N R 110 W
SEC 17   ALL

| L004933/00 | W-101749 | FOSSIL ASSOCIATES | WY SUBLETTE | 1539.000 | 03/06/1987 | 03/31/1997 |
|---|---|---|---|---|---|---|

TRACT 01
T 29 N R 106 W
SEC 29
SEC 31   NW/4; NE/4SW/4; S/2SW/4
    LOTS 1,2,3,4 (34.75 ACS EACH); E/2; E/2W/2
    ADJUSTMENT LOT - ACREAGE BASED ON AVERAGE PER LOT
    PURSUANT TO LEASE: ACTUAL ACREAGE NOT AVAILABLE.
SEC 32   W/2; SE/4
SEC 33   SW/4

| L004951/00 | W-104092 | FOSSIL ASSOCIATES | WY SWEETWATER | 400.350 | 04/16/1987 | 04/30/1997 |
|---|---|---|---|---|---|---|

TRACT 01
T 13 N R 99 W
SEC 3   LOTS 1,2,4, S/2NE/4, SW/4NW/4
SEC 10

COMPANY          O11          CNG PRODUCING COMPANY

EXHIBIT B
SCHEDULE OF

PAGE  7

| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |

SW/4

L004952/00    W-104137       FOSSIL ASSOCIATES                    05/11/1987   05/31/1997
TRACT 01                        WY SWEETWATER        638.900
T  13 N  R 104 W
   SEC   31
        LOTS 5,6,7,8 (39.725 ACS EACH);
        E/2; E/2W/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

L004953/00    W-104138       FOSSIL ASSOCIATES                    05/11/1987   05/31/1997
TRACT 01                        WY SWEETWATER        1750.610
T  14 N  R 104 W 6TH PM
   SEC   6
        LOTS 10 & 11 (34.414 ACS EACH);
        S/2NE/4; E/2SW/4; N/2SE/4; SW/4SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE. ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

   SEC   7
        LOTS 6,7,8,9,10,11,12,13 (34.413 ACS EA);
        E/2W/2; SW/4SE/4; S/2SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE. ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

   SEC   18
        LOTS 5,6,7,8,9,10 (34.413 ACS EA);
        NE/4; E/2W/2; W/2SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE. ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

   SEC   33
        E/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE. ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

L004954/00    W-104142       FOSSIL ASSOCIATES                    05/11/1987   05/31/1997
TRACT 01                        WY SUBLETTE

PAGE 8

EXHIBIT B
SCHEDULE OF

| COMPANY | | CMG PRODUCING COMPANY | | | |
|---|---|---|---|---|---|
| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY | LSE DTE | EXPIRE DTE |
| | | | GROSS ACRES | RECORDED | |

011

T 27 N  R 104 W 6TH PM                                         2275.550
SEC 3
   LOTS 1 THRU 4 (39.682 ACS EACH);
   S/2N/2; S/2
   SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
   RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
   OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
   EQUALLY BETWEEN SAME.
SEC 4
   LOTS 1 THRU 4 (39.682 ACS EACH);
   S/2N/2; S/2
   SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
   RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
   OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
   EQUALLY BETWEEN SAME.
SEC 5
   SE/4NE/4; S/2NW/4; S/2
   SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
   RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
   OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
   EQUALLY BETWEEN SAME.
SEC 6
   LOTS 1 & 2 (39.683 ACS EA); LOTS 3 THRU
   6 (39.682 ACS EA); S/2NE/2; SE/4NW/4; NE/4SW/4; SE/4
   SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
   RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
   OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
   EQUALLY BETWEEN SAME.

LOO4955/OO   W-104152        FOSSIL ASSOCIATES       05/11/1987   05/31/1997
TRACT 01                        WY SUBLETTE
T 28 N  R 105 W                                957.600
SEC 35
   ALL
   SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
   RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
   OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
   EQUALLY BETWEEN SAME.
T 27 N  R 106 W 6TH PM
SEC 1
   LOTS 1 THRU 4 (39.40 ACS EA); S/2N/2
   SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
   RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
   OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
   EQUALLY BETWEEN SAME.

LOO4958/OO   W-104167        FOSSIL ASSOCIATES       05/11/1987   05/31/1997
TRACT 01                        WY SUBLETTE

| COMPANY | O11 | CNG PRODUCING COMPANY | | EXHIBIT B<br>SCHEDULE OF | | |
|---|---|---|---|---|---|---|
| LEASE NUMBER | LESSOR | | LESSEE | STATE/COUNTY<br>GROSS ACRES | LSE DTE<br>RECORDED | EXPIRE DTE |

T 28 N  R 106 W 6TH PM                                                2041.630
SEC   3
        LOTS 1,2,3,4 (42.775 ACS EACH);
        S/2S/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
SEC   4
        LOT/4 (42.775 ACS);
        S/2S/2
        SEC5/ON CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
SEC   5
        LOTS 2 (42.775 ACS);
        S/2SW/4; SW/4SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
SEC   6
        LOTS 5,6,7,8,9 (42.776 ACS EACH);
        SE/4SW/4; S/2SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
SEC   7
        LOTS 1,2,3,4 (42.775 ACS EACH);
        E/2; E/2W/2
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.
SEC   8
        NW/4NE/4; NW/4; SE/4SW/4; NE/4SE/4;
        S/2SE/4
        SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
        RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
        OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
        EQUALLY BETWEEN SAME.

L00496/4/OO   W-10M227                 FOSSIL ASSOCIATES
    TRACT O1                           WY SUBLETTE           1255.210      08/12/1987   09/31/1997
    T  18 N  R 114 W
    SEC   12
        ALL

EXHIBIT B.
SCHEDULE OF

COMPANY     O11     CNG PRODUCING COMPANY

| LEASE NUMBER | LESSOR | PROSPECT | LESSEE | STATE/COUNTY | GROSS ACRES | LSE DTE | RECORDED | EXPIRE DTE |
|---|---|---|---|---|---|---|---|---|

SEC 14
ALL LESS 24.79 ACRES, MORE OR LESS, IN RAILROAD
R/W WO294436)

L005094/OO   W-104750          FOSSIL ASSOCIATES   WY SWEETWATER   321.960   05/19/1987   05/31/1997
TRACT O1
T 14 N R 100 W
SEC 3
LOTS 1,2,3,4 (40.49 ACS EA);
S/2N/2

L005095/OO   W-104775          FOSSIL ASSOCIATES   WY SUBLETTE   2560.000   05/20/1987   05/31/1997
TRACT O1
T 27 N R 104 W
SEC 8
SEC ALL
SEC 9
SEC ALL 10
SEC ALL 17
SEC ALL

L005096/OO   W-104776          FOSSIL ASSOCIATES   WY SUBLETTE   3608.240   05/20/1987   05/31/1997
TRACT O1
T 27 N R 104 W 6TH PM
SEC 20
ALL
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC 22
W/2W/2; SE/2NW/4; NE/4SW/4;
N/2SE/4; SE/4SE/4
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC 23
S/2SW/4
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

| COMPANY | O11 | CNG PRODUCING COMPANY | | EXHIBIT B SCHEDULE OF | |
|---|---|---|---|---|---|
| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |

SEC   30
  LOTS 1 THRU 4 (31.03 ACS EA):
  E/2: E/2W/2
  SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
  RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
  OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
  EQUALLY BETWEEN SAME.

SEC   31
  LOTS 1 THRU 4 (31.03 ACS EA):
  E/2: E/2W/2
  SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
  RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
  OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
  EQUALLY BETWEEN SAME.

SEC   32
  ALL
  SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
  RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
  OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
  EQUALLY BETWEEN SAME.

SEC   33
  ALL
  SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
  RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
  OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
  EQUALLY BETWEEN SAME.

--------------------------------------------------------------

L005097/00   W-104777                    FOSSIL ASSOCIATES        06/10/1987   06/30/1997
TRACT  01                                WY SUBLETTE    1529.010
T   29  N   R  104  W
  SEC   7
  LOTS 1,2,3,4 (35.573 ACS EA):
  N/2NE/4: SW/4NE/4: E/2W/2: SE/4SE/4
  SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
  RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
  OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
  EQUALLY BETWEEN SAME.

  SEC   8
  LOTS 1,2,3 (35.573 ACS EA):
  NE/4NE/4: S/2NE/4: SE/4SW/4: SE/4
  SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
  RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
  OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
  EQUALLY BETWEEN SAME.

T   28  N   R  105  W
  SEC   33
  ALL

COMPANY                    CNG PRODUCING COMPANY            EXHIBIT B
                                                           SCHEDULE OF                                    PAGE  12

LEASE NUMBER      LESSOR                        LESSEE        STATE/COUNTY         LSE DTE     EXPIRE DTE
                                 O11                         GROSS ACRES          RECORDED

L005098/00      W-104780                      FOSSIL ASSOCIATES                   06/10/1987   06/30/1997
TRACT 01                                      WY SUBLETTE        2560.000
T   27 N   R 105 W
    SEC   1
    SEC   S/2
    SEC   12
    SEC   ALL
    SEC   13
    SEC   24
    SEC   W/2NE/4; W/2
    SEC   NE/4NE/4; NW/4NW/4; S/2N2; S/2

L005099/00      W-104781                      FOSSIL ASSOCIATES                   06/10/1987   06/30/1997
TRACT 01                                      WY SUBLETTE        2554.310
T   27 N   R 105 W
    SEC   3
          LOTS 1,2,3,4. (39.289 ACS EA);
          S/2N/2; S/2
          SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
          RIVERBEDS.    WHERE THE ACTUAL ACREAGE PER SECTION LOT
          OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
          EQUALLY BETWEEN SAME.
    SEC   4
          LOTS 1,2,3,4. (39.289 ACS EA);
          S/2N/2; S/2
          SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
          RIVERBEDS.    WHERE THE ACTUAL ACREAGE PER SECTION LOT
          OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
          EQUALLY BETWEEN SAME.
    SEC   9
          ALL
          SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
          RIVERBEDS.    WHERE THE ACTUAL ACREAGE PER SECTION, LOT
          OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
          EQUALLY BETWEEN SAME.ABLE, ACREAGE HAS BEEN ALLOCATED
    SEC   11
          ALL
          SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
          RIVERBEDS.    WHERE THE ACTUAL ACREAGE PER SECTION, LOT
          OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
          EQUALLY BETWEEN SAME.ABLE, ACREAGE HAS BEEN ALLOCATED

L005100/00      W-104788                      FOSSIL ASSOCIATES                   05/12/1987   05/31/1997
TRACT 01                                      WY SWEETWATER

EXHIBIT B
SCHEDULE OF

COMPANY                O11          CNG PRODUCING COMPANY

LEASE NUMBER          LESSOR                    LESSEE          STATE/COUNTY    LSE DTE   EXPIRE DTE
                                                               GROSS ACRES     RECORDED

T 12 N  R 107 W 6TH PM                                          640.800
  SEC  6
     LOTS 8,9,10,11 (40.20 ACS EACH);
     E/2; E/2W/2
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.

LOO5101/00  W-104808          FOSSIL ASSOCIATES          06/10/1987   06/30/1997
  TRACT 01                    WY SWEETWATER
  T 12 N  R 109 W                              2011.440
  SEC  7
     LOTS 5,6,7,8,9,10 (15.085 ACS EACH);
     W/2NE/4; E/2W/2; SE/4
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.
  SEC  8
     LOTS 4,8,9,10,11 (15.085 ACS EACH);
     W/2NE/4; E/2W/2; SE/4
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.
  SEC  9
     NW/4
  SEC  16
     LOT 16
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.
  SEC  18
     LOTS 5 & 6 (15.085 ACRES EACH);
     NE/4; E/2NW/4
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.
  SEC  19
     LOTS 7,8,9 & 10 (15.085 ACRES EACH)
     SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
     RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
     OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
     EQUALLY BETWEEN SAME.
  SEC  20
     E/2; E/2SW/4

EXHIBIT B
SCHEDULE OF

| COMPANY | 011 | CMG PRODUCING COMPANY | | |
|---|---|---|---|---|
| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE    EXPIRE DTE  RECORDED |

SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC   21

LOTS 4,5 & 6 (15.085 ACRES EACH):
N/2SW/4
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

-----------------------------------------

LOO5102/00  W-104813        FOSSIL ASSOCIATES      08/10/1987   08/30/1987
TRACT 01                        WY SUBLETTE    1005.000
T   34  N   R 109 W
SEC    5

LOTS 1,2,3,4. (41.25 ACS EA):
S/2N/2; S/2
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC    8

N/2N/2; SE/4NE/4
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
T   34  N   R 110 W
SEC    1

SE/4NE/4
T   35  N   R 109 W
SEC   31
E/2NE/4
SEC   32
SW/4SW/4

-----------------------------------------

LOO5103/00  W-104816        FOSSIL ASSOCIATES      08/10/1987   08/30/1987
TRACT 01                        WY SWEETWATER   1086.000
T   13  N   R 110 W
SEC   32
W/2NE/4; SE/4NE/4; NW/4; S/2

SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC   33

EXHIBIT B
SCHEDULE OF

| COMPANY | 011 | CNG PRODUCING COMPANY | | | | |
|---|---|---|---|---|---|---|
| LEASE NUMBER | LESSOR | | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |

LOT 2 (8.00 ACRES);
N/2: N/2S/2
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

L005104/00   W-104825                    FOSSIL ASSOCIATES                     06/12/1987   06/30/1997
  TRACT 01                                 WY SUBLETTE          2200.000
  T  35 N   R 110 W
    SEC  10
         ALL
    SEC  11
         W/2
    SEC  14
         NE/4NE/4; W/2NE/4; NW/4; N/2SW/4; NW/4SE/4
    SEC  15
         ALL
    SEC  22
         NE/4; NW/4NW/4

L005105/00   W-104826                    FOSSIL ASSOCIATES                     06/12/1987   06/30/1997
  TRACT 01                                 WY SUBLETTE           640.000
  T  35 N   R 110 W
    SEC  13
         E/2
    SEC  23
         NW/4SE/4
    SEC  24
         NE/4; W/2SE/4
    SEC  25
         NE/4NE/4

L005106/00   W-104837                    FOSSIL ASSOCIATES                     07/23/1987   07/31/1997
  TRACT 01                                 WY SWEETWATER        3520.080
  T  14 N   R 112 W
    SEC   2
         LOTS 5,6,7,8 (40.02 ACRES EACH);
         S/2N/2; S/2
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
    SEC  10
         ALL
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS

| COMPANY | CNG PRODUCING COMPANY | | EXHIBIT B SCHEDULE OF | | | |
|---|---|---|---|---|---|---|
| LEASE NUMBER | O11 LESSOR | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE | |

RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC  11
    ALL

SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC  15
    ALL

SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC  21
    E/2

SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC  22
    ALL

SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

LO06001/00   W-102781                    FOSSIL ASSOCIATES                06/10/1987   06/30/1997
TRACT 01                                 WY SUBLETTE
T  32 N   R 113 W
    SEC  30                                                   321.830
    LOTS 1,2,3,4. (40.4575 ACS EACH);
    E/2W/2
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

LO06002/00   W-102699                    FOSSIL ASSOCIATES                06/10/1987   06/30/1997
TRACT 01                                 WY SUBLETTE
T  27 N   R 105 W                                            1278.090
    SEC  2
    LOTS 1,2,3,4. (39.5225 ACS EACH);

| COMPANY | CNG PRODUCING COMPANY | | EXHIBIT B SCHEDULE OF | | |
|---|---|---|---|---|---|
| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |

O 11

**LCOB128/00**
**TRACT 13 N**
**T 13 N  R 105 W**

W-105467    FOSSIL ASSOCIATES    WY SWEETWATER    308.410    07/10/1987    07/31/1987

SEC 3
S/2N/2; S/2
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC 10
ALL

LOTS 6,7,8,9 (7.3525 ACRES EACH)
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC 4
W/2SE/4; SE/4SE/4
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC

**LCOB129/00**
**TRACT 01**
**T 27 N R 105 W 6TH PM**

W-105469    FOSSIL ASSOCIATES    WY SUBLETTE    2506.680    07/10/1987    07/31/1997

SEC
LOTS 1-4 INCLUSIVE (38.5787 ACS EA);
S/2N/2: S/2
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC 6

LOTS 1-7 INCLUSIVE (38.5785 ACS EA);
S/2NE/4; SE/4NN/4; E/2SW/4; SE/4
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC

LOTS 1-4 INCLUSIVE (38.5787 ACS EA);
E/2; E/2W/2
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

COMPANY     O11     CNG PRODUCING COMPANY     EXHIBIT B
SCHEDULE OF

PAGE    1R

LEASE NUMBER     LESSOR     LESSEE     STATE/COUNTY
GROSS ACRES     LSE DTE
RECORDED     EXPIRE DTE

SEC    8

SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

---

L008130/OO    W-105475                        FOSSIL ASSOCIATES
TRACT 01                                      WY SUBLETTE          200.000     07/13/1987    07/31/1997
T   29 N   R 106 W
   SEC 25
   SEC    SE/4
   SEC 29
       NW/4SW/4

---

L008255/OO    W-104170                        FOSSIL ASSOCIATES
TRACT 01                                      WY SWEETWATER       1278.800     07/23/1987    07/31/1997
T   13 N   R 107 W
   SEC    1
       LOTS 1,2,3,4 (39.70 ACS EACH); S/2N/2; S/2
       SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
       RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
       OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
       EQUALLY BETWEEN SAME.
   SEC 12
       ALL
       SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
       RIVERBEDS.   WHERE THE ACTUAL ACREAGE PER SECTION, LOT
       OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
       EQUALLY BETWEEN SAME.

---

L008258/OO    W-105136                        FOSSIL ASSOCIATES
TRACT 01                                      WY SWEETWATER       1127.940     10/09/1987    10/31/1997
T   12 N   R 106 W
   SEC    7
       LOTS 5, 6, 7, 8, 9, 10, 11,
       SE/4 NW/4, E/2 SW/4,  SE/4
       ACREAGE FIGURE IS AN ESTIMATE.
       ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
   SEC    8
       LOTS 1, 2, 3, 4, 5, W/2 E/2, SE/4 NW/4,  SW/4
       SE/4 SE/4
       ACREAGE FIGURE IS AN ESTIMATE.
       ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

COMPANY          CNG PRODUCING COMPANY

EXHIBIT B
SCHEDULE OF

LEASE NUMBER     LESSOR          LESSEE     STATE/COUNTY     LSE DTE     EXPIRE DTE
                                            GROSS ACRES      RECORDED

O11

L008259/OO     W-106139     FOSSIL ASSOCIATES     10/09/1987   10/31/1997
TRACT O1                    WY SUBLETTE   4975.070
  T 28 N   R 105 W
  SEC  17
       W/2

       SEC  20        ACREAGE FIGURE IS AN ESTIMATE.
            W/2       ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

       SEC  25        ACREAGE FIGURE IS AN ESTIMATE.
            W/2       ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

       SEC  30        ACREAGE FIGURE IS AN ESTIMATE.
            LOTS 1, 2, 3, 4, E/2, E/2W/2   ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

  T 28 N   R 105 W
  SEC     2           ACREAGE FIGURE IS AN ESTIMATE.
            LOTS 1, 2, 3, 4, S/2S/2   ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

       SEC  11        ACREAGE FIGURE IS AN ESTIMATE.
            ALL       ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

       SEC  12        ACREAGE FIGURE IS AN ESTIMATE.
            ALL       ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

       SEC  13        ACREAGE FIGURE IS AN ESTIMATE.
            ALL       ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

                      ACREAGE FIGURE IS AN ESTIMATE.



COMPANY      011      CNG PRODUCING COMPANY

EXHIBIT B
SCHEDULE OF

| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |
|---|---|---|---|---|---|

SEC 14
E/2      ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC 24 N/2, SE/4

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

LO09913/OO  W-108095      FOSSIL ASSOCIATES  WY SUBLETTE  1280.000   03/18/1988  03/31/1998
TRACT 01
T 34 N  R 110 W
SEC 18
SEC E/2W/2
SEC 19
SEC E/2W/2
SEC 21
SEC E/2
SEC 28
SEC W/2
T 34 N  R 111 W
SEC 24
SEC S/2

LO09950/OO  W-107505      FOSSIL ASSOCIATES  WY SUBLETTE  80.000   01/30/1987  01/30/1997
TRACT 01
T 33 N  R 110 W
SEC 8
SEC S/2SW/4

LO10279/OO  VVW-107018      FOSSIL ASSOCIATION  WY SWEETWATER  1733.750   10/12/1988  10/31/1998
TRACT 01
T 13 N  R 105 W
SEC 5
LOT 13

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC 6
LOTS 2, 3, 4, 5, 7, 8, 9, 10, 11, SW/4NE/4,
SE/4NW/4, E/2SW/4, W/2SE/4

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

COMPANY          011          CMG PRODUCING COMPANY          EXHIBIT B.
                                                             SCHEDULE OF

LEASE NUMBER     LESSOR                    LESSEE            STATE/COUNTY     LSE DTE      EXPIRE DTE
                                                            GROSS ACRES      RECORDED

LO10533/OO   W-117438
TRACT 2A
T  28 N  R 105 W
   6
SEC    LOTS 1-5, SE/4SW/4, SW/4SE/4

        ACREAGE FIGURE IS AN ESTIMATE.
        ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC    7
        LOTS 1-4, W/2E/2, E/2W/2

        ACREAGE FIGURE IS AN ESTIMATE.
        ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC    18
        LOTS 3, 4, E/2SW/4, SE/4

        ACREAGE FIGURE IS AN ESTIMATE.
        ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC    19
        LOTS 1-4, E/2, E/2W/2

        ACREAGE FIGURE IS AN ESTIMATE.
        ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

                              WELLS PETROLEUM
                              WY SUBLETTE        1989.250

                                                 08/23/1989   08/31/1999

SEC    7
        LOT 1, W/2E/2, SE/4NE/4

        ACREAGE FIGURE IS AN ESTIMATE.
        ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC    2, 3, S/2NW/4

        ACREAGE FIGURE IS AN ESTIMATE.
        ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC    19
        SE/4SW/4, SW/4SE/4

        ACREAGE FIGURE IS AN ESTIMATE.
        ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC    22
        E/2, E/2W/2, NW/4NW/4, NW/4SW/4

        ACREAGE FIGURE IS AN ESTIMATE.
        ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC    30
        W/2NE/4, E/2NW/4

        ACREAGE FIGURE IS AN ESTIMATE.
        ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

PAGE 22

COMPANY          011          CNG PRODUCING COMPANY

EXHIBIT B
SCHEDULE OF

LEASE NUMBER     LESSOR               LESSEE          STATE/COUNTY     LSE DTE     EXPIRE DTE
                                                      GROSS ACRES      RECORDED

T 29 N  R 105 W
SEC  31
   LOTS 3, 4, E/2SW/4, SE/4

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

PAGE 23

EXHIBIT B
SCHEDULE OF

COMPANY          O11          CNG PRODUCING COMPANY

| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |
|---|---|---|---|---|---|

LO10561/00    W-118147
TRACT 01
T 30 N  R 107 W
   SEC  7
   SEC  NE/4, E/2SE/4
   SEC  8
        SW/4NE/4

ONAGER ENTERPRISES
   WY SUBLETTE          280.000          11/06/1989   11/30/1999

LO10566/00    W-118156
TRACT 01
T 30 N  R 108 W
   SEC  17
        SW/4, N/2SE/4, SW/4SE/4

ONAGER ENTERPRISES
   WY SUBLETTE          2499.800          11/06/1989   11/30/1999

   ACREAGE FIGURE IS AN ESTIMATE.
   ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
   SEC  18
        LOTS 1, 2, 3, 4, W/2NE/4, SE/4NE/4, E/2W/2, SE/4

   ACREAGE FIGURE IS AN ESTIMATE.
   ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
   SEC  20
        ALL

   ACREAGE FIGURE IS AN ESTIMATE.
   ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
   SEC  21
        ALL

   ACREAGE FIGURE IS AN ESTIMATE.
   ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
T 31 N  R 108 W
   SEC  35
        W/2NE/4, E/2W/2, SE/4

   ACREAGE FIGURE IS AN ESTIMATE.
   ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

LO10567/00    W-118157
TRACT 01
T 30 N  R 108 W
   SEC  22
        NW/4, W/2SW/4, SE/4SW/4, SE/4
   SEC  23
        N/2NE/4, SE/4NE/4, S/2
   SEC  27
        W/2W/2
   SEC  28

ONAGER ENTERPRISES
   WY SUBLETTE          2040.000          11/06/1989   11/30/1999

COMPANY          CNG PRODUCING COMPANY          EXHIBIT R
                                                SCHEDULE OF

LEASE NUMBER     LESSOR          LESSEE          STATE/COUNTY     LSE DTE     EXPIRE DTE
                                                GROSS ACRES      RECORDED

SEC  33    ALL
SEC  34    NE/4, N/2NW/4
           S/2NW/4, NE/4SW/4

L010568/OO   W-118158          ONAGER ENTERPRISES          11/06/1989   11/30/1999
TRACT 01                       WY SUBLETTE       2000.000
T  31 N  R 108 W
SEC  7     NE/4NE/4, S/2NE/4, SE/4
     8     S/2NW/4, SW/4, SW/4SE/4
SEC  17    SE/4
SEC  20    N/2,
SEC  21    E/2
SEC        ALL

L010569/OO   W-118159          ONAGER ENTERPRISES          11/06/1989   11/30/1999
TRACT 01                       WY SUBLETTE       2240.000
T  31 N  R 108 W
SEC  27    W/2NE/4, W/2, SE/4
SEC  28    ALL
SEC  33    E/2E/2, SW/4NE/4, NW/4SE/4
SEC  34    ALL
SEC  35    W/2W/2

L010557/OO   W-118166          ONAGER ENTERPRISES          11/06/1989   11/30/1999
TRACT 01                       WY SUBLETTE       2537.790
T  31 N  R 109 W
SEC  5     LOTS 3, 4, S/2NW/4, SW/4

     ACREAGE FIGURE IS AN ESTIMATE.
     ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC  6     LOTS 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14,
           S/2NE/4, SE/4
     ACREAGE FIGURE IS AN ESTIMATE.
     ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

COMPANY          011          CNG PRODUCING COMPANY

EXHIBIT B...
SCHEDULE OF

| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY | GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |
|---|---|---|---|---|---|---|

SEC  8

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC  17
ALL

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC  28
E/2W/2, NW/4SW/4, SW/4SE/4

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

L010572/00   W-118167      ONAGER ENTERPRISES           1425.120   11/06/1989   11/30/1998
TRACT 01
T 32 N  R 109 W                            WY SUBLETTE
SEC  30
LOTS 1-12, E/2

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.
SEC  31
LOTS 1-12, E/2

ACREAGE FIGURE IS AN ESTIMATE.
ACTUAL ACREAGE FIGURE IS UNAVAILABLE.

EXHIBIT B
SCHEDULE OF

| COMPANY | 011 | CNG PRODUCING COMPANY | | | |
|---|---|---|---|---|---|
| LEASE NUMBER | LESSOR | | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED   EXPIRE DTE |

LOO4957/OO   W-104166

FOSSIL ASSOCIATES                                    05/11/1987   05/31/1997

TRACT 02
T  28 N   R  106 W                          WY SUBLETTE        640.000
   SEC   25
         ALL

---

LOO4959/OO   W-104168

FOSSIL ASSOCIATES                                    05/11/1987   05/31/1997
                                             WY SUBLETTE        1355.970

TRACT 01
T  28 N   R  106 W 6TH PM
   SEC   17    E/2; E/2NW/4; SW/4
   SEC   18
         LOT 1 (35.97 ACS); NE/4NE/4; W/2NE/4;
         E/2NW/4; E/2SE/4

         SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
         RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
         OR TRACT IS NOT AVAILABLE.  ACREAGE HAS BEEN ALLOCATED
         EQUALLY BETWEEN SAME.

   SEC   34
         S/2
   SEC   35
         SW/4

---

LOO5107/OO   W-104782

FOSSIL ASSOCIATES                                    08/10/1987   06/30/1997
                                             WY SUBLETTE        4960.000

TRACT 01
T  27 N   R  105 W
   SEC   14
         ALL
   SEC   15
         ALL
   SEC   22
         ALL
   SEC   23
         ALL
   SEC   26
         ALL
   SEC   27
         ALL
   SEC   34
         ALL
   SEC   35
         N/2NE/4; SW/4NE/4; W/2; SE/4SE/4

---

LOO9768/OO   W-107025

FOSSIL ASSOCIATES                                    12/09/1987   12/31/1997
                                             WY SUBLETTE        520.000

   SEC   22
         N/2NE/4, W/2, NE/4SE/4, S/2SE/4

COMPANY  011  CNG PRODUCING COMPANY

EXHIBIT B
SCHEDULE OF

| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY | GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |
|---|---|---|---|---|---|---|
| L008195/00 TRACT 01 T 23 N R 113 W SEC 13 | M-103526 | SHARON L. CARPENTER | WY LINCOLN | 1019.530 | 01/30/1987 | 01/31/1997 |

LOTS 1, 2, 3, 4, W/2NE/4, N/2NW/4, SE/4NW/4

SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION LOT OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED EQUALLY BETWEEN SAME.
SEC 23
LOT 1, E/2, E/2W/2, SW/4NW/4, W/2SW/4

SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS, AS RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT OR TRACT IS NOT AVAILABLE. ACREAGE HAS BEEN ALLOCATED EQUALLY BETWEEN SAME.

| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY | GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |
|---|---|---|---|---|---|---|
| L008196/00 TRACT 01 T 23 N R 113 W SEC 28 | M-93525 | WALLY JOHN PICOU | WY LINCOLN | 600.000 | 01/24/1986 | 01/31/1996 |

NW/4NE/4, S/2NE4, NW/4, S/2

| L008343/00 TRACT 01 T 24 N R 112 W SEC 31 | M-103514 | MICHAEL L. ROBINSON | WY LINCOLN | 160.000 | 01/30/1987 | 01/31/1997 |

N/2NE/4, E/2NW/4

| L010391/00 TRACT 01 T 23 N R 113 W SEC 12 | ST WY 89-00236 | GLEASON LAND CO | WY LINCOLN | 40.000 | 04/02/1989 | 04/02/1994 |

SW/4SW/4

| L010732/00 TRACT 01 T 23 N R 113 W SEC 20 | M-121912 | WALLY JOHN PICOU | WY LINCOLN | 40.000 | 01/24/1986 | 01/31/1996 |

NW/4NW/4

| L010758/00 TRACT 01 T 23 N R 112 W | M-121417 | MARATHON OIL COMPANY | WY LINCOLN | 360.000 | 09/05/1990 BK 290PR PG 669 | 09/30/1995 |

EXHIBIT B
SCHEDULE OF

| COMPANY | O11 | CNG PRODUCING COMPANY | | | |
|---|---|---|---|---|---|
| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |

SEC 8
S/2NE/4, SE/4NW/4, E/2SW/4, SE/4

LO10759/00   W-121813          MARATHON OIL COMPANY          09/05/1990  09/30/1995
TRACT 01                        WY LINCOLN          440.000   BK 290PR #724362
T 20 N  R 112 W
SEC 9
W/2SW/4, SE/4SW/4
SEC 24
W/2

LO10760/00   W-121420          MARATHON OIL COMPANY          09/04/1990  09/30/1995
TRACT 01                        WY LINCOLN          661.560   BK 290PR PG 397
T 23 N  R 113 W
SEC 25
LOTS 1 - 12, W/2

LO10765/01   WILLIAM R TALIAFERRO          THOMAS J NOONAN          06/11/1990  06/11/1995
TRACT 01                        WY LINCOLN          600.000   BK 287PR #720135
T 23 N  R 113 W 6TH PM
SEC 15
TRACT 38 - PORTION THEREOF
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC 16
TRACT 38 - 40 ACRES - PORTION THEREOF
TRACT 39 - 40 ACRES - PORTION THEREOF
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY
SEC 20
TRACT 39 - 40 ACRES - PORTION THEREOF
TRACT 40 - 160 ACRES - PORTION THEREOF
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS.  WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY
SEC 21
TRACT 38 - 40 ACRES - PORTION THEREOF
TRACT 39 - 40 ACRES - PORTION THEREOF
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS

| COMPANY | CNG PRODUCING COMPANY | | EXHIBIT B SCHEDULE OF | |
|---|---|---|---|---|

| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE EXPIRE DTE RECORDED |
|---|---|---|---|---|
| | 011 | | | |

RIVERBEDS,    WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY

SEC   22

TRACT 38 - PORTION THEREOF
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

T 23 N  R 114 W 6TH PM
SEC   24

LOT 37 - ALSO DESCRIBED AS
NE/4 SE/4, S1/2 SE/4, LOTS 08 W/2
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| L010765/02 | THOMAS S TALIAFERRO, IV ET UX  THOMAS J NOONAN | WY LINCOLN | 06/11/1990  06/11/1995 |
|---|---|---|---|
| TRACT 01 | | 600.000 | BK 287PR #720136 |

T 21 N  R 113 W 6TH PM
SEC   15

TRACT 38 - PORTION THEREOF
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.

SEC   16

TRACT 38 - 40 ACRES - PORTION THEREOF
TRACT 39 - 40 ACRES - PORTION THEREOF
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY

SEC   20

TRACT 39 - 40 ACRES - PORTION THEREOF
TRACT 40 - 160 ACRES - PORTION THEREOF
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS, WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY

SEC   21

TRACT 38 - 40 ACRES - PORTION THEREOF

| COMPANY | | CNG PRODUCING COMPANY | | EXHIBIT B SCHEDULE B OF | | | |
|---|---|---|---|---|---|---|---|
| LEASE NUMBER | LESSOR | | LESSEE | STATE/COUNTY | GROSS ACRES | LSE DTE | EXPIRE DTE RECORDED |



O11

TRACT 39 - 40 ACRES - PORTION THEREOF
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY
SEC  22

TRACT 38 - PORTION THEREOF
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
T 23 N  R 114 W 6TH PM
SEC  24

LOT 37 - ALSO DESCRIBED AS
NE/4SE/4: S/2SE/4: SE/4SW/4
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY

L010765/03  SUSAN TALIAFERRO VAN MATRE  THOMAS J NOONAN  WY LINCOLN  600.000  06/11/1990 06/11/1995
TRACT 01
T 23 N  R 113 W 6TH PM                                                           BK 2B7PR #720137
SEC  15

TRACT 38 - PORTION THEREOF
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEC  16

TRACT 38 - 40 ACRES - PORTION THEREOF
TRACT 39 - 40 ACRES - PORTION THEREOF
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY
SEC  20

TRACT 39 - 40 ACRES - PORTION THEREOF
TRACT 40 - 160 ACRES - PORTION THEREOF
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY

PAGE 31

EXHIBIT B
SCHEDULE OF

| COMPANY | CNG PRODUCING COMPANY | | | | |
|---|---|---|---|---|---|
| 011 | | | | | |

| LEASE NUMBER | LESSOR | LESSEE | STATE/COUNTY GROSS ACRES | LSE DTE RECORDED | EXPIRE DTE |
|---|---|---|---|---|---|

SEC 21
TRACT 38 - 40 ACRES - PORTION THEREOF
TRACT 39 - 40 ACRES - PORTION THEREOF
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY

SEC 22
TRACT 38 - PORTION THEREOF
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
T 23 N R 114 W 6TH PM
SEC 24

LOT 37 - ALSO DESCRIBED AS
NE/4SE/4, S/2SE/4; SE/4SW/4
SECTION CONTAINS LOTS OR IRREGULAR TRACTS SUCH AS
RIVERBEDS. WHERE THE ACTUAL ACREAGE PER SECTION, LOT
OR TRACT IS NOT AVAILABLE, ACREAGE HAS BEEN ALLOCATED
EQUALLY BETWEEN SAME.
SEE LEASE FOR FULL DESCRIPTION OF PROPERTY

L010767/00    BOARD OF COUNTY COMMISSIONERS    THOMAS J NOONAN    WY LINCOLN    13.090    05/02/1990  05/02/1995
TRACT 01                                                                                              BK 285PR PG 344
T 23 N R 113 W
SEC 14
PARCELS A,B,C AS FURTHER DESCRIBED IN LEASE

PAGE 32

COMPANY                    CNG PRODUCING COMPANY          EXHIBIT  B
PROSPECT NUMBER    OII                                   SCHEDULL OF

LEASE NUMBER    LESSOR    PROSPECT        LESSEE          STATE/COUNTY          LSE DTE    EXPIRL DTE
                                                         GROSS ACRES           RECORDED

L009766/OO    W-107020                    FOSSIL ASSOCIATES
  TRACT 01                                WY SWEETWATER         12/09/1987   12/31/1997
    T 26 N   R 105 W                                   2509.400
      SEC    1
        LOTS 1,2,3,4 (47.30 ACS EA); S/2N/2; S/2
        ADJUSTMENT LOT - ACREAGE BASED ON AVERAGE PER LOT
        PURSUANT TO LEASE:  ACTUAL ACREAGE NOT AVAILABLE.
      SEC    2
        LOTS 1(47.30), 3(47.29), 4(47.29).
        SE/4NE/4; S/2NW/4; N/2SW/4; NE/4SE/4; S/2SE/4
        ADJUSTMENT LOT - ACREAGE BASED ON AVERAGE PER LOT
        PURSUANT TO LEASE:  ACTUAL ACREAGE NOT AVAILABLE.
      SEC    3
        LOTS 1,2,3,4 (47.29 ACS EACH); S/2N/2; S/2
        ADJUSTMENT LOT - ACREAGE BASED ON AVERAGE PER LOT
        PURSUANT TO LEASE:  ACTUAL ACREAGE NOT AVAILABLE.

      SEC   11
        W/2NW/4; E/2SW/4

EXHIBIT C

# EXHIBIT A-5

CONSULTING AGREEMENT

This Agreement, made on November 1, 1983, between FOSSIL ASSOCIATES, a joint venture composed of W. K. Arbuckle, R. H. Dubitzky, E. A. Riggs, 1580 Lincoln Street, Suite 1250, Denver, Colorado, 80203 (hereinafter called "Fossil"), and CNG PRODUCING COMPANY, a Delaware corporation, One Canal Place, Suite 3100, New Orleans, Louisiana 70130, (hereinafter call CNGP).

I.

Definitions

1.01 - Prospect: A defined geographic area believed by Fossil to contain oil and/or gas deposits justifying acquisition of leases or the drilling of a Test Well thereon. For the purpose of this Agreement, no individual prospect shall cover an area greater than 10,000 acres. Prospects shall generally be of rectangular configuration based on geology and determined by mutual agreement of the parties hereto. Where surface acreage in excess of 10,000 acres is prospective it is contemplated that each Prospect determined shall be of equal geologic quality. In the event prospective acreage exceeds 10,000 acres the initial Prospect identified encompassing such acreage shall be 10,000 acres while the second or later identified prospects shall be of lesser acreage if the total acreage is less than 20,000 acres. In any event the last identified Prospect shall have less than 10,000 acres where prospective acreage is greater than 10,000 acres but less than an even multiple of 10,000 acres.

1.02 - Leases: Oil and/or gas leases, permits, licenses, options, applications, interests in property and contractual rights in or affecting the foregoing, which permit the exploration for or production of oil, gas or related hydrocarbons or the receipt of such production or the proceeds therefrom.

1.03 - Test Well: The initial well to be drilled or caused to be drilled upon a Prospect by CNGP.

1.04 - Originated Prospects: Prospects in which Fossil shall have performed original geologic studies.

1.05 - Non-Originated Prospects: Prospects which are presented or offered to Fossil by third parties.

1.06 - Operating Agreement: An Agreement between two or more owners of Leases providing for the operations thereon, with all Lease owners sharing the costs and designating an operator of the lease.

1.07 - AFE: An Authority for Expenditure, to be submitted to CNGP in connection with the proposal for drilling a Test Well on a Prospect, containing an estimate of the cost of drilling and completion of such Test Well.



Dubitzky
EXHIBIT #5
2·1·2018  TZH
AGREN BLANCO REPORTING

Dubitzky 000387

1.08 - AMI: Area of Mutual Interest which, in connection with a Prospect, shalll be the geographic area outlined in an attachment to the Prospect Operating Agreement. Each party's responsibility to the other insofar as the AMI is concerned shall continue in accordance with the provisions of this Agreement, so long as any leases are in effect within the AMI.

1.09 - Types of Prospects: This Agreement contemplates an intent by Fossil to furnish Prospects in generally equal categories of prospective lease blocks in oil and gas provinces, drillable Prospects in mature oil and gas provinces and frontier Prospects.

## II.
### Purpose

CNGP is engaged in oil and gas exploration and production and in the operation of oil and gas properties. Fossil is engaged in the origination and assembling of Prospects for drilling purposes. CNGP shall have the right to acquire Prospects from Fossil. In this connection, Fossil agrees to maintain its present commercial reporting services covering areas of the Rocky Mountains, Mid-Continent and Texas, and make all information from these services available to CNGP. Fossil also agrees to make available to CNGP all geologic library memberships owned by Fossil. CNGP agrees to pay, as direct costs, those expenditures incurred by Fossil in the acquisition of logs, card/scout information, base maps, production information and other geologic information that Fossil utilizes in its geologic studies. As to such acquisitions of information, CNGP shall own for its account such items purchased under this provision.

## III.
### Cash Compensation

3.01 - Monthly Retainer: Beginning November 1, 1983 and monthly thereafter during the continuation of this Agreement, CNGP shall pay Fossil the sum of twenty one thousand five hundred dollars ($21,500.00) per month. This amount may be renegotiated at no less than six month intervals from the date of this Agreement, depending on activity and Fossil's fixed costs. This sum shall for purposes of reference be designated as, "overhead, salaries and other indirect expenses", as further set forth in the attachment hereto identified as Exhibit "A".

## IV.
### Submittal of Originated Prospects

Fossil agrees to present to CNGP its Originated Prospects during the term of this Agreement commencing November 1, 1983.   In the presentation of each Prospect to CNGP, Fossil shall furnish copies of geologic studies relating thereto made by, or available to Fossil and an outline of the Prospect recommended for acquisition with a proposed budget for the cost thereof including acquisition of available Leases of the Lands constituting the Prospect and the estimate by Fossil as to the per acre cost of Leases and the burdens anticipated in connection with acquisition and including any interest owned or to which Fossil may be entitled to under the terms of this Agreement. CNGP recognizes that Fossil owns numerous Prospects which are listed in an attachment hereto.   Fossil owned Prospects acquired prior to November 1, 1983 are not subject to this Agreement except as may be offered to CNGP at the choice of Fossil.

## V.
### Submittal of Non-Originated Prospects

CNGP shall have the first right of refusal to acquire an interest in Non-Originated Prospects in which Fossil has an opportunity to participate in or transfer to third parties. It is anticipated that the major thrust of this Agreement shall be origination of Prospects with review of non-originated Prospects being of lesser importance.   The terms of each submittal (including the interest available for purchase by CNGP) will be obtained from the submitting party by Fossil in each instance and will not be governed by any other provision of this Agreement.   However, it is the intent of Fossil that any participation in favor of outside geologists to which such geologists may be entitled for completed prospects or regional studies commissioned by Fossil, shall come out of the interest to which Fossil may be entitled under Paragraph VIII herein.   This participation may be in addition to any monetary consideration paid in connection with such studies out of CNGP budgetary funds. Completed prospects or regional studies requiring the assignment of an overriding royalty interest shall be submitted to the management committee of CNGP for its consideration and/or approval.

## VI.
### Acquisition of Interest

6.01 – Acceptance of Interest: CNGP shall have a period of fifteen business days, commencing with the first business day after the day on which a Prospect is presented by Fossil to accept such Prospect and the acquisition budget for such Prospect.   Acquisition of a Prospect by CNGP shall be made by notice received by Fossil within such period.   Acceptance may be made orally, confirmed by a written acceptance mailed within 72 hours after the oral acceptance.

Dubitzky 000389

6.02 – Lease Acquisitions: Upon acceptance by CNGP of a Prospect Fossil shall initiate the acquisition of Leases within the Prospect, in accordance with the proposed acquisition budget. In some instances Fossil may initiate lease acquisitions on behalf of CNGP on its own authority but limited to a range of cost no greater than fifty thousand dollars ($50,000) without management approval of CNGP which acquisition may be incorporated in a proposed acquisition budget. Fossil shall not exceed the acquisition budget on a per acre bonus basis, nor on a total expenditure basis without, in either case, the prior agreement of CNGP.

6.03 – Rejection of Interest: A failure by CNGP to notify Fossil of acceptance of a Prospect shall constitute rejection of the Prospect and Fossil shall be free to deal with such Prospect otherwise, without a claim of right or interest by CNGP hereunder. As to rejected prospect, CNGP shall have the right of first refusal at the time such Prospect becomes drillable and to be offered to third parties at a price set by Fossil. In the event of rejection of a Prospect by CNGP, CNGP agrees that for a period of one (1) year following termination of this Agreement, CNGP shall not acquire or attempt to acquire, directly or indirectly, any Lease, or other interest within the area of the Prospect originally recommended for acquisition by Fossil, unless CNGP shall have obtained the advance written approval of Fossil to waive the provisions of this Section 6.03.

6.04 – Payment of Expenses: Subject to the limitations of the acquisition budget, the cost of the acquisition of Leases within a Prospect, prior to the date of commencement of a Test Well on any such Prospect, shall be borne by CNGP. Costs shall include bonuses paid, costs of third party services and expenses directly incurred in Lease acquisitions, including the hiring of supervisory office landmen and field landmen, recording and title certification costs, but not any portion of Fossil's general overhead expenses, salaries or other indirect costs under 3.01 above. Fossil shall pay all such costs initially, and shall bill CNGP monthly for such costs, or at such times Fossil feels appropriate so as to avoid significant carrying costs by Fossil. CNGP shall reimburse Fossil within 15 days after receipt of billing. From time to time, Fossil may ask CNGP for cash advances for the purpose of acquiring Leases in a specific Prospect subject to letter documentation furnished to CNGP as to acreage available, acreage location, cost per acre and other details that would support audit requirements for such cash advances.

6.05 – Holding of Title: All Leases acquired shall be held in the name of CNGP, subject to Fossil having the unqualified right to receive copies of all leases and lease documentation applicable to such leases and an assignment of its interest; provided further, that no Lease shall be acquired or held in violation of the disclosure requirements of applicable state or federal regulations. Fossil shall have a special power of attorney on behalf of CNGP to execute assignments, applications and other appropriate instruments in connection with such leases.

6.06 – Payment of Delay Rentals: Delay rentals for leases acquired pursuant to this Article VI shall be paid by Fossil on behalf of CNGP (without liability to CNGP for improper payment so long as Fossil exercises ordinary care) and CNGP shall reimburse Fossil within 15 days of billing, for such delay rentals paid. CNGP shall be furnished rental receipts by Fossil for such payments.

6.07 — CNGP Minimum Interest: It is the intent of CNGP that it shall own a minimum of fifty percent (50%) of each prospect.

6.08 — Prior Areas of Mutual Interest: Fossil recognizes that CNGP is a party to prior agreements which have established several areas of mutual interest. CNGP has a prior obligation to offer its partners under said agreements an interest in all leases acquired within such designated areas of mutual interest.

VII
Test Well Drilling

7.01 — Acceptance by CNGP: Upon completion of Lease acquisitions in a Prospect, Fossil shall prepare a final geologic report and a drilling recommendation on each such Prospect, including AFE for the Test Well Proposed thereon.

7.02 — Interest to Be Acquired: Upon notification by CNGP of its intent to drill a Test Well, Fossil or family members or family owned corporations or partnerships of the individuals known as Fossil Associates, may acquire up to a 12.5% working interest in the Prospect for which such test well is to be drilled (in accordance with Exhibit "B" attached hereto) by payment to CNGP of a proportionate part of costs previously paid by CNGP pursuant to Section 6.04 hereof subject to and determined by payout as defined in paragraph VIII hereof.

7.03 — Prospect Operator: In the event a Test Well is drilled on a Prospect, CNGP shall be Operator unless CNGP shall have agreed to the designation of another party as Operator. Test Well drilling, completion of Test Wells, subsequent drilling operations, deepening, recompletion, reworking or abandonment of wells and operations on a Prospect shall be conducted according to the terms of a mutually accepted operating agreement common to the area of operations which shall have a three hundred percent (300%) intangible and one hundred percent (100%) tangible non-consent drilling clause and no preferential right to purchase.

7.04 — Title: No Test Well shall be commenced until the parties have received a legal opinion approving title to the proposed drillsite for drilling purposes or CNGP accepts any business risk necessary to proceed with the drilling of such well contrary to such opinion.

VIII.
Options of Fossil Following Test Well

CNGP shall pay all costs attributable to its percentage working interest in the Prospect of drilling, completion, equipping and operating the Test Well on a Prospect. Fossil shall retain from CNGP's interest a 3% overriding royalty interest, proportionately reduced to the interest owned by CNGP in each of the Leases in the prospect. Upon payout of the Test Well, Fossil shall have the option to convert its 3% overriding royalty interest to a 12-1/2% working interest proportionately reduced. If CNGP elects to drill a

second well in the Prospect area then prior to spudding of the second well, Fossil must elect to either convert or remain in an overriding position insofar as all other Prospect acreage than that included in a spacing unit applicable to the Test Well for such Prospect. Payout shall be defined as the point at which revenues exclusive of severance tax and royalties received by CNGP equal to 300% of its expenditures for the Prospect for which the test Well was drilled requiring Fossil's election, including leasehold cost, geologic and geophysical cost directly attributable to such Prospect and cost of drilling, completing equipping and operating the test well on the Prospect. No recovery for CNGP general corporate overhead or other overhead indicated in Exhibit "A" attached hereto will be included in the payout calculation. See 7.02.

In the event CNGP sells, farms out or transfers all or any part of its interest in a Prospect to a third party, the interest transferred shall bear its' proportionate part of any burdens in favor of Fossil under this Agreement.

## IX.
## Subsequent Lease Acquisitions

Prior to the commencement of a Test Well on a Prospect, Fossil shall have the sole responsibility of acquiring leases on behalf of CNGP within the AMI. Following the commencement of Test Well drilling operations, either party to this Agreement, may acquire additional Leases subject to such leases being offered to the non-purchasing party on the basis of cost in proportion to the parties respective interest in the prospect prior to such lease acquisition. To the extent a party shall have elected not to participate in subsequent lease acquisition, the remaining party shall own any such leases for its own account and such leases shall not be subject to the provisions of this agreement.

## X.
## Disposition of Prospects Prior to Drilling

10.01 - Mutual Decision to Sell: If, after receipt of a final geologic report on a Prospect, CNGP and Fossil agree to dispose by sale (subject to terms approved by CNGP) their entire interest in such Prospect prior to the drilling of a Test Well thereon, CNGP shall be entitled to receive, out of the consideration received therefor, an amount equal to its investment therein pursuant to Section 6.04 above. Any portion of the prospect remaining after reimbursement to CNGP shall be distributed 87.5% to CNGP and 12.5% to Fossil. In such instance Fossil's three percent (3%) override shall be deemed to have automatically converted to the working interest owned by Fossil and appropriate instruments shall be executed by Fossil to effectuate such change of interest.

XI.
## Status of Parties

This agreement does not constitute the parties hereto as partners, mining partners, joint venturers, an unincorporated association or in any other relationship other than that of tenants in common of the various interests described herein. The parties hereto agree to enter into a mutually acceptable tax partnership at the request of either party.


XII.
## Successors and Assigns

This Agreement binds and inures to the benefit of the parties hereto and their respective successors and assigns as limited by section 7.02 above; provided, however, that none of the rights or obligations of either party hereunder, or any interests in Prospects, shall be assigned or transferred, directly or indirectly, without the consent of the other first obtained and further provided that any transferee of an interest hereunder shall agree to be bound by the provisions of this Agreement with respect to a transfer of interests in a Prospect, CNGP and Fossil agree that they will not withhold their consent to a proposed transferee unless, in the opinion of the party whose consent is being requested, the proposed transferee is not financially qualified to assume the obligations of participation in Test Well drilling.


XIII.
## Termination

The term of this agreement shall be for a period of three (3) years from the date hereof. If, at the conclusion of the term hereof, or upon prior termination as provided below, CNGP and Fossil jointly own Prospects pursuant to this agreement, the parties agree that the provisions of this Agreement, covering jointly owned properties shall continue to apply for so long thereafter as leases may be owned within an Area of Mutual Interest. However, the obligation of CNGP to make monthly payments pursuant to Section 3.01 hereof shall terminate upon expiration of the term of this Agreement.

This agreement may be cancelled by either party upon 180 days written notice to the other with respect to any prospects not previously accepted by CNGP under Section 6.01 hereof. As to prospects previously accepted under Section 6.01 the provisions of this Agreement shall remain in full force and effect subject to the provisions of an operating agreement entered into that may supersede or change the applicability of this Agreement.

EXECUTED as of the year and day first above set forth.

FOSSIL ASSOCIATES

BY: _____
W. K. Arbuckle

BY: _____
R. H. Dubitzky

BY: _____
E. A. Riggs

CNG PRODUCING COMPANY

BY: _____

Dubitzky 000394

Exhibit "A"

Attached to and made a part of that certain Agreement
between Fossil Associates and CNGP dated November 1, 1983

The following listed items shall be considered as
Overhead, salaries and other indirect Expenses, to-wit:

1. Office and Accounting Costs per month
   a. Office Rent
   b. Telephone, Computer, Office Supplies, Postage
   c. Secretaries Salaries
   d. Accounting Salaries and Taxes

2. Geological Retainer Fee
   a. Individual Retainer for each geologist as a
      member of Fossil Associates.

Dubitzky 000395

Exhibit "B"

Attached to that Certain Agreement Between
Fossil Associates and CNGP dated November 1, 1983

| CNGP % W.I. In Drillsite Location Before Fossil election | Fossil's Maximum Available W.I. % for purchase |
|---|---|
| 53 | 3.0 |
| 54 | 3.0 |
| 55 | 3.0 |
| 56 | 3.0 |
| 57 | 3.0 |
| 58 | 3.0 |
| 59 | 3.0 |
| 60 | 3.0 |
| 61 | 3.0 |
| 62 | 3.0 |
| 63 | 3.0 |
| 64 | 3.0 |
| 65 | 3.0 |
| 66 | 3.0 |
| 67 | 3.0 |
| 68 | 3.0 |
| 69 | 3.5 |
| 70 | 4.0 |
| 71 | 4.5 |
| 72 | 5.0 |
| 73 | 5.5 |
| 74 | 6.0 |
| 75 | 6.5 |
| 76 | 7.5 |
| 77 | 8.5 |
| 78 | 9.5 |
| 79 | 10.5 |
| 80 | 11.5 |
| 81 and above | 12.5 |

Dubitzky 000396

## Exhibit "C"

Attached to that Certain Agreement Between
Fossil Associates and CNGP dated November 1, 1983
Composed of the Following Points.

1.  Roy H. Dubitzky & Associates Letter to Kimbark Oil & Gas
    Company dated August 31, 1982.

2.  Prospect Agreement – Walter K. Arbuckle and Kimbark Oil &
    Gas Company dated February 1, 1981.

3.  Fossil Associates Prospects with Kimbark Oil & Gas Company
    dated November 1, 1983.

Dubitzky 000397

ROY H. DUBITZKY & ASSOCIATES
1580 LINCOLN STREET, SUITE 1200
DENVER, COLORADO 80203
303-832-9406

August 31, 1982

Mr. W. H. Arrington
Kimbark Oil & Gas Company:  Mr. Bill Glover

Re:  Prospective Areas at Termination
of R. H. Dubitzky & Associates
Partnership

The following are prospects that have been generated by R. H. Dubitzky
& Associates.  Several are active, several are awaiting acreage to
become available.  I am sure by the time acreage will become available,
several prospects will have been drilled.  I will continue to evaluate
each prospect at the proper time.

1.  Ashland Prospect, Clark County, Kansas
Sec. 33, S/2 34, T32S, R23W
N/2 3, Sec. 4, 5, 6, 7, W/2 8, T33S, R23W
Attempting to lease in area at this time.

2.  Burton Prospect, Cimmaron County, Oklahoma
Sec. 5, E/2 6, 7, 8, T3N, R9ECM
Attempting to lease in area at this time.

3.  Shirley Prospect, Pawnee County, Kansas
SE/4 7, NE/4 8, T20S, R19W
Owner gave 30 day extension to leasee to 10/3/82.
Will attempt to lease if no well has been drilled.

4.  Hanes & Meyer Prospect, Texas County, Oklahoma
Leasing in area at present.

5.  Russ Truss Prospect, Rooks County, Kansas
SE/4 15, NE/4 22, T8S, R18W
Leased to 1/17/84 and 10/18/83.

6.  Doebbling Prospect, Ness County, Kansas
E/2 28, 18S, 24W
Will not lease at this time.

7.  Irwin Prospect, Ellis County, Kansas
Preparing to drill.

Page 2
August 31, 1982

8. Guthrie Prospect, Logan County, Oklahoma
   N/2 11, 17N, 2W
   Drilling. TVA

9. Sturges Prospect, Texas County, Oklahoma
   Sec. 6, T4N, R10ECM
   Preparing to drill.

10. Moore Prospect, Ellis County, Kansas
    Sec. 32 & 33, T14S, R19W
    Title cleared. Kimbark postponed drilling in their 1982 program.

11. Hill City Prospect, Graham County, Kansas
    SE/4 Sec. 29, T8S, R22W
    Acreage available 1/10/83.

12. Linscott Prospect, Ellis County, Oklahoma
    T22N, R25W
    T22N, R26W
    Available 3/1983.

13. Stichel Prospect, Stafford County, Kansas
    SE/4 11, T22S, R14W
    Available 5/12/83.

14. Davenport Prospect, Ness County, Kansas
    SW/4 36, T16S, R21W
    Lease expires 1/27/84.

15. Southport Prospect, Billings County, North Dakota
    S/2 35, S/2 36, T140N, R100W
    Leased until August, 1984 by Amerada.

16. Schroeder Prospect, Barton County, Kansas
    NW/4 25, T16S, R11W
    Lease expires 2/1982. /983

17. Coffee Prospect, Reno County, Kansas
    Sec. 23, T25S, R4W
    Lease expires 4 & 5/1983.

18. Paradise Prospect, Payne County, Oklahoma
    Sec. 14 & 15, T18N, R1W
    Lease expires 2/1983.

19. Leitner Prospect, Stafford County, Kansas
    Sec. 31, T23S, R14W
    Lease expires 3/19/84.

Dubitzky 000399

Page 3
August 31, 1982

20. Roxana Prospect, Pawnee County, Kansas
    Sec. 10, T23S, R15W
    Lease expires 6/8/83.

21. West Dunes Prospect, Pawnee County, Kansas
    SE/4 Sec 21, T22S, R15W
    Lease expires 7/22/83.

22. Estes Prospect, Pawnee County, Kansas
    NW/4 22, T22S, R15W
    Attempting to lease.

23. Ransom A Prospect, Ness County, Kansas
    S/2 21, T16S, R24W
    Leases expire 8/25/83 and 11/11/83.

24. Alexander North, Rush County, Kansas
    SE/4 20, T17S, R20W
    Lease expires 11/16/82.
    Offset to R. H. Dubitzky & Associates lease in Section 21.

25. Ratts Prospect, Stafford County, Kansas
    NW/4 2, T23S, R14W

26. St. John Prospect, Stafford County, Kansas
    Sec. 7, T23S, R13W
    Lease expires 2/23/84.

27. N. Crissman Prospect, Stafford County, Kansas
    NE/4, Sec. 33, T22S, R14W
    Lease expires 2/10/84.

## PROSPECT AGREEMENT

WHEREAS, Walter K. Arbuckle ("Arbuckle") served as President of Kimbark Oil & Gas Company, a Colorado corporation ("Kimbark"), from February 1, 1981 to October 8, 1982;

WHEREAS, on February 1, 1981, Arbuckle owned the 122 Prospects contained on the list attached hereto as Annex "A" (the "Arbuckle Prospects");

WHEREAS, on March 24, 1981, the Board of Directors of Kimbark adopted certain policies concerning future participation of Executive Officers of Kimbark to engage in the oil and gas business;

WHEREAS, during his tenure as President of Kimbark Arbuckle participated in the development of the  _THIRTY_  Prospects contained on the list attached hereto as Annex "B" (the "Kimbark Propsects") all of which remain undrilled as of the date hereof;

WHEREAS, Kimbark and Fossil Associates, a joint venture composed of Arbuckle, Roy H. Dubitzky and Elliott A. Riggs, have entered into a "Consulting Agreement" dated as of October 9, 1982;

NOW THEREFORE, in consideration of the mutual covenants and promises herein contained, the parties hereto agree as follows:

1.  With respect to the Arbuckle Prospects that have not been offered to Kimbark (_____ Prospects as of the date hereof, each of which has been so identified on Annex A), Kimbark shall have a preferential right to purchase (subject ot certain outstanding arrangements) an interest in any such Prospect on the same terms and conditions as an interest in such Prospect is offered to or purchased by any unaffiliated third party purchaser.  The Company's decision to purchase an interst in any such Prospect must be made prior to the drilling of any initial well in the Prospect; provided that Kimbark shall have at least 15 days after submittal of the Prospect to Kimbark.

2.  With respect to the Kimbark Prospects, Kimbark and Arbuckle agree that the Kimbark Prospects are owned by Kimbark and that neither Arbuckle nor any affiliate of Arbuckle (other than Kimbark) has any interest therein.

Dubitzky 000401

3. Other than the Arbuckle Prospects, the Kimbark Prospects and other Prospects in which Kimbark owns an interest as of the date hereof and except as provided in the Consulting Agreement, Kimbark has no interest in any other Prospect in which Arbuckle may participate.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the 9th day of October, 1982.

WALTER K. ARBUCKLE

KIMBARK OIL & GAS COMPANY

By: CLARENCE H. BROWN, President

–2–

Dubitzky 000402

Annex A (to Prospect
Agreement dated 10/9/82

EXPLORATION PROSPECTS

| Prospect | Number | County | State | ** Status 10/8/82 |
|---|---|---|---|---|
| W. Meade Ext. | | * Meade | Kansas | N.A. |
| NW Quaker | | Kiowa | Kansas | D.H. |
| Douglas Reservoir | 01-726 | Larimer | Colorado | A.B.D. |
| Ziegler | 01-722 | Baca | Colorado | D.H. |
| Papoose Canyon | 01-260 | * Dolores-Montz. | Colorado | N.A. |
| Greely Lyons | 01-720 | Weld | Colorado | A.B.D. |
| Wolf Creek | | Prowers | Colorado | A.B.D. |
| W. Ant Hills | | Niobrara | Wyoming | A.B.D. |
| SW Hawley | 08-960 | * Grant | Oklahoma | Active |
| Okan | 02-746 | * Beaver | Oklahoma | Leasing |
| Hunter | 08-953 | Garfield | Oklahoma | D.H. |
| Keyes Dome | 08-963 | Cimmarron | Oklahoma | D.H. |
| Ute Dome SW | | San Juan | New Mexico | Prod. |
| Pinon Mesa | | San Juan | New Mexico | D.H. |
| Long Canyon East | | * Grand | Utah | Prod. |
| Paradox Cinco | | San Juan | Utah | KOG Rejected |
| Water Hollow | 04-902 | * Duchesne | Utah | Leasing |
| Pinacle | 04-909 | * Carbon | Utah | Leasing |
| Hatch & East Hatch | UL-253 | * San Juan | Utah | Leasing |
| Bug Field Penn | | * San Juan | Utah | Leasing |
| No. Aneth $CO_2$ | | * San Juan | Utah | Leasing |
| Needles Block | CA-701 | * San Bernadino | California | Active |
| Timber Creek | 07-702 | * Richland | Montana | N.A. |
| Spring Lake | 07-701 | Richland | Montana | D.H. |
| No. Caribou | | Bonneville | Idaho | A.B.D. |
| Vrtatko | | Kimball | Nebraska | Active |
| SE Thirty-One Ext. | 02-766 | * Seward | Kansas | N.A. |
| Litt | 02-735 | Rush | Kansas | D.H.-KOG |
| So. Haven Kremlin | 02-736 | * Reno | Kansas | Prod.-O.O. |
| Pyle | | * Kiowa | Kansas | N.A. |
| Sandford | 02-751 | Barton | Kansas | Prod. |
| Decatur Five | | * Decatur | Kansas | Leasing |
| Rooks Six | | Rooks | Kansas | Prod. |
| Rush Center | | * Rush | Kansas | N.A. |
| Jilg | 02-761 | Barton | Kansas | A.B.D. |
| Crawford | 02-734 | Trego | Kansas | D.H. |
| Groff | 02-733 | Trego | Kansas | Prod. |
| Pinegar | | * Kearney | Kansas | Leasing |
| Homestead Revisited | 02-760 | Barton | Kansas | Prod. |
| Oswald | | Rooks | Kansas | KOG-82A |
| E. Pollnow | 02-768 | * Decatur | Kansas | N.A. |
| N.W. Pollnow | | Decatur | Kansas | Prod. |
| Green Garden | | Ellsworth | Kansas | KOG-82A |
| Green Goddess | | * Ellsworth | Kansas | N.A. |
| Leaded Duck | 02-702 | Meade | Kansas | A.B.D. |
| Madden | 02-762 | * Trego | Kansas | N.A. |
| Keough | | * Rush | Kansas | N.A. |
| . Llanos & Assoc. Acreage | 02-254 | * Sherman | Kansas | N.A. |

* Active prospects not submitted to KOG as of 10/8/82.
** See legend, last page.

Dubitzky 000403

| Prospect | Number | County | State | Status |
|---|---|---|---|---|
| Le | 02-266 | Sherman | Kansas | D.H. |
| Llanos | 02-253 | Sherman | Kansas | D.H. |
| Creek | 02-258 | Sherman | Kansas | D.H. |
| Beaver Creek | | * Wallace | Kansas | Leasing |
| Smokey Hill | | * Wallace | Kansas | Leasing |
| So. Mt. Sunflower | | * Wallace | Kansas | Leasing |
| Mt. Sunflower | | * Wallace | Kansas | Leasing |
| No. & So. Rixon | | * Rush | Kansas | Leasing |
| E. Sawlog | | Hodgeman | Kansas | D.H. |
| E. Liberal | | Seward | Kansas | Prod. |
| S.E. Mellicker | | * Hodgeman | Kansas | N.A. |
| N.W. Larned | | * Pawnee | Kansas | N.A. |
| Big Arkansas Bend | | * Ford | Kansas | Prod.-O.O. |
| S.E. Colby | 02-730 | * Thomas | Kansas | N.A. |
| So. Dodge | | * Ford | Kansas | N.A. |
| W. Kismet | | * Seward | Kansas | Leasing |
| Hargrave | 02-763 | Rush | Kansas | KOG-82B |
| No. Kearney Co. Block | 02-731 | * Kearney | Kansas | Leasing |
| No. Kremlin | 08-947 | * Garfield | Oklahoma | N.A. |
| Fisher | 08-951 | Garfield | Oklahoma | D.H. |
| Janice | | * Yoakum | Texas | Prod.-O.O. |
| Platang | | * Yoakum | Texas | Prod.-O.O. |
| W. Foster | | * Garvin | Oklahoma | D.H.-O.O. |
| Beauline Ranch | | Hidalgo | Texas | A.B.D. |
| Engelland Field | | * Cheyenne | Nebraska | D.H.-O.O. |
| Pavillion | | Fremont | Wyoming | A.B.D. |
| S.W. Pavillion | | Fremont | Wyoming | D.H. |
| Hugoton | | Texas | Oklahoma | A.B.D. |
| Meyer | | | Oklahoma | A.B.D. |
| Turner | | | Oklahoma | A.B.D. |
| Red Point | | | Oklahoma | A.B.D. |
| So. Eva | | | Oklahoma | D.H. |
| Damsam | | | Oklahoma | A.B.D. |
| Conger | | | Oklahoma | D.H. |
| Hanes | | | Oklahoma | A.B.D. |
| N.W. Pleasantan | | Ford | Kansas | |
| Solga | | * Conway | Arkansas | Prod.-O.O. |
| E. Gaylord | | * Cheyenne | Nebraska | N.A. |
| Fralick | | * Kiowa | Kansas | N.A. |
| Plesant Valley | | * Kiowa | Kansas | N.A. |
| So. Joy Station | | * Kiowa | Kansas | N.A. |
| Joy Station | | * Kiowa | Kansas | N.A. |
| Pleasant Valley No. | | * Kiowa | Kansas | N.A. |
| No. Joy Station | | * Kiowa | Kansas | N.A. |
| E. Hockett | | * Meade | Kansas | N.A. |
| Southeast Irondale | | * Adams | Colorado | N.A. |
| Powder Keg | | * Arapahoe | Colorado | N.A. |

Dubitzky 000404

| ject | Number | County | State | Status |
|------|--------|--------|-------|--------|
| ...thwest Jackpot | | * Weld | Colorado | Prod.-O.O. |
| Last Keota | | * Weld | Colorado | N.A. |
| Keasor | | Weld | Colorado | D.H. |
| Northeast Flag | | * Weld | Colorado | N.A. |
| Last Buckingham | | * Weld | Colorado | N.A. |
| Canyon | | * Washington | Colorado | N.A. |
| Dealer | | * Washington | Colorado | D.H. |
| Elkhart | | Morton | Kansas | D.H. |
| E. Interstate | | * Morton | Kansas | Leasing |
| N.W. Pleasonton | | * Ford | Kansas | N.A. |
| McKinney-Morrow | | Meade | Kansas | A.B.D. |
| So. Thirty-One | | Seward | Kansas | Prod. |
| Carrol | | Barton | Kansas | KOG-82A |
| Nekoma | | Rush | Kansas | D.H. |

12Y

** Legend for Status Column:

| | |
|---|---|
| N.A. | -- No acreage, still active |
| D.H. | -- Dry hole, still active |
| A.B.D. | -- Abandoned prospect |
| Prod. | -- Productive well |
| Prod.-O.O. | -- Productive well, other operator |

Dubitzky 000405

Annex B (to Prospect
Agreement dated 10/9/82

KIMBARK OIL & GAS COMPANY

INTEROFFICE MEMORANDUM

TO:        Rodgers Dockstader

FROM:      Bruce Burley

DATE:      October 4, 1982

SUBJECT:   Walter Arbuckle Prospects

The following is a list of prospects which Walter Arbuckle had devel-
oped for Kimbark prior to his departure.

| Name | County and State | Location |
|------|------------------|----------|
| Gerber Reconsumed | Harper, KS | 29-31S-5W |
| North and West Grant | Harper, KS | 19/17-31S-7W |
| Barragee | Meade, KS | 31-34S-27W |
| Bruno | Meade, KS | 29-33S-30W |
| East Evers | Pawnee, KS | 6-22S-15W |
| Flora | Stafford, KS | 26-21S-11W |
| S.E. Grover | Rooks, KS | 30-7S-18W |
| West Grover | Rooks, KS | 21-7S-19W |
| (S.E. Valley View) | | |
| S. Hoisington | Barton, KS | 20-17S-13W |
| S. Logan | Phillips, KS | 10-5S-20W |
| E. Lone Star | Rooks, KS | 9-8S-17W |
| N. Lone Star | Rooks, KS | 32-7S-17W |
| Mayfield | Sumner, KS | 19-32S-2W |
| Miller Pool | Harper, KS | 11-33S-8W |
| Perth | Sumner, KS | 11-33S-2W |
| N. St. John | Stafford, KS | 30-23S-13W |
| Webster Reservoir | Rooks, KS | 31-7S-18W |
| Ridlen | Hitchcock, NE | 33-4N-34W |
| Zeller 7 | Rush, KS | 2-17S-21W |
| (Start Northwest) | | |
| 281 | Barton, KS | 22-16S-14W |
| W. Burnett | Cleveland, OK | 25-8N-1E |
| W. Wanette | Pottawatomie, OK | 34-6N-2E |
| N. Grant | Harper, KS | 17-31S-7W |
| W. Grant | Harper, KS | 19-31S-7W |
| Bluff Creek | Grant, OK | 31-29N-2W |
| N. Webb | Kay, OK | 13-28N-3W |
| Galt Pool | Rice, KS | 8-18S-7W |
| Schoenchen Pool | Ellis, KS | 27-15S-18W |
| Crist Pool | Scott, KS | 16-20S-34W |
| Goggle | Beaver, OK | 14-6N-22ECM |

BNB/lmr
cc  Bill Glover
    Walt Arbuckle

Dubitzky 000407

FOSSIL ASSOCIATES, et al

SUMMARY OF DRILLING PROSPECTS FOR PERIOD 9/1/82 – 11/1/83
SUBMITTED TO KIMBARK OIL AND GAS

| State | Prospect | County | Location | # Acres in Pros. | Est. Acreage Cost at Spud Incl. Pros. Fee | Well T.D. | Objective | Est. D.H.C. | Total Cost | Interest Available % | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Okla. | River Bend | Grant | 15-25N-4W | 480 | 60,000 | 6000 | Skinner 2nd Wx. | 113,000 | 173,000 | 50 | |
| | Edmond NE | Okla | (26-36)-14N-2W | | 100,000 | 6000 | Hunton | 200,000 | 300,000 | 100 | |
| | Hanes | Texas | 8-3N-10ECM | 960 | 60,000 | 4800 | Mid Mw Keyes | 150,000 | 210,000 | 60 | |
| | Sturgis | Texas | 6-4N-10ECM | 1000 | 90,000 | 4700 | Mid Mw Keyes | 117,000 | 207,000 | 0 | |
| | Burton | Cimarron | 5-3N-9ECM | 480 | 25,000 | 4750 | Mid Mw Keyes | 150,000 | 175,000 | 60 | |
| | Paradise | Payne | 15-18N-1W | 300 | 50,000 | 5500 | Skinner 2nd Wx. | 117,500 | 167,500 | 0 | |
| | Evans | Lincoln | 32-14N-3E | 560 | 50,000 | 4800 | Red Fork | 150,000 | 200,000 | 50 | |
| | Deer Creek | Kay | 6-26N-2W | 640 | 60,000 | 4500 | Red Fork SS | 88,000 | 148,000 | 100 | Acreage Open |
| | No. Carthage | Texas | 8-5N-11ECM | 320 | 35,000 | 4800 | Mid Mw | 146,000 | 181,000 | 50 | |
| | Reese | Kay | 9-27N-2W | 400 | 45,000 | 4225 | Red Fork SS | 88,000 | 133,000 | 50 | |
| | Burt | Tillman | 30-1S-18W | 320 | 20,000 | 4650 | Simpson/Arb | 65,000 | 85,000 | 35 | |
| Kansas | Alexander No. | Rush | 21-17S-20W | 480 | 15,000 | 4050 | Cherokee Sd | 78,000 | 93,000 | 10 | |
| | Estes | Pawnee | 22-22S-15W | 160 | 10,000 | 4000 | Arbuckle | 75,000 | 85,000 | 35 | |
| | Slate S.W. | Rooks | 3-7S-20W | 440 | 15,000 | 3700 | Arbuckle | 60,000 | 75,000 | 0 | |
| | Moore | Ellis | 33-14S-19W | 300 | 20,000 | 3800 | Arbuckle | 70,000 | 90,000 | 100 | |
| | Honacker | Barton | 24-17S-13W | 320 | 15,000 | 3375 | Arbuckle | 55,000 | 70,000 | 100 | |
| | Solburn | Ellis | 21-14S-20W | 240 | 10,000 | 3900 | Lansing Reagan | 70,000 | 80,000 | 50 | |
| Nebr. | E. Gaylord | Cheyenne | 16-17N-51W | 960 | 18,000 | 5200 | J Sand | 55,000 | 73,000 | 0 | |
| Utah | Fish Creek | San Juan | 5-38S-20E | 5000 | 100,000 | 3700 | Miss. | 278,000 | 378,000 | 65 | Option Available on Another 5000 Acres |
| Various | EMC Farmouts | Various | | | | | | | | | |
| Miss. | Nettleton | Monroe | 32-11S-6E | 1035 | 87,500 | 2800 | Evans | 201,000 | | 60/45 | Started Negotiations |