

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ULTRA PETROLEUM CORP., *et al* | § | CASE NO: 16-32202 |
| Debtor(s) | § | |
| | § | CHAPTER 11 |
| | § | |
| GASCONADE OIL CO., *et al* | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 17-3019 |
| | § | |
| ULTRA RESOURCES, INC., *et al* | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

Gasconade Oil Co., Riggs Oil & Gas Corp., and The Roy H. Dubitzky Trust filed this adversary proceeding against Ultra Resources, Inc. and UPL Pinedale, LLC, seeking a declaratory judgment that they are entitled to certain overriding royalty interests pursuant to the Areas of Mutual Interest clause within the parties' Southwestern Wyoming Revised CNG/Fossil Agreement.

The Defendants moved for summary judgment on the Plaintiffs' claims, arguing that the claimed interests violate Wyoming's rule against perpetuities and are thus void.

In a cross-motion for partial summary judgment, the Plaintiffs contend that their claimed interests do not violate the rule against perpetuities because they are strictly contractual rights, are presently vested, and are incorporeal hereditaments. Alternatively, Plaintiffs assert that their interests do not violate the rule's policies, and that the Defendants are precluded from challenging their obligations under the clause and the Plaintiffs' interests under the doctrines of equitable estoppel, waiver, and laches.

The Defendants' motion for summary judgment is denied.  The Plaintiffs' cross-motion for partial summary judgment is granted.

## Background

On November 1, 1983, Fossil Associates, the predecessor of Gasconade Oil Co., Riggs Oil & Gas Corporation, and The Roy H. Dubitzky Trust (the "Plaintiffs"), entered into a Consulting Agreement with CNG Producing Company for the purpose of jointly exploring certain areas of the Rocky Mountains and Mid-Continental United States for oil and gas, including prospects located in Sublette, Sweetwater, Lincoln and Uinta Counties, Wyoming. (ECF No. 74-1 at 45–65; *see* ECF No. 1 at 3; ECF No. 74 at 4).  Pursuant to the Consulting Agreement, CNG obtained the authority to acquire the rights to potential oil and gas leaseholds originated by Fossil within Wyoming and other states for the purpose of drilling oil and gas wells.  (ECF No. 74-1 at 46).  In exchange for these rights, Fossil received a 3.00% Overriding Royalty Interest (ORRI) in prospective oil and gas leases on the exchanged developments, as well as an option to acquire a 12.5% back-in leasehold interest in any prospective leaseholds on those developments.  (ECF No. 74-1 at 49–50).  The Consulting Agreement included an Area of Mutual Interest (AMI) clause through which Fossil and CNG agreed to share in any future oil and gas leases within the geographical areas outlined by the Agreement.  (ECF No. 74-1 at 46).[1]

---

[1] An Area of Mutual Interest clause is "an agreement giving each party the right, but not the obligation, to share in each of the other parties' [future] acquisitions within the area covered by the AMI."  Terry I. Cross, *The Ties That Bind: Preemptive Rights and Restraints on Alienation That Commonly Burden Oil and Gas Properties*, 5 TEX. WESLEYAN L. REV. 193, 215–16 (1999); *see also* PROVISIONS IN JOINT OPERATING AGREEMENTS—AREA OF MUTUAL INTEREST ("AMI"), 4 SUMMERS OIL AND GAS § 48:7 (3d ed.) ("Joint operating agreements often include an [AMI] clause to describe a geographical area within which the parties agree to share certain additional leases or other interests acquired by any of them in the future.").  An AMI clause assures that the parties, who jointly fund the oil and gas exploration of the areas of mutual interest, will share in developmental opportunities within the defined area in the same percentages as originally risked, and that the parties will not compete in the acquisition of leaseholds within the areas of mutual

The parties included such a clause in order to prevent any party to the Agreement from using shared funds or technical data to develop oil and gas production in the areas of mutual interest that are adjacent and contiguous to the parties' current leaseholds to the competitive detriment of the other party.  (ECF No. 74-1 at 4).

On March 15, 1994, Fossil and CNG executed the Southwestern Wyoming Revised CNG/Fossil Agreement, replacing the Consulting Agreement as to Sublette, Sweetwater, Lincoln, and Uinta Counties, Wyoming.  (ECF No. 73-2).  This Revised Consulting Agreement replaced Fossil's existing ORRI and back-in leasehold interest with a 5.5% ORRI on all leases owned by CNG within the Jonah Gulch Prospect—located in Wyoming—and a 5.0% ORRI on all remaining properties located within the area covered by the Revised Consulting Agreement. (ECF No. 73-2 at 1–2).  The Revised Consulting Agreement additionally included an updated AMI clause that created areas of mutual interest covering all acreage within the Jonah Gulch Prospect, and, particularly, all sections contiguous to sections of existing leases outside of the Jonah Gulch Prospect.  (ECF No. 73-2 at 2).  The AMI for the leases lying outside of the Jonah Gulch Prospect would remain "in effect so long as each individual listed . . . or acquired . . . within the AMIs, remains in effect."  (ECF No. 73-2 at 2).  At any time that CNG acquired a leasehold interest within an AMI, Fossil would be assigned a 5.0% ORRI.  (ECF No. 73-2 at 2).

On or about March 30, 2014, Fossil informed CNG that it had assigned its interests in the Revised Consulting Agreement to the Plaintiffs.  (ECF No. 74-1 at 104).  CNG subsequently assigned other ORRIs to the Plaintiffs on or about July 8, 1994.  (ECF No. 74-4 at 8).

---

interest.  Cross, *supra*, at 215.  This cooperation created by an AMI clause between the participating parties may lower the acquisition costs for leaseholds within the AMI and allow the parties to acquire the leaseholds at a slower pace than circumstances without such a clause. *Id.* at 215–16.

Pursuant to a purchase and sale agreement dated July 19, 1996, CNG sold some of its interests covered by the Consulting Agreement and Revised Consulting Agreement—including the oil and gas leases within the non-Jonah Gulch AMIs—to Ultra Petroleum (USA) Inc. ("Ultra USA"). (ECF No. 1 at 5; ECF No. 74-6). As part of that agreement, Ultra USA agreed to comply with the terms of the Consulting Agreement and Revised Consulting Agreement as they pertained to the purchased interests. (ECF No. 74-6 at 9). Ultra USA subsequently assigned various ORRIs to the Plaintiffs in the 14 years that followed the execution of the 1996 Purchase and Sale Agreement. (ECF No. 74 at 15–20; ECF No. 74-8).

Effective July 16, 2001, Ultra USA merged with and into Ultra Resources, Inc. ("Ultra Resources"). Ultra Resources was formed as a wholly-owned subsidiary of Ultra Petroleum Corporation. (ECF No. 1 at 8).

On August 13, 2014, Ultra Resources and UPL Pinedale, LLC, a wholly-owned subsidiary of Ultra Petroleum Corp., entered into a purchase and sale agreement with SWEPI LLP, an affiliate of Royal Dutch Shell, plc. (ECF No. 74-9 at 2). Under this agreement, UPL Pinedale acquired all of Shell's properties in the Pinedale Field of Sublette County, Wyoming, in exchange for various properties and $925 million. (ECF No. 74-9 at 2; *see also* ECF No. 1 at 8; ECF No. 77 at 4). Ultra Resources provided the consideration for UPL Pinedale's purchase of the SWEPI properties. (ECF No. 1 at 8). The Plaintiffs received notice of this agreement on September 25, 2014. (ECF No. 1 at 8). The AMIs in which the Plaintiffs have interests under the Revised Consulting Agreement are located in the Pinedale field within Sublette County. (ECF No. 1 at 8).

On March 8, 2016, the Plaintiffs filed a lawsuit against Ultra Resources and UPL Pinedale (the "Defendants"), Civil Action No. 8405, in the District Court for the Ninth Judicial District, Sublette County, Wyoming.  (ECF No. 1 at 8).

Ultra Petroleum Corporation *et al* filed for chapter 11 bankruptcy on April 29, 2016; these bankruptcy cases were consolidated under Case No. 16-32202.  (Case No. 16-32202, ECF No. 1; Case No. 16-32202, ECF No. 40).  The Defendants are debtor entities in Ultra Petroleum Corporation's jointly administered bankruptcy case.

The Plaintiffs filed this adversary proceeding (Adversary No. 17-3019) on January 5, 2017.  Within their complaint, the Plaintiffs contend that Ultra Resources executed the 2014 purchase and sale agreement in order to pay for and obtain oil and gas leasehold interests within the areas of mutual interest and assign those leases to UPL Pinedale.  (ECF No. 1 at 2).  The Plaintiffs maintained that by assigning those leases to UPL Pinedale, Ultra Resources circumvented its obligation—assumed under the 1996 purchase and sale agreement—to assign to the Plaintiffs ORRIs in any leaseholds Ultra Resources acquired in the areas of mutual interest.  (ECF No. 1 at 2).  Based upon these contentions, the Plaintiffs seek:

- a declaratory judgment that they are entitled to ORRIs burdening the AMI leaseholds acquired by Ultra Resources from SWEPI, and all proceeds of oil and gas production attributable to those ORRIs since the execution of the 2014 purchase and sale agreement;

- a declaratory judgment that any unpaid ORRI payment is not property of the Defendants' bankruptcy estates and thus must be turned over to the Plaintiffs;

- breach of contract damages stemming from the Defendants' failure to assign the Plaintiffs ORRIs in the SWEPI AMI leaseholds;

- damages stemming from the Defendants' conspiracy to defraud the Plaintiffs of ORRI revenue on the SWEPI AMI leaseholds;

- unpaid proceeds of production attributable to ORRIs on the SWEPI AMI leaseholds converted and stolen from the Plaintiffs;

- a judgment to the extent of the Defendants' unjust enrichment from failing to pay the Plaintiffs for accepted and beneficial labor, services, and other items in accordance with the Revised Consulting Agreement;

- an equitable lien on the SWEPI AMI leaseholds amounting to the value of the Plaintiffs' ORRIs in the leaseholds or in the form of such ORRIs;

- a constructive trust requiring UPL Pinedale to assign the SWEPI AMI leaseholds' ORRIs to the Plaintiffs;

- a complete accounting from Ultra Resources and UPL Pinedale on all of their ORRIs; and

- the unpaid ORRI amounts plus interest at the rate of 18.0% per annum on the unpaid principal balance from the due date as required by Wyoming law to be paid to parties legally entitled to unpaid proceeds from oil and gas production. (ECF No. 1 at 9–18).

On March 1, 2018, the Defendants filed a joint motion for summary judgment in this adversary proceeding.  (ECF No. 73).  Within their motion, the Defendants argue that the Plaintiffs' interests under AMI clause of the Revised Consulting Agreement violate Wyoming's rule against perpetuities (the "Rule") because those interests are future property interests not guaranteed to vest within the timeframe required by the Rule.  (ECF No. 73-1 at 2). Consequently, the Defendants assert that the Plaintiffs' complaint must be dismissed because their interests in the areas of mutual interests are void, making them unentitled to any ORRIs burdening the SWEPI AMI leaseholds.  (ECF No. 73-1 at 2).

Also on March 1, 2018, the Plaintiffs filed a cross-motion for partial summary judgment in this proceeding.  (ECF No. 74).  The Plaintiffs argue that the Rule is inapplicable to their interests in the areas of mutual interest under the Revised Consulting Agreement's AMI clause because:

- their interests are exclusively contractual rather than a real or personal property interests;

- their interests in the SWEPI areas of mutual interest are vested; and

- their interests constitute incorporeal hereditaments.  (ECF No. 74 at 31–38).

Alternatively, the Plaintiffs contend that:

- their interests do not invoke the concerns or policies that the Rule was intended to prevent, thus falling outside of the Rule's purview; and

- the Defendants are estopped from denying the enforceability of the Revised Consulting Agreement pursuant to the doctrines of estoppel, laches, and waiver because the Defendants acknowledged their obligations under the AMI clause by making ORRI payments to the Plaintiffs and their predecessor for over 21 years.

Pursuant to their Revised Comprehensive Scheduling Pre-Trial and Trial Order (ECF No. 67), issued on February 12, 2018, the Plaintiffs and the Defendants filed responses to their cross-motions for summary judgment on March 22, 2018.  (ECF No. 76; ECF No. 77).

On August 6, 2018, the Court held oral arguments on whether the Rule applies to the Revised Consulting Agreement's AMI clause.  At the conclusion of oral arguments, the Court requested further briefing on whether an AMI is a real property interest, a personal property interest, or an undefined interest under Wyoming law.

The Court took this matter under advisement on August 21, 2018.

### Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).  Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary

proceedings.  A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party.  *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous.  *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Ben-Levi v. Brown*, 136 S. Ct. 930, 930 (2016).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012).  "Summary judgment may not be thwarted by conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact.  FED. R. CIV. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  FED. R. CIV.

P. 56(c)(3).   The Court should not weigh the evidence.  *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016).  A credibility determination may not be part of the summary judgment analysis.  *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).  However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  FED. R. CIV. P. 56(c)(2).  Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof on an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Id.* at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

### Analysis

***Does the Wyoming Rule Against Perpetuities Apply to the AMI Clause?***

The issue arising from the Defendants' and Plaintiffs' motions for summary judgment is whether the Plaintiffs' interests established under the Revised Consulting Agreement's AMI clause constitute future property interests not guaranteed to vest within the timeframe required by Wyoming's rule against perpetuities, thus violating the Rule and becoming void. (ECF No. 73-1 at 2).

> Wyoming's statutory Rule Against Perpetuities, which codifies common law, states that:
>
> No interest in real or personal property shall be good unless it must vest not later than twenty-one (21) years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies.

WYO. STAT. § 34-1-139(a). A property interest vests when no contingency may defeat that interest. *Shriners Hosps. for Children v. First N. Bank of Wyo.*, 373 P.3d 392, 404 (Wyo. 2016). A contingency cannot defeat an interest when "there is some person in esse known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate, and whose right to such remainder no contingency can defeat." *Williams v. Watt*, 668 P.2d 620, 633 (Wyo. 1983) (quoting 28 AM. JUR. 2D ESTATES § 242). At its core, the Rule regulates the

conveyance of interests in property subject to future, contingent interests—such as a contingent remainder or executory interest—in favor of a party other than the original conveyor that may not become concrete interests before the statutory term expires—21 years after some life in being.  RESTATEMENT (FIRST) OF PROPERTY § 370 (1944).  Any such contingent interest vesting outside of the statutory term is invalid and will be voided.  RESTATEMENT (FIRST) OF PROPERTY § 370.

Wyoming's Rule stems from the state's recognized policy that perpetuities "are contrary to the genius of a free state, and shall not be allowed."  WYO. CONST. art. I, § 30.  Instead of tying up the marketability of real and personal property over unreasonably long periods of time, such property should be freely alienable to fully utilize the land's value and resources.  *Shriners*, 373 P.3d at 404; PERPETUITIES AND MINERAL DEVELOPMENT, 22 RMLF-INST 2 (1976).  Consequently, Wyoming's Rule "forbids the protracted suspension of the right to alienate property by voiding interests that will not vest within the statutory term" of 21 years after a life in being.  *Horse Creek Conservation Dist. v. State ex rel. Wyo. Attorney Gen.*, 221 P.3d 306, 318 (Wyo. 2009).

*Is the Rule Inapplicable Because the Plaintiffs' Interests are Contractual?*

In support of its motion for partial summary judgment, the Plaintiffs assert that the Rule is inapplicable to their interests under the AMI clause of the Revised Consulting Agreement because the clause entitles them to strictly contractual interests—not real or personal property interests.  (ECF No. 74 at 31).  The AMI clause specifically does not transfer or divest any party of property rights in the areas of mutual interest—neither the Plaintiffs nor the Defendants own any present or future property rights in the areas.  (ECF No. 74 at 35).  Instead, the AMI clause

only reflects the parties' agreement to what their rights in the areas of mutual interest would be *if* the Defendants obtain leaseholds in at least one of the areas.  (ECF No. 74 at 35).

In opposition to the Plaintiffs' position, the Defendants argue that the AMI clause refers to specific oil and gas leases, and purports to burden real property adjacent to those specific leaseholds with future, contingent interests.  (ECF No. 77 at 8).  Consequently, the Plaintiffs' interests under the AMI clause encumber real property and are thus not purely contractual, causing the clause and the interests to be subject to the Rule and void.  (ECF No. 77 at 8).

Wyoming law pertaining to the Rule does not explicitly address the issue of whether an AMI clause like the one in this case conveys exclusively contractual interests, or if such interests are subjected to the Rule.  However, pursuant to American common law, as discussed within the Restatement (First) of Property, the Rule does not apply to transactions that are exclusively contractual.  RESTATEMENT (FIRST) OF PROPERTY § 401 (1944); *see, e.g.*, *Temple Hoyne Buell Found. v. Holland & Hart*, 851 P.2d 192, 196 (Colo. App. 1992) (finding that the option contract did not create an enforceable interest nor fetter a specific parcel of land); *First Nat. Bank & Tr. Co. of Okla. City v. Sidwell Corp.*, 678 P.2d 118, 126 (1984) ("The contract here did not involve the vesting of future interests in real property and did not constitute a restraint upon the alienation of that property."); *Courseview, Inc. v. Phillips Petroleum Co.*, 258 S.W.2d 391, 393 (Tex. Civ. App. 1953, writ ref'd n.r.e.) (finding the Rule to be inapplicable to the contract because it created no real property interests, only contingent interests).  Such a transaction does not fetter any property and thus does not bring the transaction within the purview of the Rule.  RESTATEMENT (FIRST) OF PROPERTY § 401 cmt. a.  A transaction is exclusively contractual "when, and only when, it concerns no specific land or thing other than land."  RESTATEMENT (FIRST) OF PROPERTY § 401 cmt. b.  If a contract *creates* an interest in land or some unique thing

other than land, such as an option or a covenant, then the Rule regulates its effect. *Id*. If, however, such a contract creates no such "interest," the transaction is outside the scope of the Rule. *Id*.

The AMI clause entitled the Plaintiffs to a purely contractual interest to which Wyoming's Rule does not apply. The Revised Consulting Agreement's subject matter is not a specific parcel of land. The clause provides that, if the Defendants acquire any leasehold interest within any of the areas of mutual interest contiguous to sections of existing leases outside of the Jonah Gulch Prospect, the Plaintiffs would be assigned a 5.0% ORRI on those newly acquired leaseholds. (ECF No. 73-2 at 2). While the Revised Consulting Agreement covers a general region in which the Defendants could acquire new leasehold interests that would then automatically be burdened by the Plaintiffs' ORRI, the Agreement's subject matter does not concern any *specific*, *single* piece of property. Rather, the Revised Consulting Agreement, specifically, its AMI clause, concerns the Plaintiffs' share if and when any leasehold in a general region of land is acquired. The agreement's subject matter is the Plaintiffs' potential ORRI— something other than land.

The Revised Consulting Agreement does not "*create* any interest in land or in some unique thing other than land." RESTATEMENT (FIRST) OF PROPERTY § 401 cmt. b. (emphasis added). An overriding royalty is an interest carved out of the working interest created by an oil and gas lease and it is derived from a particular oil and gas lease that constitutes the assignor's mineral estate. 55A TEX. JUR. 3d, Oil & Gas § 353 (2018). An overriding royalty, like other royalties, is an interest running through the term of the lease. *Id*. The overriding royalty interest owner is wholly dependent on the lessee to keep a lease alive. *Id*. Although the AMI clause under the Revised Consulting Agreement provides that the Plaintiffs will receive a 5.0% ORRI

on any newly acquired leaseholds, the AMI clause does not itself create an overriding royalty interest in favor of the Plaintiffs. The Plaintiffs' overriding royalty interest does not yet exist; it is a mere possibility. The Plaintiffs' ORRI will only come to existence—will only be *created*—if and when the Defendants acquire any leasehold interest in the subject area. Before that time, the Plaintiffs have no interests—they are not entitled to a share of anything—under the AMI clause to which the Rule can apply. The AMI clause is purely contractual in nature.

Furthermore, the Defendants' predecessor, CNG, owned no actual property interests in the areas of mutual interest covered by the AMI clause at the time the Revised Consulting Agreement was executed. The Agreement consequently could not convey any present or future interests in the areas of mutual interest from CNG to the Plaintiffs' predecessor, Fossil. Instead, the Revised Consulting Agreement's AMI clause solely constitutes a contractual arrangement requiring CNG—and now the Defendants—to provide Fossil—and now the Plaintiffs—with an ORRI *if and when* CNG acquired an interest in any leaseholds acquired in the areas of mutual interest outside of the Jonah Gulch. (*See* ECF No. 73-2 at 2 ("In the event CNG acquires a leasehold interest within any such AMI, Fossil shall be assigned an ORR on the same basis as set out in Paragraph (3) above.")).

Accordingly, the Rule does not apply to the Plaintiffs' interests under the AMI clause.

*Do the Plaintiffs' Interests Fall Outside of the Rule's Policy Concerns?*

In the alternative, the Plaintiffs contend that, even if the Rule applies to their interests, their interests do not invoke the concerns that the Rule was intended to prevent and thus are not void. (ECF No. 74 at 39). First, the Plaintiffs maintain that the AMI clause did not tie up the marketability of any particular piece of property, as seen through the parties' active acquisition and sales of oil and gas leases in prospective oil and gas leaseholds during the clause's existence.

14 / 16

(ECF No. 74 at 43). Second, instead of causing the underutilization of the areas of mutual interests' value and resources, the clause promotes the leasing, exploration, and production of those areas to the benefit of the parties and the federal government. (ECF No. 74 at 42–43).

The state of Wyoming takes the stance that perpetuities "are contrary to the genius of a free state, and shall not be allowed." WYO. CONST. art. I, § 30. Instead of tying up the marketability of real and personal property over unreasonably long periods of time, such property should be freely alienable to fully utilize the land's value and resources. *Shriners*, 373 P.3d at 404. Wyoming consequently "forbids the protracted suspension of the right to alienate property by voiding interests that will not vest within the statutory term" of 21 years after a life in being. *Horse Creek Conservation Dist. v. State ex rel. Wyo. Attorney Gen.*, 221 P.3d 306, 318 (Wyo. 2009).

From a practical point of view, the Court does not understand how the application of the Rule to these facts would materially further the State's interest. Any of the world's more than 7 billion people and corporations (other than the handful who are bound by the AMI) can acquire and fully deal in the subject property. The Revised Consulting Agreement is not tying up the marketability of the property, but rather only determines the rights as between the parties when an interest in the property is acquired. The property is fully tradeable and marketable, and the Rule Against Perpetuities is not designed to cover this type of contingent contractual interest.

In any event, because the parties' interests under the AMI clause are strictly contractual and thus not subject to the Rule, the Court does not determine whether the clause invokes the concerns that the Rule was intended to prevent and reserves its analysis as to the Plaintiffs' other arguments.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.


SIGNED **November 9, 2018.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE